Gary M. Zadick
gmz@uazh.com
UGRIN ALEXANDER ZADICK, P.C.
#2 Railroad Square, Suite B
PO Box 1746
Great Falls, MT  59403
Ph: (406) 771-0007
Fax: (406) 452-9360

Dallas DeLuca, OSB #072992
(*Pro Hac Vice to be applied for*)
DallasDeLuca@markowitzherbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Ph: (503) 295-3085
Fax: (503) 323-9105

Attorneys for Portland General Electric Company
Additional counsel of record listed on signature page

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| **PORTLAND GENERAL ELECTRIC COMPANY; AVISTA CORPORATION; PACIFICORP; and PUGET SOUND ENERGY, INC.**, <br><br> Plaintiffs, <br><br> v. <br><br> **NORTHWESTERN CORPORATION; and TALEN MONTANA, LLC,** <br><br> Defendants. | Case No. _____ <br><br> **COMPLAINT** <br><br> **(DECLARATORY RELIEF)** |

**Page 1 - COMPLAINT**

## INTRODUCTION

1. Article I, Section 10, Clause 1 to the United States Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts[.]"

2. The State of Montana enacted a law that provides that: "An agreement concerning venue involving an electrical generation facility in this state is not valid unless the agreement requires that arbitration occur within the state before a panel of three arbitrators selected under the Uniform Arbitration Act unless all parties agree in writing to a single arbitrator." S.B. 265, 67th Leg., Reg. Sess. § 1 (Mont. 2021) ("SB 265"). SB 265 purports to be retroactive to January 1, 2021.

3. Plaintiffs and defendants NorthWestern Corporation ("NorthWestern") and Talen Montana, LLC ("Talen") (collectively, "the Parties") are co-owners of two coal-fired steam electric generation units located in Colstrip, Montana ("Colstrip"). The two units are governed by an Ownership and Operation Agreement, dated May 6, 1981, which has been amended four times ("O&O Agreement").

4. The O&O Agreement provides for arbitration to resolve any dispute concerning the O&O Agreement. Section 18 of the O&O Agreement provides for arbitration to occur in Spokane, Washington, before a single arbitrator in an arbitration held pursuant to Washington law.

**Page 2 - COMPLAINT**

5. SB 265 violates the federal Contracts clause because it substantially impairs plaintiffs' contractual rights under Section 18 and does not significantly advance any public purpose.

6. SB 265 violates the contracts clause of the Montana Constitution.

7. SB 265 is preempted by the Federal Arbitration Act.

8. NorthWestern initiated arbitration earlier this year under Section 18 of the O&O Agreement.

9. NorthWestern and Talen supported, in legislative hearings, passage of SB 265.

10. There is a current and ripe dispute because Talen has demanded that this arbitration take place in Montana, that the arbitration and the Parties to it are subject to Montana courts, and that the arbitration take place with three arbitrators.

**PARTIES**

11. Plaintiff Avista Corporation ("Avista") is an investor-owned utility based in Spokane, Washington, that serves customers in eastern Washington, northern Idaho, and eastern Oregon. Avista is a Washington corporation with its principal place of business in Washington.

12. Plaintiff PacifiCorp's business unit, Pacific Power, is a utility based in Oregon that serves customers in Oregon, northern California, and southeastern Washington. PacifiCorp's business unit, Rocky Mountain Power, is a utility based

**Page 3 - COMPLAINT**

in Utah that serves customers in Utah, Wyoming, and southeastern Idaho. PacifiCorp is an Oregon corporation with its principal place of business in Oregon.

13. Plaintiff Portland General Electric Company ("PGE") is an investor-owned utility based in Oregon that serves customers in Oregon. PGE is an Oregon corporation with its principal place of business in Oregon.

14. Plaintiff Puget Sound Energy, Inc. ("PSE"), is an investor-owned utility based in Washington state that serves customers primarily in western Washington. PSE is a Washington corporation with its principal place of business in Washington.

15. Defendant NorthWestern Corporation is an investor-owned utility based in South Dakota that serves customers in Montana, South Dakota, Nebraska, and Yellowstone National Park. NorthWestern is a Delaware corporation with its principal place of business in South Dakota.

16. Defendant Talen Montana, LLC is an independent power producer, not a regulated utility. Talen is the operator of Colstrip. Talen, a Delaware limited liability company, is a wholly owned subsidiary of Talen Energy Supply, LLC, which is a wholly owned subsidiary of Talen Energy Corporation, which is a Delaware corporation with its principal place of business in Texas.

