Charles E. Hansberry
Jenny M. Jourdonnais
HANSBERRY & JOURDONNAIS, PLLC
2315 McDonald Avenue, Suite 210
Missoula, MT 59801
Telephone (406) 203-1730
Telefax (406) 205-3170
chuck@hjbusinesslaw.com
jenny@hjbusinesslaw.com

Attorneys for Plaintiffs
Additional counsel of record listed on signature page

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **PORTLAND GENERAL ELECTRIC COMPANY; AVISTA CORPORATION; PACIFICORP; and PUGET SOUND ENERGY, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**NORTHWESTERN CORPORATION; TALEN MONTANA, LLC; AUSTIN KNUDSEN, in his official capacity as Attorney General for the State of Montana,**<br><br>Defendants. | Case No. 1:21-cv-00047-SPW-KLD<br><br><br>**FIRST AMENDED COMPLAINT** |

## INTRODUCTION

1.     Plaintiffs Portland General Electric Company ("PGE"), Avista

Corporation ("Avista"), PacifiCorp, and Puget Sound Energy, Inc. ("PSE"),

**Page 1 - FIRST AMENDED COMPLAINT**

(collectively, the "Pacific Northwest Owners") seek an injunction prohibiting Montana's Attorney General—defendant Austin Knudsen—from enforcing Senate Bill 266 against them, as well as a declaration that Senate Bill 266 violates the Commerce, Contract, and Due Process Clauses of the United States Constitution.

2.      Defendants Talen Montana, LLC ("Talen"), NorthWestern Corporation ("NorthWestern"), and the Pacific Northwest Owners jointly own two coal-fired electric generation units in Colstrip, Montana ("Colstrip"). The two units are governed by an Ownership and Operation Agreement, dated May 6, 1981, which has been amended four times ("O&O Agreement").

3.      The Pacific Northwest Owners face governmental mandates to eliminate the use of coal-fired electricity in states where they serve customers, which become effective as soon as 2025. Their decisions on the future of Colstrip—and whether or when to close the coal-fired units—must take these restrictions into account. Talen and NorthWestern are not subject to the restrictions, and they currently want to keep Colstrip running far into the future. This disagreement has predictably led to contract disputes, which the six owners are currently set to arbitrate pursuant to the O&O Agreement.

4.      Earlier this year, Talen and NorthWestern lobbied Montana's legislature to pass targeted legislation to impair the parties' rights under the O&O Agreement. Montana's legislature obliged by passing Senate Bill 266, which was

**Page 2 - FIRST AMENDED COMPLAINT**

signed by Montana's Governor on May 3, 2021. S.B. 265, 67th Leg., Reg. Sess. §

1 (Mont. 2021). Senate Bill 265 purports to be retroactive to January 1, 2021.

5.     Senate Bill 266 impairs the parties' rights under the O&O Agreement

and threatens $100,000 per-day fines for violations of vaguely worded provisions

in the Montana Consumer Protection Act. Senate Bill 266 impairs the Pacific

Northwest Owners' contractual rights to close one or both units with less-than-

unanimous consent and to propose and vote to close one or both units. The Pacific

Northwest Owners also face the risk that the Attorney General will interpret the

new statute broadly to request the levying of the excessively punitive fines if the

Pacific Northwest Owners (1) exercise their contractual rights with regard to

funding Colstrip, or (2) exercise their contractual rights to submit proposals to the

Committee or vote on proposals that could result in closing either, or both, of

Colstrip's units without Talen's and NorthWestern's consent.

6.     Senate Bill 266 declares the exercise of these contract rights to be

unfair and deceptive acts. The law empowers the Montana Department of Justice to

seek injunctive relief and fines of up to $100,000 per day for each day of any

violations.

7.     The sponsor of Senate Bill 266, Senator Steve Fitzpatrick, made clear

the intent of the bill was to take more control over Colstrip at the expense of the

Pacific Northwest Owners. Upon signing Senate Bill 266, Montana's Governor

**Page 3 - FIRST AMENDED COMPLAINT**

made clear that the bill is a direct attack on the Pacific Northwest and the utilities that operate there, including the Pacific Northwest Owners. The Governor wrote: "Affordable power generated in Colstrip helped build Seattle's big tech economy, but now woke, overzealous regulators in Washington State are punishing the people of Colstrip with their anti-coal agenda. Montana stands with Colstrip."

8.     This direct attack on out-of-state utilities violates the Commerce Clause because—in both purpose and effect—it favors a narrow interest of Montana in Colstrip at the expense of out-of-state utilities necessarily seeking to comply with certain governmental mandates to eliminate the use of coal-fired electricity.

9.     Senate Bill 266 also violates the Contract Clause of the United States by substantially impairing Plaintiffs' rights under the O&O Agreement for the benefit of a narrow class: Talen and NorthWestern.

10.    Senate Bill 266 is also void for vagueness under the Fourteenth Amendment of the United States Constitution. The statute fails to provide fair notice of the conduct it proscribes and fails to provide explicit standards sufficient to avoid arbitrary and discriminatory enforcement.

11.    The Pacific Northwest Owners also challenge another recently enacted Montana bill, Senate Bill 265, as applied to an arbitration clause in the O&O Agreement that requires disputes concerning the agreement to be resolved by

arbitration. Section 18 of the O&O Agreement provides for arbitration to occur in Spokane, Washington, before a single arbitrator in an arbitration held pursuant to Washington's arbitration act.

12.     Senate Bill 265 provides that: "An agreement concerning venue involving an electrical generation facility in this state is not valid unless the agreement requires that arbitration occur within the state before a panel of three arbitrators selected under the Uniform Arbitration Act unless all parties agree in writing to a single arbitrator."  S.B. 265, 67th Leg., Reg. Sess. § 1 (Mont. 2021). Senate Bill 265 purports to be retroactive to January 1, 2021.

13.     Senate Bill 265 violates the federal Contracts Clause and contracts clause of the Montana Constitution because it substantially impairs plaintiffs' contractual rights under Section 18 and does not significantly advance any public purpose.

14.     Senate Bill 265 is also preempted by the Federal Arbitration Act.

15.     NorthWestern and Talen supported, in legislative hearings, passage of Senate Bill 265.

16.     NorthWestern initiated arbitration earlier this year under Section 18 of the O&O Agreement.

**Page 5 – FIRST AMENDED COMPLAINT**

17.    There is a current and ripe dispute because Talen has demanded that this arbitration take place in Montana, that the arbitration and the Parties to it are subject to Montana courts, and that the arbitration take place with three arbitrators.

## PARTIES

18.    Plaintiff Avista is a Washington corporation with its principal place of business in Washington. Avista is an investor-owned utility that serves customers in eastern Washington, northern Idaho, and parts of Oregon. Avista also serves a small number of electric customers in Montana.

19.    Plaintiff PacifiCorp's business unit, Pacific Power, is a utility based in Oregon that serves customers in Oregon, northern California, and southeastern Washington. PacifiCorp's business unit, Rocky Mountain Power, is a utility based in Utah that serves customers in Utah, Wyoming, and southeastern Idaho. PacifiCorp is an Oregon corporation with its principal place of business in Oregon.

20.    Plaintiff PGE is an investor-owned utility based in Oregon that serves residential and business customers in Oregon. PGE is an Oregon corporation with its principal place of business in Oregon.

