Charles E. Hansberry
Jenny M. Jourdonnais
HANSBERRY & JOURDONNAIS, PLLC
2315 McDonald Avenue, Suite 210
Missoula, MT  59801
Tel:  (406) 203-1733
Fax:  (406) 205-3170
chuck@hjbusinesslaw.com
jenny@hjbusinesslaw.com

David B. Markowitz (admitted *pro hac vice*)
Dallas DeLuca (admitted *pro hac vice*)
Harry B. Wilson (admitted *pro hac vice*)
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Tel: (503) 295-3085
DavidMarkowitz@MarkowitzHerbold.com
DallasDeLuca@MarkowitzHerbold.com
HarryWilson@MarkowitzHerbold.com

Of Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA, BILLINGS DIVISION

| | |
|---|---|
| **PORTLAND GENERAL ELECTRIC COMPANY, AVISTA CORPORATION, PACIFICORP**, and **PUGET SOUND ENERGY, INC**., <br><br> Plaintiffs, <br><br> v. <br><br> **NORTHWESTERN CORPORATION; TALEN MONTANA, LLC; AUSTIN KNUDSEN**, in his official capacity as Attorney General for the State of Montana, <br><br> Defendants. | Case No. 1:21-cv-00047-SPW-KLD <br><br> **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> **ORAL ARGUMENT REQUESTED** |

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION......................................................................................1

UNDISPUTED FACTS .............................................................................2

LEGAL STANDARD ................................................................................5

ARGUMENT ............................................................................................5

I.    The Court should grant summary judgment to plaintiffs on their third claim for relief because Senate Bill 265 is preempted by the FAA.................................................................................6

    A.    Senate Bill 265 is not a "generally applicable contract defense."...............................................................................8

    B.    Senate Bill 265 is "an obstacle" to accomplishing the FAA's objectives..............................................................................12

II.    The Court should grant summary judgment to plaintiffs on their first claim for relief because Senate Bill 265 violates the Contract Clause of the United States Constitution. ...................................13

    A.    Senate Bill 265 substantially impairs the PNW Owners' rights under the O&O Agreement. ......................................14

    B.    Senate Bill 265 does not advance a significant and legitimate public purpose, nor is it an appropriate and reasonable means of advancing its purported purpose. ....................................19

        1.    Senate Bill 265 fails to advance a significant and legitimate public purpose...........................................19

        2.    Even if Senate Bill 265 had a legitimate public purpose, abrogating the Arbitration and Venue Clause is not appropriate or reasonable. ...............................22

III.    The Court should grant summary judgment to plaintiffs on their second claim for relief because Senate Bill 265 violates the Contract Clause of the Montana Constitution..........................................24

CONCLUSION........................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## **Cases**

*Allied Structural Steel Co. v. Spannaus*,
438 U.S. 234 (1978)..................................................................... 15, 20

*American Express Co. v. Italian Colors Restaurant*,
570 U.S. 228 (2013).......................................................................... 13

*Angostura Int'l Ltd. v. Melemed*,
25 F. Supp. 2d 1008 (D. Minn. 1998)................................................. 19

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)............................................................ 6, 7, 8, 10, 12

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013)............................................................................ 17

*Bell Prods., Inc. v. Hosp. Bldg. & Equip. Co.*,
2017 WL 282740 (N.D. Cal. Jan. 23, 2017)........................................ 12

*Blair v. Rent-A-Car Center, Inc.*,
928 F.3d 819 (9th Cir. 2019) .............................................................. 7

*Bradley v. Harris Research, Inc.*,
275 F.3d 884 (9th Cir. 2001) ........................................................ 11, 12

*Carmichael v. Worker's Comp. Court*,
763 P.2d 1122 (Mont. 1988) .............................................................. 24

*Celotex Corp. v Catrett*,
477 U.S. 317 (1986)............................................................................ 5

*City of Billings v. Co. Water Dist. Of Billings Heights*,
477 U.S. 317 (1986)............................................................................ 5

*Continental Illinois Nat. Bank and Trust Co. of Chicago v. State of Wash.*,
696 F.2d 692 (9th Cir. 1983) ............................................................ 23

*Doctor's Assocs., Inc. v. Casarotto*,
517 U.S. 681 (1996) ................................................................ 9, 10

*Doctor's Assocs., Inc. v. Hamilton*,
150 F.3d 157 (2d Cir. 1998) .......................................................... 11

*Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*,
459 U.S. 400 (1983) ............................................................... 20, 22

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) .......................................................... 8, 9, 13

*Equip. Mfrs. Inst. v. Janklow*,
300 F.3d 842 (8th Cir. 2002) ......................................................... 22

*Fleming v. Matco Tools Corp.*,
384 F. Supp. 3d 1124 (N.D. Cal. 2019) ................................................ 12

*Gen. Motors Corp. v. Romein*,
503 U.S. 181 (1992) .................................................................. 14

*Harris v. McRae*,
448 U.S. 297, 306-07 (1980) (1980) .................................................... 6

*In re Matco Tools Corp.*,
781 F. App'x 681 (9th Cir. 2019) ..................................................... 12

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) .......................................................... 5

*Keystone, Inc. v. Triad Systems Corp.*,
971 P.2d 1240 (Mont. 1998) ........................................................... 10

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
137 S. Ct. 1421 (2017) ................................................................ 8

*KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*,
184 F.3d 42 (1st Cir. 1999) .......................................................... 11

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019) ..................................................................... 8

*LaSalle Grp., Inc. v. Electromation of Del. Cnty., Inc.*,
880 N.E.2d 330 (Ind. Ct. App. 2008) .................................................. 11

*Milanovich v. Schnibben*,
160 P.3d 562 (Mont. 2007) ................................................................ 10

*Mortensen v. Bresnan Commc'ns, LLC*,
160 P.3d 562 (Mont. 2007) ................................................................ 10

*Nieves v. Hess Oil Virgin Islands Corp.*,
819 F.2d 1237 (3d Cir. 1987) ............................................................. 23

*OPE Int'l LP v. Chet Morrison Contractors, Inc.*,
819 F.2d 1237 (3d Cir. 1987) ............................................................. 23

*Organic Cannabis Found., LLC v. Comm'r of Internal Revenue*,
962 F.3d 1082 (9th Cir. 2020) ........................................................... 12

*Perry v. Thomas*,
482 U.S. 483 (1987) ........................................................................... 9

*Polzin v. Appleway Equip. Leasing, Inc.*,
191 P.3d 476 (Mont. 2008) ................................................................ 10

