IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| PORTLAND GENERAL ELECTRIC COMPANY; AVISTA CORPORATION; PACIFICORP; and PUGET SOUND ENERGY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NORTHWESTERN CORPORATION; TALEN MONTANA, LLC; AUSTIN KNUDSEN, in his official capacity as Attorney General for the State of Montana, <br><br> Defendants. | CV 21-47-BLG-SPW <br><br><br> **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER ON PRELIMINARY INJUNCTION** |

## INTRODUCTION

Preliminary Injunction Oral Argument was held on August 6, 2021, as requested in Plaintiffs' Motion for Preliminary Injunction and accompanying Brief. (Doc. 37 and 38). Harry Schneider argued for the Plaintiffs, Jeremiah Langston appeared for the Montana Attorney General, J Jackson argued for Defendant Northwestern Corporation, and Barry Barnett argued for Defendant Talen Montana, LLC.

Having heard the arguments and reviewed the evidence and briefs submitted

1

by the parties, the Court now makes the following:

## FINDINGS OF FACT

1. Plaintiffs Portland General Electric Company, Avista Corporation, PacifiCorp, and Puget Sound Energy, Inc. (collectively "PNW Owners") are utilities providers. Avista, PacifiCorp, and Puget Sound Energy do business in Washington state and Portland General Electric Company services Oregon.

2. Colstrip Units 3 and 4 are coal-fired electric generation units in Colstrip, Montana. The Units are operated by Defendant Talen Energy.

3. The PNW Owners collectively own a 70 percent interest in Units 3 and 4 (the "Project"), with Defendant Talen owning the remaining 30 percent of Unit 3 and Defendant Northwestern owning the remaining 30 percent of Unit 4.

4. The ownership and operating procedures are delineated by the Ownership and Operation Agreement ("Agreement"). The Agreement was signed by all parties in 1981. The Agreement establishes a committee tasked with facilitating efficient management of the project. Voting shares are allocated on behalf of ownership share, with Talen and Northwestern sharing the 30 percent voting segment. Most actions by the committee require 55 percent

of votes in favor to proceed.

5. The Agreement is currently subject to a dispute between the parties that is pending arbitration. The parties are seeking clarity on their rights and obligations, including voting shares and requirements. Specifically, the parties are seeking declaratory judgment as to whether a unanimous vote is required to close Units 3 and 4 and to determine the corresponding funding obligations.

6. Oregon and Washington have each passed laws prohibiting (or substantially punishing) utilities from suppling customers with electricity produced by coal-fired resources. Washington's act goes into effect on December 31, 2025, and Oregon's prohibition begins January 1, 2030.

7. Montana Governor Greg Gianforte signed SB 266 into law on May 3, 2021. SB 266 revises the Montana Unfair Trade Practices and Consumer Protection Act to create two new violations. Section 2(a) prohibits "[t]he failure or refusal of an owner of a jointly owned electrical generation facility in the state to fund its share of operating costs associated with a jointly owned electrical generation facility." Section 2(b) proscribes "[c]onduct by one or more owners of a jointly owned electrical generation facility in the state to bring about permanent closure of a generating unit of a facility without seeking and obtaining the consent of all co-owners of a generating

3

unit."

8. Upon signing SB 266, Governor Gianforte issued the following statement: "Affordable power generated in Colstrip helped build Seattle's big tech economy, but now woke, overzealous regulators in Washington State are punishing the people of Colstrip with their anti-coal agenda. Montana stands with Colstrip."

9. SB 266 authorizes civil fines of no more than $100,000 for each violation and each day of continuing violation constitutes a separate offense. SB 266 purports to apply retroactively to actions taken by an owner on or after January 1, 2021.

10. The bill's preambulatory clauses read:

> WHEREAS, electrical generation facilities located in Montana have significant implications for the economy, environment, and health and welfare of Montana consumers; and
> WHEREAS, closure of electrical generation facilities without the unanimous consent of all co-owners threatens the reliable supply of electricity for Montanans; and
> WHEREAS, failure or refusal to fund operations of Montana electrical generation facilities by facility owners without the consent of all owners threatens the safety of workers at the facility, threatens Montana's interest in environmental remediation of the facility, and threatens the reliable supply of electricity for Montana consumers;
> WHEREAS electrical generation facility owners who fail to fund their share of operating costs without the unanimous consent of all co-owners or seek closure of an electrical generation facility without the unanimous consent of all co-owners of the facility place on Montana local government units and Montana electricity consumers the burdens of disruption in facility operations or closure of the facility; and

> WHEREAS, Montana statute prohibits unfair or deceptive acts or practices in the conduct of trade or commerce in accordance with section 30-14-103 MCA, and provides for civil action by the Department of Justice to enforce compliance with statute and for temporary, preliminary, and permanent injunctive relief and civil fine.

11. The PNW Owners assert that they do not plan to violate SB 266 this year. However, they asset that threat of punishment under SB 266 is restraining them from taking steps toward closure they would otherwise take, including budget reductions and alternative budgeting and planning scenarios involving the eventual closure of Units 3 and 4.

