AUSTIN KNUDSEN
Montana Attorney General
KRISTIN HANSEN
  *Lieutenant General*
DAVID M.S. DEWHIRST
  *Solicitor General*
DEREK OESTREICHER
  *General Counsel*
AISLINN W. BROWN
  *Assistant Attorney General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
derek.oestreicher@mt.gov
aislinn.brown@mt.gov

*Attorneys for Defendant State of Montana*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| PORTLAND GENERAL ELECTRIC COMPANY; et al.<br><br>Plaintiffs,<br>v.<br><br>NORTHWESTERN CORPORATION, et al.<br><br>Defendants. | CV-21-47-SPW-KLD<br><br>**STATE OF MONTANA'S REPLY IN SUPPORT OF MOTION TO STAY** |

This Court should grant the State of Montana's motion to stay.

PNW Owners' motion for partial summary judgment as to SB 266 relies

on contract interpretations that are subject to arbitration. Even if it did not, PNW Owners' motion must be stayed because the State is entitled to conduct discovery—especially at this early stage in the proceeding where there is not even a scheduling order in place. Neither NorthWestern nor PNW Owners have successfully rebutted these realities.

## I. PNW Owners' claims are subject to arbitration.

PNW Owners agree that disputes regarding how to interpret the O&O Agreement are subject to arbitration. (Doc. 127 at 7.) In a footnote to their summary judgment brief, they nominally purported to avoid addressing some of these issues. (Doc. 104 at 17, n. 9.) But despite this assertion, they consistently rely on their interpretation of the O&O Agreement. *See* Doc. 124 at 7 (NorthWestern noting that "PNW Owners focus their argument on issues that are subject to arbitration"); Doc. 127 at 20 (contending SB 266 prevents PNW Owners from "clos[ing] Colstrip without unanimous consent").

PNW Owners essentially make two claims: (1) SB 266 harms their ability to advocate their position in arbitration that less than a unanimous vote is required to close Colstrip under the O&O Agreement; and (2) SB 266 impairs their ability to vote against a proposed budget or to

vote against spending money on other items. (Doc. 127 at 8–10.)[1] How the O&O Agreement is interpreted directly bears on both of these issues.

With respect to the first claim, according to Talen and NorthWestern, Colstrip cannot be closed without unanimous consent of the owners. (Docs. 124 at 2; 129 at 23). SB 266 mirrors this requirement, preventing PNW Owners from engaging in "Conduct . . . to bring about permanent closure of [Colstrip] without seeking and obtaining the consent of all co-owners . . . ." Mont. Code Ann. § 30-14-2702(1)(b). This statutory language is clear: it does not prohibit PNW Owners from calling a vote or taking action to close Colstrip. Rather, by its plain language, SB 266 prevents them from closing the plant *without first seeking and obtaining the consent of all co-owners*. MCA § 30-14-2702(1)(b). If Talen and NorthWestern are correct that the O&O Agreement requires unanimous consent for closure, there is no conflict with the SB 266's requirements. Therefore, the O&O Agreement must be arbitrated before this Court can decide whether SB 266's unanimity provision violates PNW Owners' rights.

---

[1] PNW Owners also claim that the potential $100,000 dollar-per-day fine is excessive, though do not claim that the fine in-and-of-itself violates their constitutional rights.

Similarly, PNW Owners' claims regarding their ability to vote on a proposed budget or against Colstrip improvements are subject to arbitration. According to Talen, the O&O Agreement requires Colstrip to "continue for so long as the Project or any part thereof . . . is, or can be made, capable of producing electricity consistent with Prudent Utility Practice or the requirements of governmental agencies having jurisdiction." (Doc. 129 at 10.) SB 266 identically prevents each PNW Owner from "fail[ing] or refus[ing] . . . to fund its share of operating costs," where "operating costs" is defined as "the costs to construct, operate, and maintain the electrical generation facility in accordance with prudent utility practices." MCA § 30-14-2702(1)(a). If Talen's interpretation of the O&O Agreement is correct, there is no conflict with SB 266. *See* Doc. 129 at 24–25.

What the O&O Agreement says is a material fact that, in the absence of completed arbitration, is disputed. The arbitration clause explicitly places that authority with an arbitrator; therefore, this Court is precluded form making any pronouncements on the O&O Agreement's meaning. Because PNW Owners' motion for summary judgment relies on their interpretation of the O&O Agreement, it must be stayed pending arbitration.

## II. The State is entitled to conduct discovery before responding to PNW Owners' premature motion.

"An explicit assumption on a motion for summary judgment is 'that both parties have had ample opportunity for discovery.'" *Parker v. United States*, No. CV 96-984 H(CM), 1996 U.S. Dist. LEXIS 12766, at *3 (S.D. Cal. July 24, 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). Summary judgment is premature where, as here, the nonmoving party has had an inadequate opportunity to conduct discovery. *See Zell v. Intercapital Income Secur., Inc.*, 675 F.2d 1041, 1049 (9th Cir. 1982) (holding "[s]ummary judgment was premature" because nonmoving party had not "been afforded reasonable discovery"); *Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 646 (9th Cir. 1981) ("Because the procedure used to enter summary judgment . . . did not provide an adequate opportunity for discovery, we vacate the entry of summary judgment . . . .").