## VENUE AND JURISDICTION

17. Under 28 U.S.C. § 1391(b)(2), venue is proper in the Billings Division of the Montana federal district court because Colstrip Units 3 and 4 are located in Rosebud County, Montana.

18. The relief requested is authorized pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

## FACTUAL ALLEGATIONS

19. Colstrip Units 3 and 4 are each 740 MW coal-fired electrical generation units and together they are called the "Project" as that term is defined in the O&O Agreement.

20. Colstrip is owned by Avista, NorthWestern, PacifiCorp, PGE, PSE, and Talen. Each Party's respective ownership in Colstrip Units 3 and/or 4 is as follows:

| Owner | Unit 3 | Unit 4 |
|---|---|---|
| Avista | 15% | 15% |
| NorthWestern | -- | 30% |
| PacifiCorp | 10% | 10% |
| PGE | 20% | 20% |
| PSE | 25% | 25% |
| Talen | 30% | -- |

**Page 5 - COMPLAINT**

21. The ownership and operation of Colstrip is governed by the O&O Agreement, which is an agreement between and among the Owners. The O&O Agreement was signed in 1981 and includes four subsequent amendments.

22. The O&O Agreement establishes a Committee "to facilitate effective cooperation, interchange of information and efficient management of the Project, on a prompt and orderly basis." Pursuant to Amendment No. 1 to the O&O Agreement: "The Committee shall be composed of five (5) members." Each Committee member must be a party to the O&O Agreement (or a successor or assignee).

23. The members of the Committee and their respective Project Shares for voting purposes are as follows:

| Owner | Project Share for Voting Purposes |
|---|---|
| Avista | 15% |
| PacifiCorp | 10% |
| PGE | 20% |
| PSE | 25% |
| Talen | 30% |

24. Talen has entered into a vote sharing agreement with NorthWestern, which purports to allocate Talen's vote to Talen or NorthWestern pursuant to the terms of that vote sharing agreement.

25. In a letter dated February 9, 2021, NorthWestern provided notice to the other Parties that it was initiating the 30-day negotiation period under

**Page 6 - COMPLAINT**

Section 18 to resolve disputes under the O&O Agreement and applicable law as to "what vote is required to close Units 3 and 4 and . . . the obligation of each co-owner to fund operations of the [Colstrip] plant."

26.    There is a dispute between plaintiffs and NorthWestern and, upon information and belief, there is the same dispute between plaintiffs and Talen concerning, among other things, the following: whether plaintiffs may terminate the Project by voting their combined 55% or greater ownership shares to do so; whether plaintiffs may close one unit by voting their combined 55% or greater ownership shares to do so; and whether plaintiffs are allowed to vote for or against budgets based on each plaintiff's own analysis of the prudence of those budgets. The total annual budget under the O&O Agreement for the Project is in excess of $1,000,000, and each plaintiff thus has more than $75,000 per year at issue for its share of those budgets.

27.    NorthWestern contends that a unanimous vote is required to close Colstrip. On information and belief, NorthWestern also contends that a unanimous vote is required to close just one of the two units at Colstrip.

28.    On information and belief, Talen similarly contends that unanimity is required to close one unit or to close Colstrip.

**Page 7 - COMPLAINT**

29. Plaintiffs contend that, pursuant to Section 17(f) of the O&O Agreement, the Parties can close one unit or both units with a vote that obtains 55% of the Project Shares voting in favor of closure.

30. The Parties did not resolve the disputes within the 30-day negotiation window.

31. On March 12, 2021, NorthWestern served an Arbitration Demand on the other Parties, asserting claims for declaratory judgment related to the disputes.

32. NorthWestern served an Amended Arbitration Demand on April 2, 2021.

33. On April 20, 2021, Avista, PacifiCorp, PGE, and PSE each served their own arbitration demand and their answers to NorthWestern's demand.

34. Section 18 of the O&O Agreement provides, in part, as follows concerning resolution of disputes under the O&O Agreement:

> Any controversies arising out of or relating to this Agreement which cannot be resolved through negotiations among the Project Users within thirty (30) days after inception of the matter in dispute shall, upon demand of any Project User involved in the controversy, be submitted to an Arbitrator having demonstrated expertise in the matter submitted. If the Project Users cannot mutually agree upon such Arbitrator, then upon petition of any Project User, such Arbitrator shall be appointed by the Superior Court of the State of Washington, in and for the County of Spokane. The arbitration shall be conducted in Spokane, Washington, pursuant to the Washington Arbitration Act, RCW

**Page 8 - COMPLAINT**

Chapter 7.04 as the same may be amended from time to time.