21.    Plaintiff PSE is an investor-owned utility based in Washington state that serves customers primarily in western Washington. PSE is a Washington corporation with its principal place of business in Washington.

**Page 6 – FIRST AMENDED COMPLAINT**

22.     Defendant NorthWestern is an investor-owned utility based in South Dakota that serves customers in Montana, South Dakota, Nebraska, and Yellowstone National Park. NorthWestern is a Delaware corporation with its principal place of business in South Dakota.

23.     Defendant Talen is an independent power producer, not a regulated utility. Talen is the Operator of Colstrip, with duties defined in the O&O Agreement. Talen, a Delaware limited liability company, is a wholly owned subsidiary of Talen Montana Holdings, LLC, which is a wholly owned subsidiary of Talen Energy Supply, LLC, which is a wholly owned subsidiary of Talen Energy Corporation, which is a Delaware corporation with its principal place of business in Texas.

24.     Defendant Austin Knudsen is the Attorney General of Montana. As Attorney General, Mr. Knudsen oversees Montana's Department of Justice. See Mont. Code Ann. § 2-15-2001. Montana's Department of Justice is, in turn, the sole agency with authority to enforce the provisions of Senate Bill 266. S.B 266 § 2(a). Mr. Knudsen is sued in his official capacity as Montana's Attorney General.

## **VENUE AND JURISDICTION**

25.     Under 28 U.S.C. § 1391(b)(2), venue is proper in the Billings Division of the Montana federal district court because Colstrip Units 3 and 4 are located in Rosebud County, Montana.

26.     The relief requested is authorized pursuant to 42 U.S.C. § 1983, the

All Writs Act, 28 U.S.C. § 1651(a), and the Declaratory Judgment Act, 28 U.S.C.

§§ 2201 and 2202.

27.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and

1367(a).

## FACTUAL ALLEGATIONS

### The O&O Agreement

28.     Colstrip Units 3 and 4 are each 740 MW coal-fired electrical

generation units. Colstrip Units 3 and 4 as well as certain Common Facilities (as

defined in the O&O Agreement), real property and property rights are called the

"Project" as that term is defined in the O&O Agreement.

29.     Colstrip is owned by Avista, NorthWestern, PacifiCorp, PGE, PSE,

and Talen. Each Party's respective ownership in Colstrip Units 3 and/or 4 is as

follows:

| Owner | Unit 3 | Unit 4 |
|---|---|---|
| Avista | 15% | 15% |
| NorthWestern | -- | 30% |
| PacifiCorp | 10% | 10% |
| PGE | 20% | 20% |
| PSE | 25% | 25% |
| Talen | 30% | -- |

**Page 8 - FIRST AMENDED COMPLAINT**

30.     The ownership and operation of Colstrip is governed by the O&O Agreement, which is an agreement between and among the Owners. The O&O Agreement was signed in 1981 and includes four subsequent amendments.

31.     The O&O Agreement establishes a Committee "to facilitate effective cooperation, interchange of information and efficient management of the Project, on a prompt and orderly basis."  Pursuant to Amendment No. 1 to the O&O Agreement: "The Committee shall be composed of five (5) members."  Each Committee member must be a party to the O&O Agreement (or a successor or assignee).

32.     The members of the Committee and their respective Project Shares for voting purposes are as follows:

| Owner | Project Share for Voting Purposes |
|---|---|
| Avista | 15% |
| PacifiCorp | 10% |
| PGE | 20% |
| PSE | 25% |
| Talen | 30% |

33.     Talen has entered into a vote sharing agreement with NorthWestern, which purports to allocate Talen's vote to Talen or NorthWestern pursuant to the terms of that vote sharing agreement.

34.     The O&O Agreement establishes how Committee members may use their Project Shares to vote on matters pertaining to Colstrip.

**Page 9 - FIRST AMENDED COMPLAINT**

35.     For most matters, the Committee may act if certain quorum requirements are satisfied and Committee members representing at least 55% of all Project Shares agree on the action. These matters include (1) "[a]ny proposal made by two Committee members appointed by Project Users other than Operator except as provided in Sections 17(j) [proposals relating to Elective Capital Additions] and 17(k) [proposals relating to the substitution or replacement of the Operator]," (§ 17(f)(i)); (2) "[c]onstruction and operating budgets and changes therein except as provided in Section 17(j)" (§ 17(f)(ii)); (3) "[e]stimate of cost of repair or damage to the Project if in excess of $2,000,000, recommendation whether to repair in whole or in part or to remove from service, and construction budget for repair of Project" (§ 17(f)(vi)); and (4) "[a]ny other action required to be taken by the Committee pursuant to this Agreement for which a procedure or voting percentage for reaching approval is not otherwise specifically provided" (§ 17(f)(xi)).

36.     A decision to close one or both units falls within broad categories of Committee votes requiring approval by Committee members representing at least 55% of the total Project Shares, including sections 17(f)(i), 17(f)(xi), and 17(i).

37.     Under section 10 of the O&O Agreement, proposals for Colstrip's operating budget "shall be subject to approval by the Committee[,] which approval shall not unreasonably be withheld."

38.    In contrast to section 10, section 7 of the O&O Agreement does not constrain Committee members when they are deciding whether to disapprove of the construction budget, which includes the budget for, among other things, "Capital Additions."

**State Restrictions on Coal-Fired Electricity and the Future of Colstrip**

39.    Some states have enacted laws in recent years restricting the use of fossil fuels, including laws that restrict the ability to use electricity produced by coal-fired electrical generating resources.

40.    Washington is one such state. In 2019, Washington passed a law requiring that "each electric utility . . . eliminate coal-fired resources from its allocation of electricity" by December 31, 2025. Wash. Rev. Code § 19.405.030(1)(a). Thus, by December 31, 2025, PSE, Avista, and PacifiCorp will no longer be able to use Colstrip to serve Washington customers (without paying substantial penalties designed to make that option economically irrational).

41.    Oregon similarly passed a law in 2016 requiring that "electric compan[ies] . . . eliminate coal-fired resources from [their] allocation of electricity" by January 1, 2030. (Senate Bill 1547, 78th Oregon Legislative Session, codified at Or. Rev. Stat. 757.518.)  Thus, by January 1, 2030, PGE and PacifiCorp will no longer be able to use Colstrip to serve Oregon customers.

**Page 11 -    FIRST AMENDED COMPLAINT**

42.     The legislation in Washington and Oregon effectively eliminates the Pacific Northwest Owners' ability to utilize Colstrip in the near future to serve their load in Washington and Oregon.

43.     Transitioning from sources of electricity is a complex and costly process that requires long-term planning to ensure utilities have sufficient generation for their customer load. To comply with the Washington and Oregon statutes, the Pacific Northwest Owners must act now to plan for and transition from Colstrip.

44.     Talen is not a public utility but rather an independent power producer. Talen sells most of its share of electricity generated at Colstrip on the wholesale market and does not have retail customers in Washington or Oregon. At a recent committee hearing of the Montana legislature, a Talen representative said Talen wants to keep Colstrip running as long as it is economically viable and that Talen supports keeping Colstrip open until 2042.

45.     NorthWestern is a public utility, but it is not subject to the Washington and Oregon statutes. NorthWestern has said publicly that it wants Colstrip to continue operating through at least 2042.