*R.A. Bright Const., Inc. v. Weis Builders, Inc.*,
930 N.E.2d 565 (2010) ....................................................................... 11

*Rattler Holdings, LLC v. United Parcel Serv., Inc.*,
505 F. Supp. 3d 1076 (D. Mont. 2020) ............................................... 10

*RUI One Corp. v. City of Berkeley*,
505 F. Supp. 3d 1076 (D. Mont. 2020) ............................................... 10

*S. Cal. Gas Co. v. City of Santa Ana*,
336 F.3d 885 (9th Cir. 2003) ............................................................. 15

*Sachse Constr. & Dev. Corp. v. Affirmed Drywall, Corp.*,
251 So. 3d 1005 (Fla. DCA 2018) .......................................................... 11

*Sakkab v. Luxottica Retail N. Am., Inc.*,
803 F.3d 425 (9th Cir. 2015) ................................................................ 12

*Seven Up Pete Venture v. State*,
114 P.3d 1009 (Mont. 2005) ................................................................. 24

*Smith v. Zepp*,
567 P.2d 923 (Mont. 1977) .................................................................. 18

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) ........................................................................... 16

*Sveen v. Melin*,
138 S. Ct. 1815 (2018) .................................................................. 14, 19

*Treigle v. Acme Homestead Association*,
297 U.S. 189 (1936) ...................................................................... 21, 22

*U.S. Trust Co. of New York v. New Jersey*,
431 U.S. 1 (1977) ............................................................................... 22

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989) ......................................................................... 6, 12

## Statutes

9 U.S.C. § 2 ........................................................................................ 7
9 U.S.C. §§ 1-2 ................................................................................... 6
M.C.A. § 27-5-323(1) ........................................................................ 10
M.C.A. § 27-5-111 ............................................................................. 18
M.C.A. § 27-5-323(2)(a) ............................................................... Passim
Mont. Const. Art. II, § 31 .................................................................. 24
Rev. Code Wash. § 7.04A.080 ............................................................ 18
Rev. Code Wash. § 7.04A.150 ............................................................ 18
U.S. Const., Art. I, § 10, cl. 1 ............................................................. 14

**Rules**

Fed. R. Civ. P. 56(a).....................................................................................5

**Other Authorities**

Restatement (Second) of Conflict of Laws § 187......................................17, 18, 19

**Exhibit Index**

Exhibit 1: True and correct excerpt of a transcript of a State of Montana House of Representatives Committee on Energy, Technology, and Federal Relations hearing on Senate Bill 265.

## INTRODUCTION

The Federal Arbitration Act ("FAA") ensures that private arbitration agreements are enforced according to their terms.  Plaintiffs Portland General Electric Company ("PGE"), Avista Corporation ("Avista"), PacifiCorp, and Puget Sound Energy, Inc. ("PSE") (collectively the "PNW Owners") and defendants NorthWestern Corporation ("NorthWestern") and Talen Montana, LLC ("Talen") are parties to a contract (the "O&O Agreement")—signed more than 40 years ago—governing their joint ownership and operation of a coal-fired electrical generation facility in Colstrip, Montana.  The O&O Agreement contains an arbitration clause.

On May 3, 2021, the State of Montana adopted Senate Bill 265, which purports to invalidate arbitration clauses in contracts governing electrical generation facilities located in Montana unless they meet specific requirements not present in the O&O Agreement's arbitration clause.  Because Montana's law stands as an obstacle to the enforcement of the O&O Agreement's arbitration clause, the FAA preempts Senate Bill 265.  The Court should grant the PNW Owners' motion for summary judgment and enter a declaration that Senate Bill 265 is unenforceable as applied to the O&O Agreement.

Senate Bill 265 is also unconstitutional under the Contract Clauses of the United States and Montana constitutions because it substantially impairs the O&O

Agreement without advancing a significant and legitimate public purpose. Even if the Court does not conclude that the FAA preempts Senate Bill 265, it should nonetheless grant summary judgment on plaintiffs' claims that Senate Bill 265 is unconstitutional.

## UNDISPUTED FACTS

The PNW Owners, Talen, and NorthWestern jointly own two coal-fired steam electric generation units in Colstrip, Montana (collectively known as "Colstrip").[1] (Statement of Undisputed Facts ("Undisputed Facts") ¶ 1.) The six companies are parties to the O&O Agreement, signed in 1981, which governs the operation of Colstrip. (*Id.* ¶ 2.) The O&O Agreement includes the following arbitration and venue clause:

> Any controversies arising out of or relating to this Agreement which cannot be resolved through negotiations among the Project Users within thirty (30) days after inception of the matter in dispute shall, upon demand of any Project User involved in the controversy, be submitted to an Arbitrator having demonstrated expertise in the matter submitted. If the Project Users cannot mutually agree upon such Arbitrator, then upon petition of any Project User, such Arbitrator shall be appointed by the Superior Court of the State of Washington, in and for the County of Spokane. The arbitration shall be conducted in Spokane, Washington, pursuant to the Washington Arbitration Act, RCW Chapter 7.04 as the same may be amended from time to time. The Arbitrator shall render his decision in writing not later than thirty (30) days after the matter has been submitted to him, and such decision shall be conclusive and binding upon the

---

[1] Colstrip presently consists of two units: Units 3 and 4. Units 1 and 2 have been retired.

Page 2 -  PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL
          SUMMARY JUDGMENT

> Project Users. The costs incurred by any arbitration proceedings shall be charged to Costs of Construction or Costs of Operation, whichever may be appropriate, provided that each party shall bear its own attorney's fees and costs of witnesses.

(O&O Agreement, § 18 ("Arbitration and Venue Clause").)  In the 40-year history of the O&O Agreement, the Arbitration and Venue Clause has never been altered. (Undisputed Facts ¶ 3.)