12. Montana Attorney General, based on Plaintiffs' representations that there is an operations and maintenance budget in place for 2021 for Colstrip Units 3 and 4, does not anticipate enforcing SB 266 in the immediate future.

13. The issue of the number of votes necessary to shutter the Project under the Agreement is currently pending in arbitration under the terms of the Agreement.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction because there is diversity of citizenship and the amount in controversy exceeds $75,000. This Court is the proper venue because Colstrip Units 3 and 4 are located in Rosebud County, Montana.

2. "A preliminary injunction is an extraordinary and drastic remedy." *Munaf v.*

*Geren*, 553 U.S. 674, 689 (2008) (internal quotation omitted). To obtain a preliminary injunction, a plaintiff must show that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tip in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008). While the plaintiff must show the existence of all four elements, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Therefore, the likelihood of success is not an absolute requirement. "Rather, serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1085 (9th Cir. 2014) (internal citation omitted).

3. The plaintiff's "burden of proof at the preliminary injunction phase tracks the burden of proof at trial." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011). The district court has discretion in deciding whether to grant a preliminary injunction. *Cottrell*, 632 F.3d at 1131.

4. PNW owners assert that the four elements are met because they are likely to prevail on Contracts Clause, Commerce Clause, and unconstitutional vagueness claims, and assert they have suffered irreparable injury and will continue to suffer because of the deprivation of constitutional rights and their inability to equally bargain given the potential liability imposed by SB 266 and long-term planning required to transition away from coal-powered energy.

## Likelihood of Success on the Merits

5. PNW Owners assert SB 266 violates the Contracts Clause, Commerce Clause, and is unconstitutionally vague.

6. The Montana Attorney General, whom the injunction request is directed at, chose to take no position on the motion or the underlying merits at this time.

### *Contracts Clause*

7. The Contracts Clause bars any state from enacting a law "impairing the obligations of contracts." U.S. Const., Art. I, § 10, cl. 1. Not all laws affecting pre-existing contracts violate the Clause. *Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018). The Court applies a two-step test: whether the state law has substantially impaired a contractual relationship, and if so; whether the state law is an appropriate and reasonable way to advance a significant

and legitimate public interest. *Id.* (citing *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244-46 (1987).

8. For the first prong, the Court considers the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents a party from safeguarding or reinstating its rights. *Id.*

9. The PNW Owners have demonstrated that SB 266 likely interferes with the Agreement. They assert that SB 266 places extra-contractual obligations upon them and that it provides an alternative remedy—punitive fines—in addition to the arbitration remedy in the Agreement. The PNW Owners have provided evidence that demonstrates how SB 266 caused them to refrain from taking steps they otherwise would toward potential closure of Units 3 and 4 during the budgeting and planning process.

10. At this stage of the analysis, this showing is sufficient to demonstrate a likelihood of success for the first prong.

11. For the second prong, the Court must look to the means and ends of the legislation, asking whether the state has a "significant and legitimate public purpose" in enacting the legislation and, if so, whether the encroachment on the contract is based on reasonable conditions and is "of a character appropriate to the public purpose justifying [the legislation's] adoption.

*Energy Reserves Group v. Kan. Power & Light Co.*, 459 U.S. 400, 411-12 (1983).

12. The PNW Owners have presented evidence, yet to be contested by the state, that the purpose of the legislation is to keep Colstrip Units 3 and 4 operating, and is narrowly targeted toward the Colstrip project, tending to weigh against finding that the legislation advances a significant and legitimate public purpose. *Id.* In its preambulatory clauses, SB 266 purports to address "the reliable supply of electricity" and "significant implications for the economy, environment, and health and welfare of Montana consumers", but the Court fails to see (and, once again, the state has not provided argument on) how non-unanimous closure imperils those interests differently than unanimous closure. At this stage, PNW Owners have demonstrated that they are likely to succeed on the second prong of the Contracts Clause analysis.

13. Accordingly, the PNW Owners have demonstrated they are reasonably likely to succeed on their Contracts Clause claim.

*Commerce Clause*

14. No state may impose a cost which discriminates against interstate commerce by providing a direct commercial advantage to a local business. *Bacchus Imports v. Dias*, 468 U.S. 263, 268 (1984); U.S. Const. Art. 1, § 8, cl. 3. "A

9

finding that state legislation constitutes economic protectionism may be made on the basis of either discriminatory purpose or discriminatory effect." *Bacchus Imps.*, 468 U.S. at 470 (internal citation omitted).

15. Discriminatory intent, whether conferring a benefit on a local producer or a harm on an out-of-state producer, violates the Commerce Clause. *Id.* at 272. Accordingly, it is irrelevant whether the legislature merely intended to aid local interests rather than to punish out-of-state interests. *Id.*

16. The PNW Owners have presented evidence, uncontroverted by the state and other defendants, that the purpose of SB 266 is to protect Colstrip Units 3 and 4 from "out-of-state corporations" and "woke, overzealous regulators in Washington state," as evidenced by the Governor's signing statement and transcript of SB 266's hearings (See Doc. 49-6, Ex. A & C). This supports a finding of discriminatory intent in passing SB 266.