The denial of a motion to delay summary judgment pending discovery "is generally disfavored where the party opposing summary judgment makes (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Visa Int'l Serv. Ass'n v. Bankcard Holders*

*of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986) (referring to Fed. R. Civ. P. 56(f), now located at Fed. R. Civ. P. 56(d)). Denial of a Fed. R. Civ. P. 56(d) motion to stay "is especially inappropriate where[, as here,] the material sought is also the subject of outstanding discovery requests." *Id.*

The State meets all four *Visa* prongs. First, the State timely filed its motion to stay within three weeks of PNW Owners filing their motion for partial summary judgment. Second, the State specifically identified the information it needs to respond to the motion. *See* Doc. 118. Third, this information is directly relevant to PNW Owners' claims—in fact, each information request is explicitly linked to an allegation they made. *Id.* And fourth and finally, there is a strong basis to believe this information exists because it directly pertains to PNW Owners' allegations.

PNW Owners' assertion that the State's declaration is insufficient because it does not identify specific facts is baseless and a misreading of the law. "A party seeking additional discovery under Rule 56(d) must explain what further discovery would reveal that is essential to justify its opposition to the motion for summary judgment." *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (citing *Program Eng'g, Inc. v. Triangle Publ'ns, Inc.*, 634 F.2d 1188, 1194 (9th Cir. 1980)) (cleaned up).

However, this does not require the moving party to "predict with accuracy precisely what further discovery will reveal; the whole point of discovery is to learn what a party does not know or, without further information, cannot prove." *Id.* (citation omitted). In other words, "the purpose of discovery is to aid a party in the preparation of its case." *Pac. Fisheries Inc. v. United States*, 484 F.3d 1103, 1111 (9th Cir. 2007). Rule 56(d) merely requires that "the evidence sought must be more than the object of pure speculation." *Stevens*, 899 F.3d at 678.

In the declaration supporting its motion to stay, the State noted that it "has identified a significant number of 'facts' that the Plaintiffs have alleged . . . for which the State must be permitted discovery in order to defend this case." (Doc. 118, ¶ 10.) Those facts were identified by record citations.[2] These are not "broad requests" for "general categories of evidence" (Doc. 127 at 13) but are tailored to PNW Owners' allegations (Doc. 118, ¶ 9). Far from being speculative, the State seeks information that may either support or refute statements PNW Owners have made and thus put directly at issue in this case.

---

[2] While the State cited the complaint, PNW Owners make these same allegations of harm in summary judgment; many of them word-for-word identical. *Compare, e.g.*, Doc. 32, ¶ 3, *with* Doc. 103, ¶ 4; Doc. 32, ¶¶ 9 and 127–143, with Doc. 104 at 16–20.

The "Undisputed Facts" section of PNW Owners' brief in support of summary judgment is more than eight pages long and contains repeated allegations of harm. (Doc. 104 at 7–15.) The State is entitled to conduct discovery into these allegations and has propounded requests to that end. (Doc. 117.) Perplexingly, PNW Owners contend that it is insufficient for the State to want to verify the "facts" set forth in their statement of undisputed facts because those facts "are not in dispute." (Doc. 127 at 14.) As evidenced by both NorthWestern's and Talen's responses, this is not the case. (Docs. 125, 129-1.)

Contrary to PNW Owners' assertions, the information the State seeks directly bears on summary judgment. *See* Doc. 127 at 14–17. PNW Owners claim, in one breath, that they are harmed by their need to transition from Colstrip and, in another, argue that the State's inquiry into that harm is irrelevant. As discussed above, disputes regarding the O&O Agreement are inseparable from PNW Owners' claims that SB 266 violates their constitutional rights. Information regarding part budgets and budget negotiations for Colstrip likewise is directly relevant to PNW Owners' claims that they are harmed in their budget discussions by SB 266; since the State has not been a party to these discussions, it has no

way of knowing whether or how SB 266 has prompted PNW Owners to act any differently, or whether or how the Oregon and Washington laws have impacted PNW Owners' discussions, as they contend. And finally, PNW Owners illogically contend that their summary judgment briefing and declarations are sufficient to respond to the State's inquiry into how SB 266 harms PNW owners. PNW Owners' own self-serving statements cannot serve to prevent discovery.

Proceeding with summary judgment at this stage would be highly prejudicial to the State. By contrast, particularly given the preliminary injunction in place, there is no prejudice to PNW Owners. As demonstrated in Talen's and NorthWestern's responses to PNW Owners' motion for summary judgment, PNW Owners allegedly undisputed facts are, in fact, disputed. Six months is an appropriate amount of time for the State to receive PNW Owners' discovery responses, review the documents provided, propound follow-up requests if needed, conduct depositions, and resolve any discovery disputes that might arise.

## CONCLUSION

The State's motion to stay proceedings pending arbitration of the O&O Agreement should be granted because PNW Owners' claims rely on their interpretation of that agreement, which Talen and NorthWestern dispute. Alternatively, the State must be permitted to conduct discovery into the facts PNW Owners rely on in making their motion.

Counsel for the State notes that Talen has requested oral argument on these issues and advises the Court that she will be unavailable December 10–January 2; January 31–February 3; February 12; and February 15–16.

DATED this 10th day of December, 2021.

          AUSTIN KNUDSEN
          Montana Attorney General

          KRISTIN HANSEN
           *Lieutenant General*

          DAVID M.S. DEWHIRST
           *Solicitor General*

/s/ *Aislinn W. Brown*
AISLINN W. BROWN
 *Assistant Attorney General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
p. 406.444.2026
aislinn.brown@mt.gov

*Attorney for Defendant*
 *State of Montana*

### CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 1,792 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

Dated: December 10, 2021     /s/ *Aislinn W. Brown*
                                                AISLINN W. BROWN

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: December 10, 2021      /s/ *Aislinn W. Brown*
                              AISLINN W. BROWN