36. Since NorthWestern served its initial Arbitration Demand, counsel for the Parties have exchanged proposals for an arbitration protocol.

36. On March 29, 2021, and again on April 3, 2021, Talen proposed that (1) the arbitration be heard by a panel of three arbitrators, (2) the arbitration's venue be Montana, (3) Montana courts have exclusive jurisdiction over any lawsuits related to the arbitration, and (4) the Washington Uniform Arbitration Act would not apply (and, by implication, that the Montana Uniform Arbitration Act would apply).

37. Each of these proposals is contrary to the terms of Section 18 of the O&O Agreement, and thus there is an actual controversy as to the applicability of Section 18 of the O&O Agreement.

38. On April 13, 2021, plaintiffs here filed a petition to compel arbitration against Talen and NorthWestern in the Superior Court of the State of Washington for Spokane County.

39. On April 13, 2021, the Montana legislature passed SB 265. The "ENROLLED BILL – *Authorized Print Version*" is attached to this complaint and is incorporated herein.

Page 9 - COMPLAINT

40. On April 23, 2021, the Montana Legislature transmitted to Montana Governor Greg Gianforte SB 265. Governor Gianforte signed SB 265 into law on May 3, 2021.

41. SB 265 amends Section 27-5-323 of the Montana Code by adding the following:

> (2)(a) An agreement concerning venue involving an electrical generation facility in this state is not valid unless the agreement requires that arbitration occur within the state before a panel of three arbitrators selected under the [Montana] Uniform Arbitration Act unless all parties agree in writing to a single arbitrator.
>
> (b) For the purposes of this subsection, "electrical generation facility" has the meaning provided in 15-24-3001."
>
> . . . .
>
> [This act] applies retroactively, within the meaning of 1-2-109, to applications made on or after January 1, 2021.

42. SB 265 purports to invalidate parts or all of Section 18 of the O&O Agreement because Section 18 requires that the arbitration (1) take place in Spokane (2) before a single arbitrator (3) subject to the Washington Arbitration Act.

43. Talen has objected to proceeding in the current arbitration under the terms of the O&O Agreement and instead insists upon terms similar to those required by SB 265.

**Page 10 -    COMPLAINT**

44. Because of Talen's objections, and because Talen testified in support of SB 265 before the Montana legislature, plaintiffs have a legitimate and reasonable concern that Talen will seek to invalidate parts or all of Section 18 of the O&O Agreement and not proceed with arbitration under Section 18 to resolve the current disputes.

45. Because NorthWestern testified in support of SB 265 before the Montana legislature and testified that if it became law the current arbitration would move to Montana, plaintiffs have a legitimate and reasonable concern that NorthWestern will seek to invalidate parts or all of Section 18 of the O&O Agreement and not proceed with arbitration under Section 18 to resolve the current disputes.

## FIRST CLAIM FOR RELIEF

**Declaratory Relief that SB 265 is unconstitutional as applied to the O&O Agreement under the Contracts Clause of the United States Constitution**

**(Against both Defendants)**

46. SB 265 purports to make invalid any arbitration agreement, or the venue provision within an arbitration agreement, if the arbitration agreement does not provide for arbitration within Montana with three arbitrators selected under Montana's Uniform Arbitration Act.

**Page 11 -    COMPLAINT**

47. The Parties' O&O Agreement, Section 18, provides that the Parties will resolve disputes in arbitration before a single arbitrator in an arbitration in Spokane, Washington, and that Washington's arbitration laws will apply to the arbitration procedure. Section 18 provides that the Parties will select the arbitrator and, if they cannot agree on a selection, the Superior Court in Spokane County will select the single arbitrator.

48. SB 265 is a substantial impairment of plaintiffs' rights because it purports either to invalidate the entirety of Section 18 of the O&O Agreement or to invalidate the part of Section 18 providing for venue in Spokane, because Section 18 does not provide that the arbitration will take place in Montana; Section 18 provides arbitration in Spokane, Washington.

49. SB 265 is a substantial impairment of plaintiffs' rights because it purports either to invalidate the entirety of Section 18 of the O&O Agreement or to invalidate the part of Section 18 providing for venue in Spokane, because Section 18 provides for a single arbitrator instead of three arbitrators.

50. SB 265 is a substantial impairment of plaintiffs' rights because it purports either to invalidate the entirety of Section 18 of the O&O Agreement or to invalidate the part of Section 18 providing for venue in Spokane, because Section 18 does not provide for a Montana judge to appoint the arbitrator(s) if the Parties cannot do so and for the appointment to be pursuant to Montana's Uniform

Arbitration Act; Section 18 of the O&O Agreement instead provides that a Spokane County Superior Court judge will appoint an arbitrator if the Parties do not agree on an arbitrator and that the arbitrator must have certain qualifications.

51. Invalidating the arbitration clause – which will result in state or federal court litigation to resolve disputes – is a substantial impairment of plaintiffs' contract rights.

52. Invalidating just the Spokane, Washington venue provision is substantial impairment of plaintiffs' contract rights because plaintiffs did not agree in the O&O Agreement to arbitration in Montana nor to arbitration under the Montana Uniform Arbitration Act.

53. Amending Section 18 of the O&O Agreement to comply with SB 265's requirement of arbitration before three arbitrators is a substantial impairment as it would result in a tripling of costs, and will necessarily slow any arbitration due to the extra time required to find, qualify, and hire the two extra arbitrators, and due to the extra time required for scheduling any hearing or other procedure for three, instead of just one, arbitrator.

54. Amending Section 18 of the O&O Agreement to comply with SB 265 is a substantial impairment because the O&O Agreement provides that the disputes will "be submitted to an Arbitrator having demonstrated expertise in the matter submitted." The Montana Uniform Arbitration Act has no such requirement and

Page 13 -    COMPLAINT

amending Section 18 to comply with SB 265's requirement that the arbitrator(s) be "selected under the Uniform Arbitration Act" negates that bargained-for contract right.

55. Amending Section 18 of the O&O Agreement to comply with SB 265 is a substantial impairment because the O&O Agreement provides that if the Parties could not agree upon an arbitrator, a judge in Spokane County Superior Court would select the arbitrator. Plaintiffs did not agree in Section 18 that a judge in Montana would make that selection.

56. SB 265 is not an appropriate or reasonable way to advance any significant and legitimate public purpose. No public purpose is served by changing the location, the number of arbitrators, the criteria for selecting the arbitrator (*i.e.,* removing the criteria that the arbitrator have "demonstrated expertise in the matter submitted"), and the state of the judge that selects the arbitrator. The bill is not coherently connected to a broad societal interest because it focuses on purely private rights, such as the location where the parties' arbitration will take place and the rules under which their dispute will be arbitrated.

57. There is an actual and substantial controversy between plaintiffs and defendants having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

58.     Plaintiffs are entitled to a declaration that SB 265 is unconstitutional as applied to Section 18 of the O&O Agreement, due to the Contracts Clause of the Constitution of the United States, Article I, Section 10, Clause 1.

## SECOND CLAIM FOR RELIEF

### Declaratory Relief that SB 265 is unconstitutional as applied to the O&O Agreement under the Contracts Clause of the Constitution of the State of Montana

### (Against both Defendants)

59.     Plaintiffs re-allege the allegations above and incorporate them into this claim.

60.     The Constitution of the State of Montana, Article II, Section 31, provides that: "No ex post facto law nor any law impairing the obligation of contracts . . . shall be passed by the legislature."

61.     As alleged above, SB 265 would either invalidate Section 18 of the O&O Agreement and prevent the Parties from requiring that the Parties resolve their disputes in arbitration and, hence, would lead to state or federal court litigation to resolve their disputes, or it would invalidate the part of Section 18 providing for venue for the arbitration in Spokane, Washington.

62.     As alleged above, SB 265 substantially impairs plaintiffs' rights under Section 18.

**Page 15 -     COMPLAINT**

63. As alleged above, SB 265 does not significantly advance any public purpose or societal rights because it focuses purely on private rights—the rules and location of an arbitration between private parties.

64. Further, SB 265's adjustment of rights and responsibilities of the contracting Parties is not based upon reasonable conditions and is not appropriate to the public purpose justifying SB 265.

65. There is an actual and substantial controversy between plaintiffs and defendants having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

66. Plaintiffs are entitled to a declaration that SB 265 is unconstitutional as applied to Section 18 of the O&O Agreement, due to the Contracts Clause of the Constitution of the State of Montana, Article II, Section 31.

### THIRD CLAIM FOR RELIEF

**Declaratory Relief that SB 265 is preempted as applied to the O&O Agreement under Federal Arbitration Act**

**(Against both Defendants)**

67. Plaintiffs re-allege the allegations above and incorporate them into this claim.

68. The Federal Arbitration Act ("FAA") requires courts to treat arbitration agreements as "valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

69. The FAA preempts state laws that are not generally applicable contract defenses.

70. SB 265 applies only to arbitration clauses and is not a general contract law defense. It applies only to venue clauses concerning arbitration agreements. It does not apply to venue clauses for non-arbitration agreements.

71. The FAA also preempts even generally applicable laws that apply to both arbitration and non-arbitration contracts if the state laws stand as an obstacle to the accomplishment of the FAA's objectives. The Supreme Court of the United States has stated that the FAA's principal purpose "is to ensure that private arbitration agreements are enforced *according to their terms*." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (cleaned up) (emphasis added).

72. SB 265 would either invalidate Section 18 of the O&O Agreement and prevent the Parties from requiring that the Parties resolve their disputes in arbitration and, hence, would lead to state or federal court litigation to resolve their disputes, or it would invalidate the part of Section 18 providing for venue for the arbitration in Spokane, Washington.

73. SB 265 would prevent Section 18 of the O&O Agreement from being enforced according to its terms.

**Page 17 -    COMPLAINT**

74. SB 265 would prevent plaintiffs from using the Parties' contractually agreed-upon rules to govern their own dispute.

75. There is an actual and substantial controversy between plaintiffs and defendants having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

76. Plaintiffs are entitled to a declaration that the FAA preempts the enforcement of SB 265 to Section 18 of the O&O Agreement.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that the Court:

A. Declare that SB 265 is unconstitutional as applied to Section 18 of the O&O Agreement, due to the Contracts Clause of the Constitution of the United States, Article I, Section 10, Clause 1;

B. Declare that SB 265 is unconstitutional as applied to Section 18 of the O&O Agreement, due to the Contracts Clause of the Constitution of the State of Montana, Article II, Section 31;

C. Declare that the FAA preempts the enforcement of SB 265 to Section 18 of the O&O Agreement; and

D. Award such additional relief as justice may require.

## RULE 5.1 NOTICE

Pursuant to Rule 5.1(a)(2) of the Federal Rules of Civil Procedure, plaintiffs certify that they will serve this complaint upon the Attorney General for the State of Montana after filing it with the Court.

DATED this 4th day of May, 2021.

UGRIN ALEXANDER ZADICK, P.C.

*/s/ Gary M. Zadick*
Gary M. Zadick
*Of Attorneys for Plaintiff Portland General Electric Company*

David B. Markowitz, OSB #742046
Dallas DeLuca, WSBA #45948
Harry B. Wilson, OSB #077214
(*Pro Hac Vice to be applied for all*)
MARKOWITZ HERBOLD PC
DavidMarkowitz@markowitzherbold.com
DallasDeLuca@markowitzherbold.com
HarryWilson@markowitzherbold.com
*Of Attorneys for Plaintiff Portland General Electric Company*

William J. Schroeder, WSBA #7942
(*Pro Hac Vice to be applied for*)
KSB LITIGATION P.S.
William.schroeder@Ksblit.legal
510 W Riverside, Suite 300
Spokane, WA  99201
Ph: (509) 624-8988
Fax: (509) 474-0358
*Of Attorneys for Plaintiff Avista Corporation*

Michael G. Andrea, WSBA 38684
(*Pro Hac Vice to be applied for*)
Avista Corporation, Senior Counsel
Michael.Andrea@avistacorp.com
1411 E. Mission Avenue, MSC-17
Spokane, WA 99202
Ph: (509) 495-2564
Fax: (509) 777-5468
*Of Attorneys for Plaintiff Avista Corporation*

Troy Greenfield, WSBA 21578
(*Pro Hac Vice to be applied for*)
Connie Sue M. Martin, WSBA 26525
(*Pro Hac Vice to be applied for*)
SCHWABE WILLIAMSON & WYATT
TGreenfield@Schwabe.com
CSMartin@Schwabe.com
US Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101
Ph: (206) 407-1581
Fax: (206) 292-0460
*Of Attorneys for Plaintiff PacifiCorp*

Jeffrey M. Hanson, WSBA 34871
(*Pro Hac Vice to be applied for*)
PERKINS COIE LLP
JHanson@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Ph: (206) 359-3206
Fax: (206) 359-4206
*Of Attorneys for Plaintiff Puget Sound Energy, Inc.*

1133264.4

Page 20 -    COMPLAINT