46.     The divergent interests of the Pacific Northwest Owners and Talen and NorthWestern have led to disputes.

**Page 12 -     FIRST AMENDED COMPLAINT**

**Colstrip Owners' Pending Arbitration**

47.    In a letter dated February 9, 2021, NorthWestern provided notice to

the other Parties that it was initiating the 30-day negotiation period under

Section 18 to resolve disputes under the O&O Agreement and applicable law as

to "what vote is required to close Units 3 and 4 and . . . the obligation of each co-

owner to fund operations of the [Colstrip] plant."

48.    On March 12, 2021, NorthWestern sent a demand for arbitration to

PSE, Avista, PGE, PacifiCorp, and Talen. In its demand, NorthWestern asserted

certain claims for declaratory relief, including that (1) Colstrip "cannot be shut

down except upon a unanimous vote of the Owners"; (2) "[a]ny future action by

any Owner that may have the effect of causing closure of the Project before the

Owners vote unanimously to shut down the Project is an action in breach of the

terms and conditions of the O&O Agreement"; (3) the phrase "[g]overnmental

agencies having jurisdiction" in the O&O Agreement refers to the federal and

Montana state and local agencies but not the agencies of any other state; (4) "[t]he

resource planning or other requirements that may be imposed by any governmental

entity upon an Owner as a regulated utility does not provide grounds for such

Owner to avoid or fail to fulfill any of its obligations under the O&O Agreement";

and (5) "[b]y refusing to approve the proposed 2021 Operating Budget and

insisting the Project be operated in a manner to accommodate their exit from the

Project by 2025, the Pacific Northwest Owners improperly withheld their approval of the annual operating budget."

49.   The total annual budget under the O&O Agreement for the Project is in excess of $1,000,000, and each plaintiff thus has more than $75,000 per year at issue for its share of those budgets.

50.   On March 22, 2021, the Committee members unanimously approved the 2021 operating budget (the capital budget had been approved earlier).

51.   In response to the budget-approval vote, on April 2, 2021, NorthWestern amended its demand for arbitration, revising its claims related to Colstrip budgets and asking an arbitrator to declare that, for future budget disputes, "[a]ny Owner which either proposes or withholds their approval of the annual operating budget, in whole or in part, in an effort to cause the closure of the Project by 2025 (or any other date prior to unanimous approval of the Owners to close), may be found to be in breach of the terms and conditions of the O&O Agreement."

52.   On April 20, 2021, PSE, Avista, and PGE served their responses to NorthWestern's amended arbitration demand and their own demands for arbitration, while PacifiCorp did the same on April 22, 2021. The Pacific Northwest Owners denied that NorthWestern is entitled to its requested declaratory relief, and they asserted counterclaims against NorthWestern. PacifiCorp, PGE and PSE also asserted cross-claims against Talen.

**Page 14 -   FIRST AMENDED COMPLAINT**

53.     Talen responded by letter to NorthWestern's Amended Arbitration on April 23, 2021. Talen did not respond substantively to NorthWestern's claims, but Talen is aligned with NorthWestern on its primary claims, as evident from the parties' joint lobbying in support of Senate Bill 266, as discussed below.

54.     In short, the dispute to be resolved in arbitration is whether the O&O Agreement provides that a single minority owner of Colstrip, such as NorthWestern and/or Talen, can force the Pacific Northwest Owners to keep both Colstrip units open and to fund a 70% share of operating costs in perpetuity.

55.     An arbitrator has not yet been appointed.

**Senate Bill 266**

56.     After NorthWestern served its demand for arbitration and its amended demand for arbitration, and while Colstrip's owners were preparing to arbitrate their disputes, the Montana legislature—with lobbying in support by Talen and NorthWestern—was considering Senate Bill 266. The Senate Bill penalizes Colstrip owners for exercising their rights under the O&O Agreement, by providing that any "[c]onduct by one or more owners of a jointly owned electrical generation facility in the state to bring about permanent closure of a generating unit of a facility without seeking and obtaining the consent of all co-owners of a generating unit is an unfair or deceptive act or practice."

**Page 15 -    FIRST AMENDED COMPLAINT**

57.     Talen and NorthWestern lobbied Montana's legislature to pass Senate Bill 266. For example, Talen and NorthWestern spoke in favor of the bill before the Montana Senate Committee on Business, Labor, and Economic Affairs on February 23, 2021, and before the Montana House Energy, Technology, and Federal Relations Committee on March 24, 2021. On information and belief, Talen and NorthWestern engaged in other communications and interactions with members of the Montana legislature to encourage members of the Montana legislature to pass Senate Bill 266.

58.     The "ENROLLED BILL – *Authorized Print Version*" of Senate Bill 266 is attached to this complaint as Exhibit A and is incorporated herein.

59.     Talen and NorthWestern, and the other supporters of Senate Bill 266, urged the legislature to prohibit entities from exercising the very contractual rights that the Pacific Northwest Owners are seeking to invoke.

60.     Talen's and NorthWestern's lobbying efforts succeeded. The Montana Senate passed Senate Bill 266 on February 27, 2021; the Montana House passed it on April 23, 2021; and Montana's Governor signed the bill into law on May 3, 2021. It purports to be retroactive to January 1, 2021.

61.     As enacted, Senate Bill 266 amends Montana's Consumer Protection Act to allow the Montana Attorney General to bring an action and request that fines of up to $100,000 per day be levied upon "an owner of a jointly owned

electrical generation facility in the state"—*e.g.*, Colstrip—based upon two vaguely worded conditions.

62.     The first condition, under section 2(1)(a) of Senate Bill 266, is that the Attorney General can request fines for "[t]he failure or refusal of an owner of a jointly owned electrical generation facility in the state to fund its share of operating costs associated with a jointly owned electrical generation facility . . . ." The bill defines "operating costs" to include *both* "the costs to construct, operate, and maintain the electrical generation facility in accordance with prudent utility practices," as well as "expenditures for capital improvements or replacements." *Id.* §§ 1(4)(a)–(b).

63.     The statute does not define the word "fund." Although plaintiffs contend that the plain words of this statute authorize a fine only if an owner does not pay (i.e., "fund") an invoice that is due and payable and that is for a cost authorized under an approved budget or as otherwise authorized under the O&O Agreement, plaintiffs are concerned that the Attorney General will interpret this new statute to authorize him to bring an action and seek fines for an owner voting "no" on a proposed budget.

64.     In these respects, Senate Bill 266 would punish Colstrip owners for exercising their rights under the O&O Agreement and in effect require the Pacific Northwest Owners to continue funding Colstrip.

**Page 17 -    FIRST AMENDED COMPLAINT**

65.   Senate Bill 266 also punishes owners of "jointly owned electrical generation facilit[ies]"—e.g., Colstrip—for "conduct" that may bring about the closure of one or more units of a facility unless they first seek and receive unanimous consent to do so, which impairs their rights under the terms of the O&O Agreement to close one or both units with less-than-unanimous consent and to propose and vote to close one or both units. Under section 2(1)(b) of Senate Bill 266, "[c]onduct by one or more owners of a jointly owned electrical generation facility in the state to bring about permanent closure of a generating unit of a facility without seeking and obtaining the consent of all co-owners of a generating unit is an unfair or deceptive act or practice."  The word "conduct" is not defined. This statute impairs the Pacific Northwest Owners' contractual rights under the O&O Agreement.

66.   Senate Bill 266 empowers Montana's Department of Justice to enforce the bill's prohibitions and prevent the owners from exercising their rights under the O&O Agreement. Under section 2(2)(a), "as an exclusive remedy for a violation of this section, whenever the department has reason to believe that a person is using, has used, or is about to knowingly use any . . . practice provided for in subsection (1) as an unfair or deceptive act or practice . . . and that the proceeding would be in the public interest, the department may bring an action . . . against the person to restrain . . . the unlawful . . . practice."

**Page 18 -     FIRST AMENDED COMPLAINT**

67.   Senate Bill 266 also imposes severe penalties against those who violate its prohibitions. Under section 2(b), "if a court finds that a person is willfully using or has willfully used a method, act, or practice declared unlawful by this section, the department may . . . recover . . . a civil fine of not more than $100,000 for each violation. Each day of a continuing violation constitutes a separate offense."

68.   Committee hearings on Senate Bill 266 focused almost exclusively on Colstrip, and the target of the bill was obvious:

- "This is an important piece of legislation because it allows us to have greater control over the Colstrip facility." Senator Steve Fitzpatrick, bill sponsor, before Senate Committee, February 23, 2021.

- "I think everybody knows what's going on here. We know that out in Colstrip there has been a really big push by the West Coast utilities to get out of Colstrip. And they are being pushed by their regulators in Washington and Oregon." Senator Fitzpatrick before House Committee, March 24, 2021.

- "We consider Colstrip a Montana asset that should be owned and operated by parties that have Montana's best interests in mind. . . . [The NorthWestern-initiated] arbitration is really

based upon the subject matter of this bill . . . ." NorthWestern's

lobbyist before Senate Committee, February 23, 2021.

69.     Upon signing Senate Bill 266, Montana's governor confirmed that the

bill is aimed at Colstrip and a direct attack on the Pacific Northwest and the

utilities that operate there. The governor wrote: "Affordable power generated in

Colstrip helped build Seattle's big tech economy, but now woke, overzealous

regulators in Washington State are punishing the people of Colstrip with their anti-

coal agenda. Montana stands with Colstrip."

70.     Senate Bill 266 is designed to—and unless it is declared unlawful

will—deter the Pacific Northwest Owners from exercising their rights with respect

to closing the Colstrip units and exercising their rights regarding their funding

obligations. The threat of $100,000 fines per day for exercising those rights

effectively prevents their exercise. Ultimately, Senate Bill 266 will—unless it is

declared unlawful—impair the Pacific Northwest Owners' contractual rights and

force the Pacific Northwest Owners and their customers to subsidize

NorthWestern's and Talen's continued use of Colstrip.

**Arbitration Agreement**

71.     The NorthWestern-initiated arbitration is subject to Section 18 of the

O&O Agreement, which provides, in part, as follows:

> Any controversies arising out of or relating to this
> Agreement which cannot be resolved through

**Page 20 -     FIRST AMENDED COMPLAINT**

negotiations among the Project Users within thirty (30) days after inception of the matter in dispute shall, upon demand of any Project User involved in the controversy, be submitted to an Arbitrator having demonstrated expertise in the matter submitted. If the Project Users cannot mutually agree upon such Arbitrator, then upon petition of any Project User, such Arbitrator shall be appointed by the Superior Court of the State of Washington, in and for the County of Spokane. The arbitration shall be conducted in Spokane, Washington, pursuant to the Washington Arbitration Act, RCW Chapter 7.04 as the same may be amended from time to time.

72.     Since NorthWestern served its initial Arbitration Demand, counsel for the Parties have exchanged proposals for an arbitration protocol.

73.     On March 29, 2021, and again on April 3, 2021, Talen proposed that (1) the arbitration be heard by a panel of three arbitrators, (2) the arbitration's venue be Montana, (3) Montana courts have exclusive jurisdiction over any lawsuits related to the arbitration, and (4) the Washington Uniform Arbitration Act would not apply (and, by implication, that the Montana Uniform Arbitration Act would apply).

74.     Each of these proposals is contrary to the terms of Section 18 of the O&O Agreement, and thus there is an actual controversy as to the applicability of Section 18 of the O&O Agreement.

75.     On April 13, 2021, plaintiffs here filed a petition to compel arbitration against Talen and NorthWestern in the Superior Court of the State of Washington

**Page 21 -     FIRST AMENDED COMPLAINT**

for Spokane County. Talen filed a notice of removal to federal court on May 14, 2021.

76.     On May 4, 2021, Talen filed a complaint for declaratory judgment and petition to compel arbitration in Montana District Court for Yellowstone County. Relying on the provisions of Senate Bill 265 (discussed below), Talen seeks a declaration that Sections 18 and 34(c) (requiring application of Washington's arbitration act) are invalid and requests an order to conditionally compel arbitration consistent with the terms of Senate Bill 265. The Pacific Northwest Owners removed the case to this Court on May 17, 2021.

**Senate Bill 265**

77.     On April 13, 2021, the Montana legislature passed Senate Bill 265. The "ENROLLED BILL – *Authorized Print Version*" of Senate Bill 265 is attached as Exhibit B to this complaint and is incorporated herein.

78.     On April 23, 2021, the Montana Legislature transmitted to Montana Governor Greg Gianforte Senate Bill 265. Governor Gianforte signed Senate Bill 265 into law on May 3, 2021.

79.     Senate Bill 265 amends Section 27-5-323 of the Montana Code by adding the following:

> (2)(a) An agreement concerning venue involving an electrical generation facility in this state is not valid unless the agreement requires that arbitration occur within the state before a panel of three arbitrators

selected under the [Montana] Uniform Arbitration Act
unless all parties agree in writing to a single arbitrator.

(b) For the purposes of this subsection, "electrical
generation facility" has the meaning provided in 15-24-
3001."

. . . .

[This act] applies retroactively, within the meaning of 1-
2-109, to applications made on or after January 1, 2021.

80.    Senate Bill 265 purports to invalidate parts or all of Section 18 of the

O&O Agreement because Section 18 requires that the arbitration (1) take place in

Spokane (2) before a single arbitrator (3) subject to the Washington Arbitration

Act.

81.    Talen has objected to proceeding in the current arbitration under the

terms of the O&O Agreement and instead insists upon terms similar to those

required by Senate Bill 265.

82.    Because of Talen's objections, and because Talen testified in support

of Senate Bill 265 before the Montana legislature, plaintiffs initiated this action

because they had a legitimate and reasonable concern that Talen would seek to

invalidate parts or all of Section 18 of the O&O Agreement and not proceed with

arbitration under Section 18 to resolve the current disputes. That concern proved

well founded, as Talen proved in filing its complaint on May 4, 2021 in Montana

District Court for Yellowstone County.

**Page 23 -    FIRST AMENDED COMPLAINT**

83.     Because NorthWestern testified in support of Senate Bill 265 before the Montana legislature and testified that if it became law the current arbitration would move to Montana, plaintiffs have a legitimate and reasonable concern that NorthWestern will seek to invalidate parts or all of Section 18 of the O&O Agreement and not proceed with arbitration under Section 18 to resolve the current disputes.

## FIRST CLAIM FOR RELIEF

### Declaratory Relief that Senate Bill 265 is unconstitutional as applied to the O&O Agreement under the Contracts Clause of the United States Constitution

### (Against Defendants Talen and NorthWestern)

84.     Senate Bill 265 purports to make invalid any arbitration agreement, or the venue provision within an arbitration agreement, if the arbitration agreement does not provide for arbitration within Montana with three arbitrators selected under Montana's Uniform Arbitration Act.

85.     The Parties' O&O Agreement, Section 18, provides that the Parties will resolve disputes in arbitration before a single arbitrator in an arbitration in Spokane, Washington, and that Washington's arbitration laws will apply to the arbitration procedure. Section 18 provides that the Parties will select the arbitrator and, if they cannot agree on a selection, the Superior Court in Spokane County will select the single arbitrator.

86.     Senate Bill 265 is a substantial impairment of plaintiffs' rights because it purports either to invalidate the entirety of Section 18 of the O&O Agreement or to invalidate the part of Section 18 providing for venue in Spokane, because Section 18 does not provide that the arbitration will take place in Montana; Section 18 provides arbitration in Spokane, Washington.

87.     Senate Bill 265 is a substantial impairment of plaintiffs' rights because it purports either to invalidate the entirety of Section 18 of the O&O Agreement or to invalidate the part of Section 18 providing for venue in Spokane, because Section 18 provides for a single arbitrator instead of three arbitrators.

88.     Senate Bill 265 is a substantial impairment of plaintiffs' rights because it purports either to invalidate the entirety of Section 18 of the O&O Agreement or to invalidate the part of Section 18 providing for venue in Spokane, because Section 18 does not provide for a Montana judge to appoint the arbitrator(s) if the Parties cannot do so and for the appointment to be pursuant to Montana's Uniform Arbitration Act; Section 18 of the O&O Agreement instead provides that a Spokane County Superior Court judge will appoint an arbitrator if the Parties do not agree on an arbitrator and that the arbitrator must have certain qualifications.

89.     Invalidating the arbitration clause – which will result in state or federal court litigation to resolve disputes – is a substantial impairment of plaintiffs' contract rights.

**Page 25 -     FIRST AMENDED COMPLAINT**

90.     Invalidating just the Spokane, Washington venue provision is substantial impairment of plaintiffs' contract rights because plaintiffs did not agree in the O&O Agreement to arbitration in Montana nor to arbitration under the Montana Uniform Arbitration Act.

91.     Amending Section 18 of the O&O Agreement to comply with Senate Bill 265's requirement of arbitration before three arbitrators is a substantial impairment as it would result in a tripling of costs, and will necessarily slow any arbitration due to the extra time required to find, qualify, and hire the two extra arbitrators, and due to the extra time required for scheduling any hearing or other procedure for three, instead of just one, arbitrator.

92.     Amending Section 18 of the O&O Agreement to comply with Senate Bill 265 is a substantial impairment because the O&O Agreement provides that the disputes will "be submitted to an Arbitrator having demonstrated expertise in the matter submitted."  The Montana Uniform Arbitration Act has no such requirement and amending Section 18 to comply with Senate Bill 265's requirement that the arbitrator(s) be "selected under the Uniform Arbitration Act" negates that bargained-for contract right.

93.     Amending Section 18 of the O&O Agreement to comply with Senate Bill 265 is a substantial impairment because the O&O Agreement provides that if the Parties could not agree upon an arbitrator, a judge in Spokane County Superior

Court would select the arbitrator. Plaintiffs did not agree in Section 18 that a judge in Montana would make that selection.

94.     Senate Bill 265 is not an appropriate or reasonable way to advance any significant and legitimate public purpose. No public purpose is served by changing the location, the number of arbitrators, the criteria for selecting the arbitrator (*i.e.,* removing the criteria that the arbitrator have "demonstrated expertise in the matter submitted"), and the state of the judge that selects the arbitrator. The bill is not coherently connected to a broad societal interest because it focuses on purely private rights, such as the location where the parties' arbitration will take place and the rules under which their dispute will be arbitrated.

95.     There is an actual and substantial controversy between plaintiffs and defendants having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

96.     Plaintiffs are entitled to a declaration that Senate Bill 265 is unconstitutional as applied to Section 18 of the O&O Agreement, due to the Contracts Clause of the Constitution of the United States, Article I, Section 10, Clause 1.

**Page 27 -    FIRST AMENDED COMPLAINT**

## SECOND CLAIM FOR RELIEF

**Declaratory Relief that Senate Bill 265 is unconstitutional as applied to the O&O Agreement under the Contracts Clause of the Constitution of the State of Montana**

### (Against Defendants Talen and NorthWestern)

97.     Plaintiffs re-allege the allegations above and incorporate them into this claim.

98.     The Constitution of the State of Montana, Article II, Section 31, provides that: "No ex post facto law nor any law impairing the obligation of contracts . . . shall be passed by the legislature."

99.     As alleged above, Senate Bill 265 would either invalidate Section 18 of the O&O Agreement and prevent the Parties from requiring that the Parties resolve their disputes in arbitration and, hence, would lead to state or federal court litigation to resolve their disputes, or it would invalidate the part of Section 18 providing for venue for the arbitration in Spokane, Washington.

100.   As alleged above, Senate Bill 265 substantially impairs plaintiffs' rights under Section 18.

101.   As alleged above, Senate Bill 265 does not significantly advance any public purpose or societal rights because it focuses purely on private rights—the rules and location of an arbitration between private parties.

**Page 28 -    FIRST AMENDED COMPLAINT**

102.   Further, Senate Bill 265's adjustment of rights and responsibilities of the contracting Parties is not based upon reasonable conditions and is not appropriate to the public purpose justifying Senate Bill 265.

103.   There is an actual and substantial controversy between plaintiffs and defendants having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

104.   Plaintiffs are entitled to a declaration that Senate Bill 265 is unconstitutional as applied to Section 18 of the O&O Agreement, due to the Contracts Clause of the Constitution of the State of Montana, Article II, Section 31.

## THIRD CLAIM FOR RELIEF

### Declaratory Relief that Senate Bill 265 is preempted as applied to the O&O Agreement under Federal Arbitration Act

### (Against Defendants Talen and NorthWestern)

105.   Plaintiffs re-allege the allegations above and incorporate them into this claim.

106.   The Federal Arbitration Act ("FAA") requires courts to treat arbitration agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

107.   The FAA preempts state laws that are not generally applicable contract defenses.

108.   Senate Bill 265 applies only to arbitration clauses and is not a general contract law defense. It applies only to venue clauses concerning arbitration agreements. It does not apply to venue clauses for non-arbitration agreements.

109.   The FAA also preempts even generally applicable laws that apply to both arbitration and non-arbitration contracts if the state laws stand as an obstacle to the accomplishment of the FAA's objectives. The Supreme Court of the United States has stated that the FAA's principal purpose "is to ensure that private arbitration agreements are enforced *according to their terms.*"  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (cleaned up) (emphasis added).

110.   Senate Bill 265 would either invalidate Section 18 of the O&O Agreement and prevent the Parties from requiring that the Parties resolve their disputes in arbitration and, hence, would lead to state or federal court litigation to resolve their disputes, or it would invalidate the part of Section 18 providing for venue for the arbitration in Spokane, Washington.

111.   Senate Bill 265 would prevent Section 18 of the O&O Agreement from being enforced according to its terms.

112.   Senate Bill 265 would prevent plaintiffs from using the Parties' contractually agreed-upon rules to govern their own dispute.

**Page 30 -    FIRST AMENDED COMPLAINT**

113.   There is an actual and substantial controversy between plaintiffs and defendants having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

114.   Plaintiffs are entitled to a declaration that the FAA preempts the enforcement of Senate Bill 265 to Section 18 of the O&O Agreement.

## FOURTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 (Declaratory and Injunctive Relief):
### Senate Bill 266 Violates the Commerce Clause

### (Against Defendant Austin Knudsen)

115.   Plaintiffs reallege and incorporate by reference the allegations set forth above.

116.   The Commerce Clause, set forth in Article I, Section 8, Clause 3 of the United States Constitution, grants exclusively to Congress the power "[t]o regulate Commerce . . . among the several States."

117.   "One of the fundamental purposes of the [Commerce] Clause 'was to insure . . . against discriminating State legislation.'" *Bacchus Imports Ltd. v. Dias*, 468 U.S. 263, 270 (1984) (quoting *Welton v. Missouri*, 91 U.S. 275, 280 (1876)). For this reason, the Supreme Court has "long interpreted the Commerce Clause as an implicit restraint on state authority, even in the absence of a conflicting federal statute." *Utd. Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007).

118. Under this "negative command, known as the dormant Commerce Clause," *Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175 (1995), the Constitution "prohibit[s] state or municipal laws whose object is local economic protectionism," *C&A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994). "A finding that state legislation constitutes 'economic protectionism' may be made on the basis of either discriminatory purpose or discriminatory effect." *Bacchus*, 468 U.S. at 270.

119. There is no need to "guess at the legislature's motivation" here. *Bacchus*, 468 U.S. at 271. The bill sponsor, Senator Steve Fitzpatrick, made clear that the intent of the Senate Bill 266 was to exercise more control over Colstrip for the benefit of Montana in response to regulatory mandates in Oregon and Washington. Montana's governor confirmed the same in his signing statement that Senate Bill 266 was designed to ensure "[a]ffordable power generated in Colstrip"—based in Montana—and to punish "woke, overzealous regulators in Washington State" (and thereby the Pacific Northwest Owners). Talen made this point in its testimony supporting the bill, emphasizing the importance of Colstrip to "the future of energy in Montana."

120. By threat of harsh penalties in a vaguely worded statute, Senate Bill 266 prevents the Pacific Northwest Owners from exercising their contractual rights to vote to close the Colstrip units with less-than-unanimous consent and to

propose and vote to close one or both units. And the bill presents the Pacific

Northwest Owners with the risk of substantial fines if the Attorney General reads

the statute expansively to require their approval of Colstrip budgets designed to

extend the useful life of units they will not be able to use in Washington and

Oregon. In this respect, the effect of the statute is just as discriminatory as its

intent: Despite legislative mandates to eliminate coal-fired resources from their

allocation of electricity in Oregon and/or Washington, the Pacific Northwest

Owners are forced to continue investing in a Montana power source for the benefit

of NorthWestern and Talen, against the interests of their customers and their own

economic interests.

121.    Yet even if Senate Bill 266 could somehow be considered "even-

hande[d]," and as imposing only "incidental" burdens on interstate commerce, *Pike*

*v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), it nonetheless would contravene

the Commerce Clause. Under *Pike*, even a state law that applies "even-handedly"

is unconstitutional where "the burden imposed on [interstate] commerce is clearly

excessive in relation to the putative local benefits." *Id.*

122.    Significantly, the "local benefits" that can be considered under *Pike*

do not include a state's narrow interests. *See Dean Milk Co. v. City of Madison*,

340 U.S. 349, 354 (1951) ("protecting a major local industry" not a legitimate

interest).

**Page 33 -     FIRST AMENDED COMPLAINT**

123.    There is no ascertainable interest for Montana in this statute other than keeping Colstrip open. Montana's interests in jobs for its citizens and reliable power in the future, while laudable in the abstract, are as applied here narrow interests that cannot support Senate Bill 266. The burdens on the Pacific Northwest Owners, by contrast, are great. And Senate Bill 266 is not even necessary to keep Colstrip open: under the O&O Agreement, after a vote to remove one or both units from service, the Operator can sell the units removed from service as complete units to a new owner that wants to continue to operate them.

124.    The Pacific Northwest Owners are entitled to an injunction under 42 U.S.C. § 1983 to stop Defendant Knudsen from enforcing Senate Bill 266 and impairing their rights protected by the Commerce Clause of the United States Constitution.

125.    There is an actual and substantial controversy between Plaintiffs and Defendant Knudsen having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

126.    Plaintiffs are entitled to a declaration that Senate Bill 266, as applied to the O&O Agreement, violates the Commerce Clause of the United States.

**Page 34 -    FIRST AMENDED COMPLAINT**

## FIFTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 (Declaratory and Injunctive Relief):
### Contract Clause of United States Constitution

### (Against Defendant Austin Knudsen)

127.   Article I, Section 10, Clause 1 of the United States Constitution prohibits Montana from substantially and unreasonably impairing Plaintiffs' contractual rights.

128.   Senate Bill 266 substantially and unreasonably impairs Plaintiffs' rights in at least three distinct ways.

129.   First, the O&O Agreement gives each Committee member the right to not approve the budget for Colstrip's operating costs so long as the Committee member does not "unreasonably" withhold its approval of the budget. Thus, in deciding whether to approve the budget for operating costs, a Committee member may consider a variety of factors, such as Colstrip's long-term viability or any regulatory requirements imposed on an owner.

130.   Senate Bill 266 substantially impairs that right by prohibiting, via the threat of $100,000 per-day fines, Committee members from ever, under any circumstances, "fail[ing] or refus[ing] . . . to fund its share of operating costs." S.B. 266 § 2(1)(a). Plaintiffs contend that "fund" means paying approved costs, and does not include voting for a budget that approves costs, but because Senate Bill 266 is vaguely worded, the Montana Attorney General may wrongly construe

the statute to authorize substantial daily fines for voting against a proposed

operating or capital budget. Thus, due to the vagueness in the statute and the harsh

penalties, Senate Bill 266 impairs Committee members from exercising their

contract rights when deciding whether to approve the budget for the Project's

operating costs.

131.   If so construed, the requirement that Committee members always fund

Colstrip's operating costs does not advance a significant and legitimate public

purpose. Instead, the requirement substantially impairs the Committee members'

private rights for the benefit of a narrow class: Talen and NorthWestern.

132.   Second, the O&O Agreement gives Committee members the right to

withhold approval for Capital Additions and Elective Capital Additions for any

reason.

133.   Senate Bill 266 substantially impairs that right by prohibiting, via the

threat of $100,000 per-day fines, Committee members from ever, under any

circumstances, "fail[ing] or refus[ing] . . . to fund its share of operating costs,"

which include "capital improvements or replacements." S.B. 266 §§ 1(4)(b),

2(1)(a).

134.   If so construed, Senate Bill 266's requirement that Committee

members always fund capital improvements or replacements does not advance a

significant and legitimate public purpose. Instead, the requirement substantially impairs the Committee members' private rights for the benefit of a narrow class.

135.   The O&O Agreement already contains provisions that address disputes about operating costs and capital costs that Senate Bill 266 impairs for the benefit of Talen and NorthWestern.

136.   Senate Bill 266 substantially impairs the Pacific Northwest Owners' contract rights and gives Talen and NorthWestern immense leverage in future disputes about operating costs and capital costs. For example, if Talen as Operator proposes an unreasonably high budget for operating costs and capital costs, the Pacific Northwest Owners will be forced to accept the budget (and request authorization to pass along those costs to customers, just as NorthWestern will pass along those costs to its Montana customers) or risk a $100,000 per-day fine if the Attorney General brings an action based on an expansive reading of the statute. *See* S.B. 266 § 2(2)(b).

137.   Anytime the Pacific Northwest Owners reject the Operator's proposed budget, they face the risk that the Attorney General will try to enforce an expansive reading of the statute and bring an action for fines of $100,000 per day or seek injunctive relief to force the Pacific Northwest Owners to vote for a budget that they would otherwise reject.

**Page 37 -   FIRST AMENDED COMPLAINT**

138.   Third, the O&O Agreement gives the Committee the right to close Unit 3, Unit 4, or both if certain quorum requirements are satisfied and Committee members with a total of 55% of the Project Shares vote to close the units.

139.   Senate Bill 266 substantially impairs that right by prohibiting, via a threat of imposing $100,000 per day in fines, Committee members from engaging in "[c]onduct . . . to bring about permanent closure of a generating unit of a facility without seeking and obtaining the consent of all co-owners." S.B. 266 § 2(1)(b). Senate Bill 266 therefore impairs the contract right to close a unit with 55% of Project Shares by requiring a vote of 100% of Project Shares.

140.   Senate Bill 266's unanimous consent requirement does not advance a significant and legitimate public purpose. Instead, the requirement impairs the Committee members' contract rights for the benefit of a narrow class.

141.   Absent Senate Bill 266's unanimous consent requirement, the Pacific Northwest Owners, which own 70% of Project Shares, could vote to close one or both of Units 3 and 4.

142.   If the Pacific Northwest Owners were to submit a proposal to the Committee and could vote to close Units 3 or 4 notwithstanding Senate Bill 266's unanimous consent requirement, Defendant Knudsen would presumably bring a civil action against the Pacific Northwest Owners and request fines. Thus, the Pacific Northwest Owners must choose between exercising their contractual rights

**Page 38 -   FIRST AMENDED COMPLAINT**

under the O&O agreement to seek closure of Unit 3 and/or Unit 4, on the one hand, and risk a potential $100,000 per-day fine, on the other. *See* S.B. 266 § 2(1)(b).

143.   Plaintiffs are entitled to an injunction under 42 U.S.C. § 1983 to stop Defendant Knudsen from enforcing Senate Bill 266 and impairing Plaintiffs' rights protected by the Contract Clause of the United States constitution.

144.   There is an actual and substantial controversy between Plaintiffs and Defendant Knudsen having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

145.   Plaintiffs are entitled to a declaration that Senate Bill 266, as applied to the O&O Agreement, violates the Contract Clause of the United States Constitution.

## SIXTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 (Declaratory and Injunctive Relief):
### Due Process Clause of United States Constitution

### (Against Defendant Austin Knudsen)

146.   Plaintiffs reallege and incorporate by reference the allegations set forth above.

147.   Under the Fourteenth Amendment to the United States Constitution, "No state shall . . . deprive any person of life, liberty, or property, without due process of law."

**Page 39 -   FIRST AMENDED COMPLAINT**

148.   "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

149.   Senate Bill 266 is void for vagueness for two independent reasons: It fails to provide fair notice of the conduct it proscribes and fails to provide explicit standards sufficient to avoid arbitrary and discriminatory enforcement.

150.   For example, the phrase "conduct to bring about" could be construed so broadly that it captures *any* action, no matter how preliminary or remote, that could conceivably cause Colstrip to close at some point in the future. Or the phrase could be interpreted to apply to decisions to close a generating unit, such as a non-unanimous vote by the Committee to close Colstrip. Or the phrase could be limited to actions to implement closure of a unit after a non-unanimous Committee vote to close it. Because a reasonable person of ordinary intelligence cannot discern which of these or other meanings the legislature intended, Senate Bill 266 fails to give people a fair opportunity to know what conduct runs afoul of the bill.

151.   The same language also fails to provide explicit standards and invites arbitrary and discriminatory enforcement by Defendant Knudsen and the Montana Department of Justice, potentially exposing Plaintiffs to fines of up to $100,000 per day for each day of any violations.

152.   Likewise, the provision in Senate Bill 266 making unlawful "[t]he failure or refusal of an owner . . . to fund its share of operating costs associated with a jointly owned electrical generation facility" fails to provide fair notice. The word "fund" is not defined and the words "fund its share" should mean that the statute penalizes only an owner that does not pay its proportional share of a cost that is already approved via the O&O Agreement's budget process. The provision should not penalize any owner for votes taken on proposed budgets. But, to the extent that the Montana Attorney General contends that the word "fund" also applies to votes for or against a proposed budget, the statute is vague.

153.   If Senate Bill 266 is interpreted to prohibit a vote against a proposed budget, Senate Bill 266 provides no standards and invites arbitrary and discriminatory enforcement concerning what budgets are acceptable under the statute. The statute offers no guidance as to the appropriate level of operating costs (which are defined to also include capital costs) and whether an owner is funding "its share of operating costs." This lack of guidance is particularly problematic in the context of a facility where owners propose, evaluate, approve, and disapprove proposed budgets based on their consideration of many factors, extensive data, and analyses.

154.   The same language also fails to provide explicit standards and invites arbitrary and discriminatory enforcement by Defendant Knudsen and the Montana

Department of Justice, potentially exposing Plaintiffs to fines of up to $100,000 per day for each day of any violations.

155.   Plaintiffs are entitled to an injunction under 42 U.S.C. § 1983 to stop Defendant Knudsen from enforcing Senate Bill 266 because it is void for vagueness and violates the Due Process Clause of the Fourteenth Amendment.

156.   There is an actual and substantial controversy between Plaintiffs and Defendant Knudsen having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

157.   Plaintiffs are entitled to a declaration that Senate Bill 266 violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that the Court:

A.   Declare that Senate Bill 265 is unconstitutional as applied to Section 18 of the O&O Agreement, due to the Contracts Clause of the Constitution of the United States, Article I, Section 10, Clause 1;

B.   Declare that Senate Bill 265 is unconstitutional as applied to Section 18 of the O&O Agreement, due to the Contracts Clause

of the Constitution of the State of Montana, Article II, Section 31;

C.   Declare that the FAA preempts the enforcement of Senate Bill 265 to Section 18 of the O&O Agreement;

D.   Issue an injunction prohibiting Defendant Knudsen from enforcing, or seeking to enforce, Senate Bill 266 because that state law violates the Commerce Clause of the United States Constitution;

E.   Declare that Senate Bill 266 violates the Commerce Clause of the United States Constitution;

F.   Issue an injunction prohibiting Defendant Knudsen from enforcing, or seeking to enforce, Senate Bill 266 because that state law is unconstitutional as applied to the O&O Agreement, due to the Contracts Clause of the Constitution of the United States, Article I, Section 10, Clause 1;

G.   Declare that Senate Bill 266 is unconstitutional as applied to the O&O Agreement, due to the Contracts Clause of the Constitution of the United States, Article I, Section 10, Clause 1;

H.   Issue an injunction prohibiting Defendant Knudsen from enforcing, or seeking to enforce, Senate Bill 266 because that state law violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

**Page 43 -    FIRST AMENDED COMPLAINT**

I.   Declare that Senate Bill 266 violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

J.   Award attorneys' fees under 42 U.S.C. § 1988; and

K.   Award such additional relief as justice may require.

DATED this 19th day of May, 2021.

HANSBERRY & JOURDONNAIS, PLLC

*/s/ Charles E. Hansberry*
Charles E. Hansberry
Jenny M. Jourdonnais

*Attorneys for Plaintiffs Portland General Electric Company, Avista Corporation, PacifiCorp, and Puget Sound Energy, Inc.*

Gary M. Zadick
UGRIN ALEXANDER ZADICK, P.C.
gmz@uazh.com
#2 Railroad Square, Suite B
PO Box 1746
Great Falls, MT  59403
Ph: (406) 771-0007
Fax: (406) 452-9360
*Attorneys for Plaintiff Portland General Electric Company*

**Page 44 -   FIRST AMENDED COMPLAINT**

Dallas DeLuca
Harry B. Wilson
David B. Markowitz
(*Admitted Pro Hac Vice*)
DallasDeLuca@MarkowitzHerbold.com
HarryWilson@MarkowitzHerbold.com
DavidMarkowitz@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Ph: (503) 295-3085
Fax: (503) 323-9105
*Attorneys for Plaintiff Portland General
Electric Company*

William J. Schroeder, WSBA 7942
(*Admitted Pro Hac Vice*)
KSB LITIGATION P.S.
William.schroeder@Ksblit.legal
510 W Riverside, Suite 300
Spokane, WA  99201
Ph: (509) 624-8988
Fax: (509) 474-0358
*Attorneys for Plaintiff Avista Corporation*

Michael G. Andrea
(*Admitted Pro Hac Vice*)
Avista Corporation
Michael.Andrea@avistacorp.com
1411 W. Mission Ave.
Spokane, WA 99202
Ph: (509) 495-2564
Fax: (509) 777-5468
*Attorney for Plaintiff Avista Corporation*

Troy Greenfield
Connie Sue Martin
(*Admitted Pro Hac Vice*)
SCHWABE WILLIAMSON & WYATT
TGreenfield@Schwabe.com
CSMartin@Schwabe.com
US Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA  98101
Ph: (206) 407-1581
Fax: (206) 292-0460
*Attorneys for Plaintiff PacifiCorp*

Jeffrey M. Hanson
(*Admitted Pro Hac Vice*)
Harry H. Schneider, Jr., WSBA 9404
(*Pro Hac Vice forthcoming*)
PERKINS COIE LLP
JHanson@perkinscoie.com
HSchneider@perkinscoie.com
Perkins Coie, LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101
Ph: (206) 359-8000
Fax: (206) 359-9000
*Attorneys for Plaintiff Puget Sound
Energy, Inc.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 19, 2021, a copy of the foregoing document was

served on the following persons:

Via ECF:

| | |
|---|---|
| 1. | Dallas DeLuca<br>MARKOWITZ HERBOLD, PC<br>1455 SW Broadway, Suite 1900<br>Portland, OR 97201<br>503-295-3085<br>Fax: 503-323-9105<br>Email: dallasdeluca@markowitzherbold.com<br>PRO HAC VICE<br><br>David B. Markowitz<br>MARKOWITZ HERBOLD, PC<br>1455 SW Broadway, Suite 1900<br>Portland, OR 97201<br>503-295-3085<br>Fax: 503-323-9105<br>Email: davidmarkowitz@markowitzherbold.com<br>PRO HAC VICE<br><br>Gary M. Zadick<br>UGRIN ALEXANDER ZADICK & HIGGINS<br>PO Box 1746<br>Great Falls, MT 59403-1746<br>406-771-0007<br>Fax: 452-9360<br>Email: gmz@uazh.com<br><br>Harry B. Wilson<br>MARKOWITZ HERBOLD, PC<br>1455 SW Broadway, Suite 1900<br>Portland, OR 97201<br>503-295-3085<br>Fax: 503-323-9105 |

**Page 47 -   FIRST AMENDED COMPLAINT**

|  | |
|---|---|
|  | Email: harrywilson@markowitzherbold.com<br>PRO HAC VICE<br><br>*Attorneys for Portland General Electric Company* |
| 2. | Michael G. Andrea<br>AVISTA CORPORATION<br>1411 W. Mission Ave., MSC-17<br>Spokane, WA 99202<br>509-495-2564<br>Fax: 509-777-5468<br>Email: michael.andrea@avistacorp.com<br>PRO HAC VICE<br><br>William J. Schroeder<br>KSB LITIGATION, P.S.<br>510 W. Riverside Ave., #300<br>Spokane, WA 99201<br>509-624-8988<br>Fax: 509-474-0358<br>Email: william.schroeder@ksblit.legal<br>PRO HAC VICE<br><br>*Attorneys for Avista Corporation* |
| 3. | Connie Sue Martin<br>SCHWABE WILLIAMSON & WYATT - SEATTLE<br>1420 5th Ave., Suite 3400<br>Seattle, WA 98101<br>206-407-1556<br>Fax: 206-292-0460<br>Email: csmartin@schwabe.com<br>PRO HAC VICE<br><br>Troy D. Greenfield<br>SCHWABE WILLIAMSON & WYATT - SEATTLE<br>1420 5th Ave., Suite 3400<br>Seattle, WA 98101<br>206-407-1581<br>Fax: 206-292-0460 |

| | |
|---|---|
| | Email: tgreenfield@schwabe.com<br>PRO HAC VICE<br><br>*Attorneys for PacifiCorp* |
| 4. | Jeffrey M. Hanson<br>Perkins Coie<br>1201 Third Avenue<br>Suite 4800<br>Seattle, WA 98101-3099<br>206-359-3206<br>Fax: 206-359-4206<br>Email: jhanson@perkinscoie.com<br>PRO HAC VICE<br><br>*Attorneys for Puget Sound Energy, Inc.* |
| 5. | J. David Jackson<br>DORSEY & WHITNEY<br>50 South Sixth Street<br>Suite 1500<br>Minneapolis, MN 55402-1498<br>612-340-2600<br>Fax: 340-2868<br>Email: jackson.j@dorsey.com<br>PRO HAC VICE<br><br>Stephen D. Bell<br>DORSEY & WHITNEY LLP - MISSOULA<br>125 Bank Street<br>Millennium Building, Suite 600<br>Missoula, MT 59802-4407<br>406-721-6025<br>Fax: 406-513-0863<br>Email: bell.steve@dorsey.com<br><br>*Attorneys for NorthWestern Corporation* |
| 6. | Via Email Only (by consent): |

**Page 49 -    FIRST AMENDED COMPLAINT**

|   | Robert L Sterup<br>Brown Law Firm, P.C.<br>315 North 24th Street<br>Billings, Montana 59101<br>Email: rsterup@brownfirm.com<br><br>*Attorney for Defendant Talen Montana, LLC* |
|---|---|

    __/s/ Charles E. Hansberry _____
    Charles E. Hansberry
    Jenny M. Jourdonnais
    HANSBERRY & JOURDONNAIS, PLLC
    Attorneys for Plaintiffs