The PNW Owners face legislative mandates to eliminate coal-fired resources like Colstrip from their allocation of electricity for their customers in Washington and Oregon.  (*Id.* ¶ 4.)  Talen and NorthWestern want to keep Colstrip open for the indefinite future.  (*Id.*)  The PNW Owners and NorthWestern dispute whether the O&O Agreement requires unanimous consent to close Colstrip.  NorthWestern contends that the O&O Agreement requires unanimous consent to close Colstrip. (*Id.*)  The PNW Owners disagree.  (*Id.*)

On February 9, 2021, NorthWestern noticed its intent to initiate an arbitration to "obtain a definitive answer to the questions of what vote is required to close Units 3 and 4 and what is the obligation of each co-owner to fund operations of the plant."  (*Id.* ¶ 5.)  NorthWestern served an arbitration demand on March 12, 2021, and an amended arbitration demand on April 2, 2021.  (*Id.*)  The PNW Owners served responses and their own demands later in April.  (*Id.* ¶ 6.) The arbitration has not begun because the parties have been unable to agree on the selection of an arbitrator.  (*Id.*)

Page 3 -  PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

During Montana's 2021 legislative session, Montana State Senator Steve Fitzpatrick sponsored Senate Bill 265.  (*Id.* ¶ 7.)  The Bill is specifically targeted at the O&O Agreement's Arbitration and Venue Clause: it provides that any "agreement concerning venue involving an electrical generation facility in this state is not valid unless the agreement requires that arbitration occur within the state before a panel of three arbitrators selected under the [Montana] Uniform Arbitration Act unless all parties agree in writing to a single arbitrator."  (*Id.*)  Senator Fitzpatrick's testimony specifically described the O&O Agreement and the Colstrip facility, leaving no doubt that he sponsored the Bill specifically to alter the Arbitration and Venue Clause.  (*Id.* ¶ 8.)  Representatives of Talen and NorthWestern spoke in support of Senate Bill 265 in committee hearings in the Montana legislature.  (*Id.* ¶ 8.)  Representatives of the PNW Owners spoke in opposition.  (*Id.*)  The Montana Legislature passed Senate Bill 265, and it became law on May 3, 2021.  Senate Bill 265 is codified at Montana Code § 27-5-323(2)(a) (as used herein, "Senate Bill 265" refers to Senate Bill 265 and its codified statutory section).

Avista, PSE, PGE, and PacifiCorp bring three claims for relief against defendants Talen and NorthWestern related to Senate Bill 265.  Their first claim for relief seeks a declaration that Senate Bill 265 is unconstitutional under the Contract Clause of the United States Constitution.  (Am. Compl. ¶¶ 84-96.)  The

second claim seeks a declaration that Senate Bill 265 is unconstitutional under the

Contract Clause of the Montana Constitution. (*Id.* ¶¶ 97-104.)  The third claim

seeks a declaration that Senate Bill 265 is preempted by the Federal Arbitration

Act. (*Id.* ¶¶ 105-114.)  Plaintiffs also bring three claims against defendant Austin

Knudsen regarding separate legislation.  Those claims are not addressed in this

Motion.

**LEGAL STANDARD**

A party is entitled to summary judgment if "the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden

of proving the absence of a genuine issue of material fact. *Celotex Corp. v Catrett*,

477 U.S. 317, 323 (1986); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th

Cir. 2010).  Summary judgment is mandated ". . . against a party who fails to make

a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." *Celotex*

*Corp.*, 477 U.S. at 322-23.

**ARGUMENT**

There is no genuine dispute of material fact, and Senate Bill 265 is, as a

matter of law, preempted by the Federal Arbitration Act and unconstitutional under

the United States and Montana constitutions.  Because federal courts consider

statutory grounds before constitutional ones, plaintiffs begin with the FAA. *Harris v. McRae*, 448 U.S. 297, 306-07 (1980) ("[I]f a case may be decided on either statutory or constitutional grounds, this Court, for sound jurisprudential reasons, will inquire first into the statutory question.").

## I.   The Court should grant summary judgment to plaintiffs on their third claim for relief because Senate Bill 265 is preempted by the FAA.

The FAA preempts state legislation that singles out arbitration clauses or stands as an obstacle to the objectives of the FAA. Senate Bill 265 does both and is therefore preempted by the FAA.

The FAA applies to the Arbitration and Venue Clause because the O&O Agreement is a transaction in interstate commerce. 9 U.S.C. §§ 1-2. "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). The FAA guarantees private parties the "liberty to choose the terms under which they will arbitrate," *Volt*, 489 U.S. at 472 (internal citation omitted), by "giv[ing] preference . . . to arbitration provisions" and "outlaw[ing] discrimination in state policy that is unfavorable to arbitration." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013). The FAA requires courts to treat arbitration agreements as "valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity

for the revocation of any contract."  9 U.S.C. § 2.

Interpreting this language and the FAA's broader purpose, the Supreme

Court has held that a "state-law rule can be preempted by the FAA in two ways."

*See Blair v. Rent-A-Car Center, Inc.*, 928 F.3d 819, 825 (9th Cir. 2019) (citing

*Concepcion*, 563 U.S. at 339, 341).  First, the FAA preempts state laws that are not

"generally applicable contract defense[s]," as those laws "do[] not fall within the

saving clause as a 'ground[] . . . for the revocation of any contract.'"  *Id.* (quoting 9

U.S.C. § 2 and *Concepcion*, 563 U.S. at 339).  Second, even if a law is generally

applicable, the FAA still preempts such laws if they "stand[] as an obstacle to the

accomplishment of the FAA's objectives."  *Id.* (quoting *Concepcion*, 563 U.S. at

341).

Senate Bill 265 is preempted under both tests.  Senate Bill 265 amends

Montana's Uniform Arbitration Act to provide:

> An agreement concerning venue involving an electrical generation
> facility in this state is not valid unless the agreement requires that
> arbitration occur within the state before a panel of three arbitrators
> selected under the [Montana] Uniform Arbitration Act unless all
> parties agree in writing to a single arbitrator.

M.C.A. § 27-5-323(2)(a).  For arbitration agreements not meeting its requirements,

Senate Bill 265 purports to invalidate an "agreement concerning venue" (*i.e.*, the

hearing location and seat of arbitration).  The FAA preempts such statutes.

Page 7 -  PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL
            SUMMARY JUDGMENT

### A.    Senate Bill 265 is not a "generally applicable contract defense."

Senate Bill 265 is not a "generally applicable contract defense" for two reasons: (1) it specifically targets arbitration; and (2) it applies only to venue provisions in a specific subset of contracts, those "involving an electrical generation facility in this state."

*First*, Senate Bill 265 is not a "generally applicable contract defense" because it targets arbitration.  The Supreme Court has recently—and frequently—emphasized that the FAA's savings clause "cannot save from preemption general rules 'that target arbitration either by name or by more subtle methods.'"  *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019) (quoting *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018)).  So the FAA "preempts any state rule discriminating on its face against arbitration," as well as state "rules that . . . 'derive their meaning from the fact that an agreement to arbitrate is at issue.'"  *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017) (quoting *Concepcion*, 563 U.S. at 341).  Those recent decisions are consistent with longstanding Supreme Court precedent holding that the FAA does not permit state laws to target arbitration agreements for special treatment.  "[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.  A state-law principle that takes its meaning precisely from the fact that a contract to

arbitrate is at issue does not comport with" the FAA. *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (emphasis in original).

Senate Bill 265 "target[s] arbitration . . . by name." *Epic Sys. Corp.*, 138 S. Ct. at 1622. It invalidates any "agreement concerning venue . . . unless the agreement requires that *arbitration* occur" in Montana using the form of panel and set of rules mandated by the Bill. Mont. Code Ann. § 27-5 -323(2)(a) (emphasis added). The plain text of Senate Bill 265 therefore takes it outside the FAA's savings clause.

The Supreme Court's decision in *Doctor's Associates, Inc. v. Casarotto* illustrates how the FAA preempts state laws that single out arbitration agreements. 517 U.S. 681 (1996). In *Casarotto*, a Montana law declared arbitration agreements invalid unless they displayed a notice that the contract was subject to arbitration on the first page of the contract. *Id.* at 683. The parties entered a contract that did not display the required notice and, when a dispute arose and the plaintiff filed a complaint in state court, the defendant moved to compel arbitration. The case reached the Montana Supreme Court, which ruled that Montana's law invalidated the parties' arbitration agreement. The United States Supreme Court reversed. *Id.* at 689. The Court explained that the "goals and policies of the FAA . . . are antithetical to threshold limitations placed specifically and solely on arbitration provisions." *Id.* at 688. Applying Montana's notice-requirement law "would not

enforce the arbitration clause in the contract between" the parties. *Id.*
Consequently, the Court held that the FAA preempted Montana law. *Id.*

Applying *Casarotto* here yields a similar result. As in that case, this
Montana law, Senate Bill 265, places threshold limitations on the enforceability of
arbitration provisions: It purports to invalidate privately negotiated venue
provisions—only in arbitration agreements—if they do not meet a set of threshold
characteristics such as venue in Montana, application of Montana law, and number
of arbitrators. Just as the Montana law in *Casarotto* "would not enforce the
arbitration clause in the contract between" the parties, the Montana law here would
similarly disregard the terms of the parties' agreement. Accordingly, SB 265 is
preempted by the FAA.[2]

---

[2] Over two decades ago, the Montana Supreme Court held that the FAA did
not preempt the venue requirement in Montana Code section 27-5-323(1). *See
Keystone, Inc. v. Triad Systems Corp.*, 971 P.2d 1240 (Mont. 1998). Any reliance
on *Keystone* by defendants would be misplaced. *First*, *Keystone* predates
*Concepcion* and, consequently, fails to consider whether section 27-5-323(1) is
preempted because it "stands as an obstacle to the accomplishment of the FAA's
objectives." *Second*, the statutory provision at issue in *Keystone* did not target a
subset of contracts, as here. *Third*, the decision's core rationale, that Montana
invalidates forum-selection clauses generally, has been undermined by later
Montana Supreme Court decisions, as examined at length in *Rattler Holdings, LLC
v. United Parcel Serv., Inc.*, 505 F. Supp. 3d 1076, 1081-85 (D. Mont. 2020)
(citing *Polzin v. Appleway Equip. Leasing, Inc.*, 191 P.3d 476 (Mont.
2008); *Milanovich v. Schnibben*, 160 P.3d 562, 563 (Mont. 2007)). In sum,
*Keystone* lacks persuasive value.

*Second*, Senate Bill 265 is not a "generally applicable contract defense" because it is limited to venue provisions in contracts "involving an electrical generation facility in this state."  Mont. Code Ann. § 27-5-323(2)(a).  In *Bradley v. Harris Research, Inc.*, 275 F.3d 884, 892 (9th Cir. 2001), the Ninth Circuit held that the savings clause did not apply to a state statute that was limited "only to forum selection clauses in franchise agreements."  Such a statute "is not a generally applicable contract defense" because it targets a particular kind of clause in a specific subset of contracts.  *Id.*  Numerous other courts have held that similar state venue laws—which prohibit out-of-state venues for arbitrations in certain types of contracts—are preempted by the FAA.[3]

---

[3] *See, e.g.*, *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 447-48 (5th Cir. 2001) (holding that the FAA preempted a Louisiana statute that invalidated venue provisions in certain construction subcontracts that required any lawsuit or arbitration to occur in Louisiana); *Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157, 163 (2d Cir. 1998) (holding that, "to the extent that [the state-law rule] can be read to invalidate arbitral forum selection clauses in franchise agreements, it is preempted by the FAA"); *KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 51 (1st Cir. 1999) (holding that the FAA preempted a Rhode Island statute voiding out-of-state venue clauses because the statute "appli[ed] to one type of provision, venue clauses, in one type of agreement, franchise agreements"); *see also, e.g.*, *Sachse Constr. & Dev. Corp. v. Affirmed Drywall, Corp.*, 251 So. 3d 1005, 1008-10 (Fla. DCA 2018) (same for Florida statute that would invalidate venue provisions in construction contracts); *R.A. Bright Const., Inc. v. Weis Builders, Inc.*, 930 N.E.2d 565, 570-72 (2010) (same for Illinois statute that would invalidate venue provisions in Illinois construction contracts); *LaSalle Grp., Inc. v. Electromation of Del. Cnty., Inc.*, 880 N.E.2d 330, 331-33 (Ind. Ct. App. 2008) (same for Indiana statute invalidating venue provision in Indiana construction contracts).

The holding in *Bradley* controls here.[4]  Senate Bill 265 applies only to "agreement[s] concerning venue" and only if they "involv[e] an electrical generation facility."  M.C.A. § 27-5-323(2)(a).  It is therefore not a generally applicable contract defense and is preempted by the FAA.

## B.    Senate Bill 265 is "an obstacle" to accomplishing the FAA's objectives.

Senate Bill 265 is also preempted because it presents "an obstacle to the accomplishment of the FAA's objectives."  *Concepcion*, 563 U.S. at 343.  "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"  *Id.* at 344 (quoting *Volt*, 489 U.S., at 478).  "The point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute."  *Id.*

---

[4] The defendants will likely invoke a more recent Ninth Circuit decision, which questions *Bradley*'s reasoning.  *See Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432-33 & n.8 (9th Cir. 2015).  But the *Sakkab* panel did not and could not overrule *Bradley*, as there was no "intervening authority from the Supreme Court" or "en banc" Ninth Circuit that was "clearly irreconcilable" with *Bradley*. *Organic Cannabis Found., LLC v. Comm'r of Internal Revenue*, 962 F.3d 1082, 1092-93 (9th Cir. 2020) (quotation marks omitted).  Every district court to address the issue has concluded that *Bradley* "remains good law in the Ninth Circuit and binding precedent" on district courts.  *Fleming v. Matco Tools Corp.*, 384 F. Supp. 3d 1124, 1130 n.2 (N.D. Cal. 2019) (quoting *Bell Prods., Inc. v. Hosp. Bldg. & Equip. Co.*, 2017 WL 282740, at *4 (N.D. Cal. Jan. 23, 2017)).  What's more, the Ninth Circuit, in upholding the *Fleming* decision, described *Bradley* as "binding Ninth Circuit precedent" following *Sakkab*.  *See In re Matco Tools Corp.*, 781 F. App'x 681, 682-83 (9th Cir. 2019).

Page 12 - PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL
        SUMMARY JUDGMENT

Senate Bill 265 interferes with that discretion by prohibiting the parties to the O&O Agreement from enforcing the agreed-upon arbitration procedure.

Senate Bill 265 substitutes the contracting parties' discretion with the Montana legislature's discretion. The FAA firmly prohibits that sort of state interference with the terms of privately negotiated arbitration agreements. The "Arbitration Act requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted.'" *Epic Sys. Corp.*, 138 S. Ct. at 1621 (quoting *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013)). Accordingly, Senate Bill 265 presents an obstacle to the accomplishment of the FAA's objectives and is preempted.

For the reasons above, the Court should grant plaintiffs' Motion and issue a declaration that Senate Bill 265 is unenforceable as applied to the O&O Agreement because it is preempted by the FAA.

## II.    The Court should grant summary judgment to plaintiffs on their first claim for relief because Senate Bill 265 violates the Contract Clause of the United States Constitution.

The Contract Clause prohibits states from impairing the obligation of contracts. Senate Bill 265 abrogates the Arbitration and Venue Clause. Senate Bill 265 therefore violates the Contract Clause of the U.S. Constitution.

The Contract Clause prohibits states from passing any "Law impairing the Obligation of Contracts." U.S. Const., Art. I, § 10, cl. 1. The United States Supreme Court has articulated a "two-step test" to determine whether a law unconstitutionally impairs a contract.[5] *Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018). The court must resolve (1) "whether the state law has operated as a substantial impairment of a contractual relationship," and if so, (2) "whether the state law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose." *Id.* at 1821-22 (quotation marks and citations omitted). Senate Bill 265 fails at both steps.

## A.    Senate Bill 265 substantially impairs the PNW Owners' rights under the O&O Agreement.

The first part of the test "has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992). Here, there is no doubt that the parties are in a contractual relationship and Senate Bill 265 impairs that contractual relationship.

---

[5] The Ninth Circuit had previously described the test as "a three-step inquiry." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004). The difference is cosmetic, as the second and third steps in *RUI* are covered by the second step in *Sveen*. *Compare RUI*, 371 F.3d at 1147, *with Sveen*, 138 S. Ct. at 1822.

Substantial impairment to a contract "deprives a private party of an important right, thwarts performance of an essential term, defeats the expectations of the parties, or alters a financial term[.]" *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 890 (9th Cir. 2003) (citations omitted). The severity of the impairment dictates the depth of the court's inquiry. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 245 (1978). Senate Bill 265 causes a substantial impairment of the O&O Agreement because it invalidates the Arbitration and Venue Clause, depriving the PNW Owners of important rights, preventing performance of essential terms, and defeating the expectations of the parties.

The Arbitration and Venue Clause includes three key provisions. *First*, it provides that the parties shall resolve disputes arising out of or related to the O&O Agreement through arbitration conducted by a single arbitrator with "demonstrated expertise in the matter submitted." *Second*, it selects the parties' agreed venue. Any arbitration must take place in Spokane, Washington, and, if the parties cannot agree on an arbitrator, the Spokane County Superior Court will appoint one. *Third*, it establishes the parties' agreed choice of law to govern the arbitration: The Washington Arbitration Act. This choice of law is further supported in Section 34(c) of the O&O Agreement, which provides that Section 18 should be construed in accordance with Washington law. Senate Bill 265 substantially impairs each of these key provisions.

Page 15 - PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL
              SUMMARY JUDGMENT

*First*, Senate Bill 265 impairs the Arbitration and Venue Clause by providing that an "agreement concerning venue involving an electrical generation facility in this state is not valid unless" it requires arbitration before three arbitrators.  M.C.A. § 27-5-323(2).  Specifying the procedural guidelines for arbitration, such as providing for one arbitrator with expertise in the field rather than three, is an important right.  *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010) ("[P]arties are generally free to structure their arbitration agreements as they see fit . . . and may agree on rules under which any arbitration will proceed[.]  They may choose who will resolve specific disputes.") (citation omitted).  Senate Bill 265 eliminates that right.

*Second*, Senate Bill 265 abrogates the Arbitration and Venue Clause's forum selection provision by invalidating agreements concerning venue that do not provide for arbitration to occur in Montana.  But the parties intentionally selected Washington—rather than Montana—as the venue for arbitration and, if necessary, a Washington court to choose the arbitrator.  That selection is notable because other than the arbitration provision, which is governed by Washington law, the parties agreed that the remainder of the O&O Agreement is governed by Montana law.  (O&O Agreement § 34(c).)

Where, as here, parties selected a forum, courts should consider that selection critical to the agreement:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 66 (2013). The parties' selection of a Washington court to choose the arbitrator and Washington State for the location of the arbitration has represented "the parties' settled expectations" for more than 40 years; this Court should not permit Senate Bill 265 to override those expectations and contractual rights.

*Third*, Senate Bill 265 requires Montana law govern arbitrations, overturning the parties' choice of the Washington Arbitration Act. But the parties' selection of Washington law was, like their selection of a Washington forum, intentional. As the Restatement explains, choice-of-law provisions "make it possible for [parties] to foretell with accuracy what will be their rights and liabilities under the contract":

> Prime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract. These objectives may best be attained in multistate transactions by letting the parties choose the law to govern the validity of the contract and the rights created thereby. In this way, certainty and predictability of result are most likely to be secured.

Page 17 - PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Restatement (Second) of Conflict of Laws § 187 cmt. e (1971).  The parties had—

and have—an important reason for choosing Washington's law rather than

Montana's.  In 1981, when the parties signed the O&O Agreement, Washington

had a well-developed arbitration act.  Montana, in contrast, prohibited pre-dispute

arbitration provisions.  *See Smith v. Zepp*, 567 P.2d 923, 929 (Mont. 1977) ("Any

contract provision which states that all future contract disputes shall be submitted

to arbitration is void under" Montana law.).

Montana subsequently adopted parts of the Uniform Arbitration Act in 1985,

but it left many provisions out and altered others.  *Compare* M.C.A. § 27-5-111, *et*

*seq.*, *with* Rev. Code Wash. Ch. 7.04A; Burnham, S.J., "The War Against

Arbitration in Montana," 66 Mont. L. Rev. 139 (2005).  There are, today,

substantial and potentially outcome-altering differences between Washington's and

Montana's arbitration acts.  For example, the Washington statute expressly

provides for provisional remedies; Montana's does not.  Rev. Code Wash. §

7.04A.080.  The Washington Arbitration Act expressly permits summary

adjudication; Montana's does not.  Rev. Code Wash. § 7.04A.150.

If the parties had wanted to amend the O&O Agreement to apply Montana's

truncated Uniform Arbitration Act, they had ample opportunity to do so.  Indeed,

the parties amended the Agreement four times.  But they never changed the

Arbitration and Venue Clause.  The "justified expectations of the parties,"

Page 18 - PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL
            SUMMARY JUDGMENT

Restatement (Second) of Conflict of Laws § 187 cmt. e (1971), have always been that Washington's Arbitration Act—not Montana's—would govern the resolution of disputes about the O&O Agreement. Because Senate Bill 265 alters those expectations and deprives the PNW Owners of their right to and expectation of procedures like provisional remedies, protective orders, and summary adjudication, Senate Bill 265 causes a substantial impairment. *See Angostura Int'l Ltd. v. Melemed*, 25 F. Supp. 2d 1008, 1010 (D. Minn. 1998) (to the extent Minnesota legislation retroactively altered agreements to mandate arbitration for certain disputes, depriving parties of discovery, "it is a substantial impairment").

**B.    Senate Bill 265 does not advance a significant and legitimate public purpose, nor is it an appropriate and reasonable means of advancing its purported purpose.**

Because Senate Bill 265 substantially impairs the O&O Agreement, "the inquiry turns to the means and ends of the legislation." *Sveen*, 138 S. Ct. at 1822. A state law that substantially impairs a contract will still be upheld if it: (a) "is drawn in an appropriate and reasonable way," in order (b) "to advance a significant legitimate public purpose." *Id.* (quotation marks and citation omitted). Senate Bill 265 does not meet either criterion.

**1.    Senate Bill 265 fails to advance a significant and legitimate public purpose.**

Senate Bill 265 does not advance a "significant and legitimate" public purpose, such as "the remedying of a broad and general social or economic

Page 19 - PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

problem." *Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S.

400, 412 (1983). "The requirement of a legitimate public purpose guarantees that

the State is exercising its police power, rather than providing a benefit to special

interests." *Id.* When a state enacts legislation that targets a narrow class or single

employer, the state is not acting in the general public interest. *See Allied*

*Structural Steel Co. v. Spannaus*, 438 U.S. 234, 248, 250 (1978) ("[T]his law can

hardly be characterized . . . as one enacted to protect a broad societal interest rather

than a narrow class . . . [It] was imposed upon the company only because it closed

its office in the state.").

The Montana Legislature enacted Senate Bill 265 to alter the procedural

mechanism for dispute resolution in a single, specific contract, not to remedy "a

broad and general social or economic problem." *Energy Reserves*, 459 U.S. at

412. Senate Bill 265 attempts to abrogate the privately-agreed venue provision in

the O&O Agreement. The Bill's sponsor, Senator Fitzpatrick, left no doubt that

the Bill was targeted to achieve this narrow aim. (Undisputed Facts ¶ 8.) He

testified that "it's important that [Senate Bill 265] is retroactiv[e] because we have

such an important issue coming up in the NorthWestern arbitration"—referring to

NorthWestern's already pending demand for arbitration under the O&O

Agreement. (Ex. 1 to Decl. of Harry B. Wilson at 87:24-88:3.)

Laws such as Senate Bill 265 that interfere with purely private rights of parties to a contract do not advance a significant and legitimate public purpose. In *Treigle v. Acme Homestead Association*, 297 U.S. 189 (1936), the United States Supreme Court invalidated a Louisiana law that altered the rights of parties to the bylaws of building and loan associations. The law purportedly allowed associations to use their funds for operating expenses before refunding amounts to withdrawing members, among other provisions. *Id.* at 192. A withdrawing member sued to enjoin an association from following the law because it conflicted with the association's bylaws, which required a full refund of his initial investment and a share of profits within 60 days of demand, regardless of operating expenses. The association argued that the law was a valid exercise of the state's power because it "was adopted to meet the existing economic emergency." *Id.* at 195. Absent the law, the association argued, member withdrawals could imperil the existence of building and loan associations. *Id.*

The Supreme Court disagreed. It held that the Louisiana law "deal[t] only with [the] private rights" of association members. *Id.* at 197. It did "not contemplate the liquidation of associations, the conservation of their assets, or the distribution thereof amongst creditors and members." *Id.* at 195-96. "Such an interference with the right of contract cannot be justified by saying that in the public interest the operations of building associations may be controlled and

regulated, or that in the same interest their charters may be amended." *Id.* at 196.

The same is true here.  Senate Bill 265, by its terms, deals only with the private

rights of the parties to address their disputes in the venue of their choice.  It does

not contemplate Montana's energy policy or any other broad public purpose.

"There is no broad public policy interest in readjusting contractual rights and

obligations in pre-existing contracts."  *Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842,

861 n.22 (8th Cir. 2002).  As in *Treigle*, Senate Bill 265 impairs the O&O

Agreement without a significant and legitimate public purpose.

> **2.    Even if Senate Bill 265 had a legitimate public purpose, abrogating the Arbitration and Venue Clause is not appropriate or reasonable.**

Even if Senate Bill 265 had a legitimate public purpose, abrogating the

Arbitration and Venue Clause is not appropriate and reasonable to any such

purported purpose.  *Energy Reserves*, 459 U.S. at 412 (the articulated public

purpose for legislation that impairs a contract must be "based on reasonable

conditions" and of an "appropriate character" to that public purpose) (internal

quotations omitted).  The fact that a state has articulated a public purpose is

insufficient if a less drastic regulation or an alternative means could have achieved

the same public goal.  *See U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1,

29-30  (1977) (holding that repeal of covenant allowing New York Port Authority

to manage certain private railroads was not justified because lesser or alternative

means were available to achieve goals to increase mass transportation, protect the environment, and conserve energy); *Continental Illinois Nat. Bank and Trust Co. of Chicago v. State of Wash.*, 696 F.2d 692, 701 (9th Cir. 1983) (holding that altering bonds process for public utilities was not justified because other means were available to achieve same ends).

The same is true here. The State of Montana, like its neighboring states, has many options for building and maintaining its energy infrastructure other than interfering with the private business dealings of companies operating under a contract that has governed their rights and obligations for 40 years. "[S]ecuring and maintaining a reliable source of electricity" does not justify Senate Bill 265's retrospective abrogation of the rights of private parties. *See Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237, 1252 (3d Cir. 1987) ("While the need to keep the workmen's compensation fund on a sound financial basis may justify prospective legislation designed for that purpose, it cannot justify this type of retrospective legislation.").

Senate Bill 265 substantially impairs the PNW Owners' rights and obligations under the O&O Agreement, to no legitimate public purpose; and, in any event, any such purported purpose is not appropriate or reasonable. There is no dispute of material fact and, as a matter of law, Senate Bill 265 is unconstitutional under the Contract Clause of the United States Constitution.

**III.    The Court should grant summary judgment to plaintiffs on their second claim for relief because Senate Bill 265 violates the Contract Clause of the Montana Constitution.**

Like the federal constitution, the Montana Constitution prohibits the Montana Legislature from passing any law that impairs the obligation of contracts. Mont. Const. Art. II, § 31.  For the same reasons described above, Senate Bill 265 constitutes an impairment of the O&O Agreement.  It is therefore unconstitutional under the Montana Constitution.

Montana courts apply the same test that federal courts apply to the United States Constitution's Contract Clause: "(1) Is the state law a substantial impairment to the contractual relationship; (2) Does the state have a significant and legitimate purpose for the law; and, (3) Does the law impose reasonable conditions which are reasonably related to achieving the legitimate and public purpose?" *Seven Up Pete Venture v. State*, 114 P.3d 1009, 1021 (Mont. 2005) (citing *Carmichael v. Worker's Comp. Court*, 763 P.2d 1122, 1125 (Mont. 1988)).  The Montana and United States contract clauses are generally "interpreted as interchangeable guarantees against legislation impairing the obligation of contract." *City of Billings v. Co. Water Dist. Of Billings Heights*, 935 P.2d 246, 251 (Mont. 1997) (quotation marks and citations omitted).

Accordingly, the same analysis described above applies to the Montana Constitution as well.  This Court should conclude that Senate Bill 265 violates the

Page 24 - PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

Contract Clause of the Montana Constitution. *See id.* at 252 (holding that statute allowing city to raise water rates, contravening its 30-year-old contract with water utility, was not reasonably connected to articulated public purpose of statute).

## CONCLUSION

For the reasons set out above, this court should grant summary judgment on plaintiffs' first, second, and third claims for relief and issue a declaration that Senate Bill 265, M.C.A. §§ 27-5-323(2)(a), is unenforceable as applied to the O&O Agreement.

Dated this 17th day of August, 2021.

MARKOWITZ HERBOLD PC

/s/ *Harry B. Wilson*
Dallas DeLuca
David B. Markowitz
Harry B. Wilson
(Admitted Pro Hac Vice)
DallasDeLuca@MarkowitzHerbold.com
DavidMarkowitz@MarkowitzHerbold.com
HarryWilson@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Ph: (503) 295-3085
Fax: (503) 323-9105
*Attorneys for Plaintiff Portland General
 Electric Company*

HANSBERRY & JOURDONNAIS, PLLC

*/s/ Charles E. Hansberry*
Charles E. Hansberry
Jenny M. Jourdonnais
*Attorneys for Plaintiffs Portland*
*General Electric Company, Avista*
*Corporation, PacifiCorp, and Puget Sound*
*Energy, Inc.*


*/s/ Harry H. Schneider, Jr.*
Harry H. Schneider, Jr.
(*Admitted Pro Hac Vice*)
Jeffrey M. Hanson
(*Admitted Pro Hac Vice*)
Gregory F. Miller
(*Admitted Pro Hac Vice*)
PERKINS COIE LLP
HSchneider@perkinscoie.com
JHanson@perkinscoie.com
GMiller@perkinscoiecom
Perkins Coie, LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101
Ph: (206) 359-8000
Fax: (206) 359-9000
*Attorneys for Plaintiff Puget Sound*
*Energy, Inc.*

/s/ William J. Schroeder

William J. Schroeder
(*Admitted Pro Hac Vice*)
KSB LITIGATION P.S.
William.schroeder@Ksblit.legal
510 W Riverside, Suite 300
Spokane, WA  99201
Ph: (509) 624-8988
Fax: (509) 474-0358
*Attorneys for Plaintiff Avista Corporation*


/s/ Michael G. Andrea

Michael G. Andrea
(*Admitted Pro Hac Vice*)
Avista Corporation
Michael.Andrea@avistacorp.com
1411 W. Mission Ave.—MSC-17
Spokane, WA 99202
Ph: (509) 495-2564
Fax: (509) 777-5468
*Attorney for Plaintiff Avista Corporation*


/s/ Troy Greenfield

Troy Greenfield
Connie Sue Martin
(*Admitted Pro Hac Vice*)
SCHWABE WILLIAMSON & WYATT
TGreenfield@Schwabe.com
CSMartin@Schwabe.com
US Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA  98101
Ph: (206) 407-1581
Fax: (206) 292-0460
*Attorneys for Plaintiff PacifiCorp*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), I certify that this is Plaintiffs' Brief in Support of Motion for Partial Summary Judgment is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Office Word, is 5,367 words long, excluding Caption, Certificate of Service, Table of Contents and Authorities, and Certificate of Compliance.

Dated this 17th day of August, 2021.

MARKOWITZ HERBOLD PC

/s/ Harry B. Wilson
Dallas DeLuca
David B. Markowitz
Harry B. Wilson
(Admitted Pro Hac Vice)
DallasDeLuca@MarkowitzHerbold.com
DavidMarkowitz@MarkowitzHerbold.com
HarryWilson@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Ph: (503) 295-3085
Fax: (503) 323-9105
*Attorneys for Plaintiff Portland General
Electric Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2021, a copy of the foregoing document

was  served on the following persons:

Via ECF:

| | |
|---|---|
| 1. | Dallas DeLuca<br>MARKOWITZ HERBOLD, PC<br>1455 SW Broadway, Suite 1900<br>Portland, OR 97201<br>503-295-3085<br>Fax: 503-323-9105<br>Email: dallasdeluca@markowitzherbold.com<br>PRO HAC VICE<br><br>David B. Markowitz<br>MARKOWITZ HERBOLD, PC<br>1455 SW Broadway, Suite 1900<br>Portland, OR 97201<br>503-295-3085<br>Fax: 503-323-9105<br>Email: dallasdeluca@markowitzherbold.com<br>PRO HAC VICE<br><br>Gary M. Zadick<br>UGRIN ALEXANDER ZADICK & HIGGINS<br>PO Box 1746<br>Great Falls, MT 59403-1746 406-771-0007<br>Fax: 452-9360<br>Email: gmz@uazh.com<br><br>Harry B. Wilson<br>MARKOWITZ HERBOLD, PC<br>1455 SW Broadway, Suite 1900<br>Portland, OR 97201<br>503-295-3085<br>Fax: 503-323-9105 |

| | |
|---|---|
| | Email: harrywilson@markowitzherbold.com<br>PRO HAC VICE<br><br>*Attorneys for Portland General Electric Company* |
| 2. | Michael G. Andrea<br>AVISTA CORPORATION<br>1411 W. Mission Ave., MSC-17<br>Spokane, WA 99202<br>509-495-2564<br>Fax: 509-777-5468<br>Email: michael.andrea@avistacorp.com<br>PRO HAC VICE<br><br>William J. Schroeder<br>KSB LITIGATION, P.S.<br>510 W. Riverside Ave., #300<br>Spokane, WA 99201<br>509-624-8988<br>Fax: 509-474-0358<br>Email: william.schroeder@ksblit.legal<br>PRO HAC VICE<br><br>*Attorneys for Avista Corporation* |
| 3. | Connie Sue Martin<br>SCHWABE WILLIAMSON & WYATT - SEATTLE<br>1420 5th Ave., Suite 3400<br>Seattle, WA 98101<br>206-407-1556<br>Fax: 206-292-0460<br>Email: csmartin@schwabe.com<br>PRO HAC VICE<br><br>Troy D. Greenfield<br>SCHWABE WILLIAMSON & WYATT - SEATTLE<br>1420 5th Ave., Suite 3400<br>Seattle, WA 98101<br>206-407-1581<br>Fax: 206-292-0460 |

| | |
|---|---|
| | Email: tgreenfield@schwabe.com<br>PRO HAC VICE<br><br>*Attorneys for PacifiCorp* |
| 4. | Jeffrey M. Hanson<br>Perkins Coie<br>1201 Third Avenue, Suite 4800<br>Seattle, WA 98101-3099<br>206-359-3206<br>Fax: 206-359-4206<br>Email: jhanson@perkinscoie.com<br>PRO HAC VICE<br><br>Gregory F. Miller<br>Perkins Coie<br>1201 3rd Avenue<br>Suite 4900<br>Seattle, WA 98101-3099<br>206.359.8000<br>Fax: 206.359.9000<br>Email: GMiller@perkinscoie.com<br>PRO HAC VICE<br><br>Harry H. Schneider<br>Perkins Coie<br>1201 3rd Avenue<br>Suite 4900<br>Seattle, WA 98101-3099<br>206.359.8000<br>Fax: 206.359.9000<br>Email: HSchneider@perkinscoie.com<br>PRO HAC VICE<br><br>*Attorneys for Puget Sound Energy, Inc.* |
| 5. | J. David Jackson<br>DORSEY & WHITNEY<br>50 South Sixth Street, Suite 1500<br>Minneapolis, MN 55402-1498<br>612-340-2600<br>Fax: 340-2868 |

Page 31 - PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

|   | Email: jackson.j@dorsey.com |
|---|---|
|   | PRO HAC VICE |
|   |   |
|   | Stephen D. Bell |
|   | DORSEY & WHITNEY LLP - MISSOULA |
|   | 125 Bank Street, Millennium Building, Suite 600 |
|   | Missoula, MT 59802-4407 |
|   | 406-721-6025 |
|   | Fax: 406-513-0863 |
|   | Email: bell.steve@dorsey.com |
|   |   |
|   | *Attorneys for NorthWestern Corporation* |
| 6 | Adam Carlis |
|   | SUSMAN GODFREY LLP - HOUSTON |
|   | 1000 Louisiana Street |
|   | Suite 5100 |
|   | Houston, TX 77002-5096 |
|   | 713-653-7831 |
|   | Fax: 713-654-6666 |
|   | Email: acarlis@susmangodfrey.com |
|   | PRO HAC VICE |
|   |   |
|   | Alexander P. Frawley |
|   | SUSMAN GODFREY LLP - NEW YORK |
|   | 1301 Avenue of the Americas |
|   | 32nd Floor |
|   | New York, NY 10019 |
|   | 212-336-8330 |
|   | Fax: 212-336-8334 |
|   | Email: afrawley@susmangodfrey.com |
|   | PRO HAC VICE |
|   |   |
|   | Barry Barnett |
|   | SUSMAN GODFREY LLP - HOUSTON |
|   | 1000 Louisiana Street |
|   | Suite 5100 |
|   | Houston, TX 77002-5096 |
|   | 713-653-7891 |
|   | Fax: 713-654-6666 |
|   | PRO HAC VICE |

Page 32 - PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

| | |
|---|---|
| | Robert L Sterup<br>Brown Law Firm, P.C.<br>315 North 24th Street<br>Billings, Montana 59101<br>Email: rsterup@brownfirm.com<br><br>*Attorney for Defendant Talen Montana, LLC* |
| 7. | Aislinn W. Brown<br>MONTANA DEPARTMENT OF JUSTICE<br>PO Box 201440<br>Helena, MT 59620-1440<br>406-444-0160<br>Fax: 406-444-4303<br>Email: aislinn.brown@mt.gov<br><br>Derek J. Oestreicher<br>MONTANA ATTORNEY GENERAL<br>215 N Sanders<br>PO Box 201401<br>Helena, MT 59620-1401<br>406-444-2026<br>Fax: 406-444-3549<br>Email: derek.oestreicher@mt.gov<br>LEAD ATTORNEY<br>ATTORNEY TO BE NOTICED<br><br>Jeremiah R. Langston<br>MONTANA ATTORNEY GENERAL<br>PO Box 201401<br>215 North Sanders<br>Helena, MT 59620-1401<br>406-444-2026<br>Fax: 406-444-3549<br>Email: jeremiah.langston@mt.gov |

Dated this 17th day of August, 2021.

MARKOWITZ HERBOLD PC


By:   *s/ Harry B. Wilson*
      David B. Markowitz (admitted *pro hac vice*)
      Dallas DeLuca (admitted *pro hac vice*)
      Harry B. Wilson ((admitted *pro hac vice*)

HANSBERRY & JOURDONNAIS, PLLC
Charles E. Hansberry
Jenny M. Jourdonnais

      *Attorneys for Plaintiffs*