17. This evidence is sufficient for the Court to conclude that the PNW Owners have demonstrated a likelihood of success on their Commerce Clause claim.

*Vagueness*

18. A law that does not provide notice to parties about what specific conduct is barred is unconstitutionally vague and violative of due process. *Forbes v. Napolitano*, 236 F.3d 1009, 1013 (9th Cir. 2000). A law is void for

vagueness if that law: (1) "fails to provide a person of ordinary intelligence fair notice of what is prohibited" or (2) "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *F.C.C. v. Fox Television Stations*, 567 U.S. 239, 253 (2012). This is especially important where the law may chill protected conduct, such as speech. *Id.* at 253-54.

19. Here, the PNW Owners have failed to meet their high burden of demonstrating a likelihood of success on this claim. Although the statute is broad and relatively indefinite about what conduct is specifically prohibited, Plaintiffs have failed to provide the Court with sufficient analysis, especially because the law prohibits conduc,t rather than protected speech. Plaintiffs' arguments on this point may be suitable for development at a later stage, but the Court cannot conclude the PNW Owners are likely to succeed to such a degree that an injunction is merited on this basis.

## Irreparable Harm

20. Irreparable harm must be likely in the absence of an injunction, not merely possible. *Winter*, 555 U.S. at 22. "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001).

21. Harm occurs, and a claim is ripe under the Contracts Clause, upon passage of the legislation when a law interferes with valid expectancy interests, creating an "actual, concrete, and particularized" injury. *Lazar v. Kronckce*, 862 F.3d 1186, 1198-99 (9th Cir. 2017). *See also Donohue v. Mangano*, 886 F. Supp. 2d 126, 152 (E.D.N.Y. 2012) (holding that irreparable harm can be demonstrated in part by substantial impairment of negotiations otherwise governed under the contract).

22. At minimum, given the broad swath of prohibited conduct under SB 266, PNW Owners are harmed at the bargaining and arbitration stages of the proceedings because they cannot freely advocate for non-unanimous closure of Units 3 and 4. Additionally, they are harmed by the retroactivity of SB 266—they could be punished for positions taken even prior to the law going into effect.

23. The PNW Owners have presented declarations that they intend to pursue avenues of transitioning away from Colstrip Units 3 and 4 because they feel they can no longer use power generated from that operation due to changes in Washington and Oregon law and that their intent is being frustrated due to the prohibitions imposed by SB 266.

24. The lack of pending enforcement action does not support an adverse finding on this factor. A plaintiff's inaction in failing to violate the law to eliminate

or mitigate the threat of adverse enforcement actions cannot also make the issue unripe. *See MedImmune, Inc. v. Genetect, Inc.*, 549 U.S. 118, 128-29 (2007). Plaintiffs are faced with expensive potential liability should they proceed with their planned course of action to transition away from Colstrip Units 3 and 4. Their decision in the interim to comply with the law cannot be held against them as they seek an injunction.

25. A robust showing of irreparable harm, as here, strongly supports the issuance of a preliminary injunction. *See Drakes Bay Oyster Co.*, 747 F.3d at 1085.

## Balancing of the Equities

26. In deciding whether the PNW Owners are entitled to a preliminary injunction, the Court has the duty to balance the interests of all parties and weigh the damage to each. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009).

27. The Montana Attorney General takes no position on the injunction; no defendant asserts it will be unduly damaged by the entry of an injunction. The PNW Owners, as outlined previously, have demonstrated they will be damaged without an injunction.

28. Therefore, the balance of equities is in the PNW Owners favor, supporting a preliminary injunction.

**Public Interest**

29. "The public interest inquiry primarily addresses impact on non-parties rather than parties." *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc.*, 725 F.3d 940, 946 (9th Cir. 2013) (internal citation omitted). The Court should look beyond the parties and into the public consequences when issuing an injunction. *Bernhardt v. Los Angeles County*, 339 F.3d 920, 931 (9th Cir. 2003). However, when the reach of a preliminary injunction is narrow and limited to the parties, the public interest is "at most a neutral factor in the analysis." *Stormans, Inc.* 586 F.3d at 1139.

30. Likely violation of parties' constitutional rights supports a finding that an injunction is in the public interest. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

31. Accordingly, because the PNW Owners assert constitutional violations with sufficient supporting evidence, an injunction is in the public interest and this prong favors the PNW Owners.

## Conclusion

32. All four factors identified in *Winter* favor the granting of a preliminary injunction, particularly given the strong likelihood of irreparable harm in the absence of injunctive relief.

### ORDER

Accordingly, IT IS HEREBY ORDERED that Plaintiff PNW Owners' Motion for a Preliminary Injunction (Doc. 37) is GRANTED.

DATED this 13th day of October 2021.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge