Robert L. Sterup
Brown Law Firm, PC
315 North 24th Street
Billings, Montana 59101
Telephone: (406) 248-2611
Facsimile: (406) 248-3128
rsterup@brownfirm.com

Barry Barnett (admitted *pro hac vice*)
Susman Godfrey L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
bbarnett@susmangodfrey.com
Attorneys for Defendant Talen Montana, LLC
Additional Attorneys listed in signature block

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| Portland General Electric Company; Avista Corporation; PacifiCorp; and Puget Sound Energy, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> NorthWestern Corporation; Talen Montana, LLC; and Austin Knudsen, in his official capacity as Attorney General for the State of Montana, <br><br> Defendants. | Case No. 1:21-cv-00047-SPW-KLD <br><br> Defendant Talen Montana, LLC's Brief in Opposition to Defendant NorthWestern Corporation's Motion to Compel Arbitration Dkt. 120 <br><br> Oral Argument Requested |

## Table of Contents

Reasons for Opposition................................................................1

Statement of the Case...............................................................2

Facts Relevant to NorthWestern's Motion ..................................3

Argument..................................................................................6

      A.     Only Ripe Disputes Can Be Ordered to Arbitration ............7

      B.     The Issue NorthWestern Seeks to Arbitrate Is Unripe......10

Conclusion .............................................................................16

Talen Montana's Opposition to NorthWestern's Motion to Compel Arbitration

## Table of Authorities

Page(s)

<u>Cases</u>

*Clark v. City of Seattle*,
 899 F.3d 802 (9th Cir. 2018) ............................................................9

*Electronic & Space Technicians Local Union 1553 v. Raytheon Co.*,
 122 F. App'x 895 (9th Cir. 2005)....................................................10

*Lower Colorado River Authority v. Papalote Creek II, L.L.C.*,
 858 F.3d 916 (5th Cir. 2017) ....................................................*passim*

*Oil, Chemical & Atomic Workers International Union AFL-CIO v.
 Gillette Co.*,
 905 F.2d 1176 (8th Cir. 1990) .............................................9, 10, 13

*Owners Insurance Co. v. Burling Professional Cleaners, Inc.*,
 2020 WL 8367524 (C.D. Ill. Dec. 23, 2020)...................................4, 9

*Papalote Creek II, L.L.C v. Lower Colorado River Authority*,
 918 F.3d 450 (5th Cir. 2019) ............................................................9

*Papalote Creek II, L.L.C v. Lower Colorado River Authority*,
 No. 19-50850, 2021 WL 3026857 (5th Cir. July 16, 2021) ................9

*Talen Montana, LLC v. Avista Corp.*,
 No. 21-cv-58 (D. Mont.)........................................................*passim*

*Texas v. United States*,
 523 U.S. 296 (1998)........................................................................12

*Vaden v. Discover Bank*,
 556 U.S. 49 (2009)......................................................................*passim*

<u>Statutes</u>

9 U.S.C. § 4 .......................................................................................7

iii

Defendant Talen Montana, LLC ("Talen Montana") opposes the motion of defendant NorthWestern Corporation ("NorthWestern") to compel arbitration, Dkt. 120, as premature.

## Reasons for Opposition

NorthWestern asks the Court to compel Talen Montana and four other co-owners of a power plant in Colstrip, Montana ("Colstrip") to arbitrate whether their contract, the Ownership and Operation Agreement ("O&O Agreement"), allows a single co-owner to block closure of Colstrip at some point in the indefinite future. Under Article III of the United States Constitution, "the underlying dispute between the parties must be ripe in order for the district court to have jurisdiction to compel arbitration." *Lower Colorado River Authority v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 921 (5th Cir. 2017) (vacating order compelling arbitration of dispute regarding power purchase agreement). In this case, the issue that NorthWestern posits as currently arbitrable has not ripened into a live dispute. Nor would it become an actual controversy unless a co-owner takes the multiple steps necessary to require a vote of the co-owners' Project Committee on a specific proposal to budget for closure— steps that would include proving that Colstrip cannot operate consistently with

1

"Prudent Utility Practice", as Section 31 of the O&O Agreement requires. The Court should therefore deny NorthWestern's motion to compel arbitration.[1]

## **Statement of the Case**

Portland General Electric Company, Avista Corporation, PacifiCorp, and Puget Sound Energy, Inc. (the "Pacific Northwest Owners" or "PNOs") filed this lawsuit in which they seek declaratory relief regarding the constitutionality of two Montana statutes, Senate Bills 265 and 266. On the same day, Talen Montana filed a case against the PNOs and NorthWestern in the Thirteenth Judicial District Court of Yellowstone County, seeking declaratory relief regarding the parties' obligations to arbitrate under the O&O Agreement and an "order enjoining [NorthWestern and the PNOs] to comply with, and conditionally compelling them to arbitrate in accordance with the O&O Agreement as modified by," SB 265. *Talen Montana, LLC v. Avista Corp.*, No. 21-cv-58-SPW-TJC (D. Mont.), Dkt. 3 at 12. Seven months later, on December 3, NorthWestern filed a Motion to Compel Arbitration and Appoint a Magistrate Judge to Oversee Arbitration Procedure Negotiations (the

---

[1] Talen Montana remains willing to continue working with the other parties to agree on a protocol that would govern the details of any future arbitration proceeding relating to potential closure of Colstrip. It is not necessary to appoint a Magistrate Judge to supervise a process that Talen Montana has always welcomed.

2

"Motion"), Dkt. 120, and a supporting brief (the "Brief"), Dkt. 121. Talen Montana

now timely responds.

### Facts Relevant to NorthWestern's Motion

Talen Montana disagrees with NorthWestern's view that "this dispute . . .

belongs in arbitration." Brief at 1. Although NorthWestern concedes that "Talen has

not formally responded to NorthWestern's Demand or Amended Arbitration

Demand", Brief at 11, it makes no mention of the letter Talen Montana's counsel

sent to counsel for the other parties on April 23, 2021. In the letter, Talen Montana's

counsel made its position as Operator and co-owner of Colstrip abundantly clear:

Dear Counsel:

I write on behalf of our client Talen Montana, LLC.

As you know, Talen Montana serves as the Operator of the Colstrip
Units 3 and 4 Steam Electric Generating Project (Colstrip Project) for the
benefit of all Owners and Project Users, including your clients, under the
Ownership & Operation Agreement of May 6, 1981, as amended (O&O
Agreement). As you also know, *the O&O Agreement specifies procedures
for making decisions regarding the Colstrip Project and for resolving
disputes relating to them.* Unfortunately, *your clients have chosen not to
follow the procedures. They have opted instead to attempt to short circuit
the decision-making and dispute-resolution process. Talen Montana
opposes those efforts.*

Recent submissions indicate that your clients' actions were triggered
by a development external to the Colstrip Project. According to page 14 of
NorthWestern Corporation's Amended Demand for Arbitration, in 2019 the
State of Washington passed a law requiring electric utilities to "eliminate coal-

3

fired resources" for power they sell in Washington by the end of 2025, more than 4 years from now. RCW 19.405.030(1)(a).

This development may or may not affect future decisions under the O&O Agreement. To Talen Montana's knowledge, ***no party so far has taken the steps necessary under the O&O Agreement to ripen a hypothetical future dispute into an actual one that might qualify for arbitration under the letter of the O&O Agreement***.

As I have stressed to you, Talen Montana's responsibilities as Operator of the Colstrip Project obliges them to exercise judgment and discretion on behalf of the Owners and Project Users. ***The O&O Agreement prescribes orderly processes for the Operator, Owners, and Project Users to propose, consider, and make concrete decisions about ongoing and future operations. To date, your clients have not presented a live dispute over any concrete decisions. Talen Montana's duties and authority as Operator, and as one of the Owners and Project Users, may not and should not be thus bypassed.***

We are nonetheless amenable to continuing discussions that could lead to agreement on rules, procedures, and deadlines that could govern a mediation, arbitration, or other proceeding. The parties discussed reconvening on April 28 to resume talks. We look forward to hearing your views on whether a follow-up call is advisable.

Case No. 21-cv-58-SPW-TJC at Dkt. 43 at 4 (D. Mont.) (emphasis added).

Talen Montana's position has not changed. Despite knowing since no later than April 23 that they must comply with the "decision-making and dispute-resolution process" in order to bring the closure question to ripeness, no party has undertaken the steps required by the O&O Agreement to propose that Colstrip be closed in 2026 (or at any other time); nor has any party presented evidence that it is ready, willing, and able to do so; and none has contended that Prudent Utility

4

Practice ("PUP") would require closure of Colstrip now or at any time in the future. Indeed, the PNOs concede they have no plans to seek to close Colstrip in the foreseeable future. Dkt. 38 at 28. There is no concrete dispute about what vote is required to close Colstrip because no party has done anything to call a closure vote.

Talen Montana has participated actively in negotiations with NorthWestern and the PNOs over a protocol that would govern details of any future arbitration over possible closure of Colstrip. Its counsel made clear that Talen Montana viewed arbitration both as premature and as an attempt to evade the requirements of the O&O Agreement, particularly the provisions regarding decisions by the Project Committee and the "End of Project" provisions in Section 31. Counsel for Talen Montana also made clear its openness to a single arbitrator if the protocol balanced the risk of an outlier award by a single arbitrator with reasonable provisions for a transparent arbitrator-selection process, an early opportunity to seek dismissal of the arbitration as premature, discovery of fact and expert witnesses, and the venue and duration of the final hearing. Dkt. 129-1 ¶ 6; *see also* Case No. 21-cv-58-SPW-TJC (D. Mont.) at Dkt. 41-1 (copy of Talen Montana's proposal). The parties exchanged multiple drafts of their respective approaches to a protocol. Brief at 12-13. The most recent discussions appear to have broken down over safeguards in provisions for selection of an arbitrator or arbitrators. Brief at 12-13.

## **Argument**

NorthWestern's motion to compel arbitration should be denied in its entirety because there is no ripe dispute to arbitrate.

Federal courts lack jurisdiction under Article III to compel arbitration of unripe disputes. The PNOs are likely to argue that ripeness is reserved for the arbitrators, but that argument cannot be squared with Supreme Court precedent. Federal courts can only compel arbitration after first confirming that they would otherwise have jurisdiction over the underlying dispute to be arbitrated. *See Vaden v. Discover Bank*, 556 U.S. 49, 66 (2009). Ripeness is a necessary component of that jurisdiction. *Lower Colorado River Authority v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 921 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 747 (2018).

Here, the underlying dispute is not ripe because not one of the co-owners has asked that Colstrip be closed, let alone undertaken the procedures required by the O&O Agreement to propose a closure vote at any time in the future. NorthWestern's motion is premised on the idea that a party might, in the future, take such steps, but speculation cannot turn a hypothetical dispute into a ripe one. This Court therefore lacks jurisdiction to compel arbitration, and NorthWestern's motion should be denied.

6

A. <u>Only Ripe Disputes Can Be Ordered to Arbitration</u>

Courts in this Circuit and across the country refuse to compel arbitration of unripe disputes. This Court should reject any request by the PNOs to punt ripeness to the arbitrators—that question is for this Court alone—and instead deny NorthWestern's motion to compel arbitration.

"[T]he underlying dispute between the parties must be ripe in order for the district court to have jurisdiction to compel arbitration." *Lower Colorado River Authority*, 858 F.3d at 921. This rule follows from a straightforward application of *Vaden*, 556 U.S. at 66, in which the Supreme Court held: "§ 4 of the FAA does not enlarge federal-court jurisdiction[;] . . . a party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court." *Id.*; *see also* 9 U.S.C. § 4 (providing that party may "petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement"). *Vaden* rejected the argument that the "controversy between the parties," for jurisdictional purposes, refers to "the parties' discrete dispute over the arbitrability of their claims," and held that it refers

7

to "the substantive conflict between the parties" that would be the subject of the arbitration. 556 U.S. at 62-63.

Under *Vaden*, federal courts lack jurisdiction to compel arbitration of an unripe dispute. "*Vaden*'s holding necessarily implies that any of the reasons that a federal court may lack subject matter jurisdiction over the underlying dispute—e.g., ripeness—would similarly prevent a district court from having jurisdiction to compel arbitration." *Lower Colorado River*, 858 F.3d at 923. "Put another way, given *Vaden*'s holding that the district court should assume the absence of an arbitration agreement in determining whether there is jurisdiction over the underlying dispute, it necessarily follows that, if the underlying dispute is not ripe, then the district court would not have jurisdiction to compel arbitration." *Id.*

The PNOs have argued in other filings that ripeness is exclusively for the arbitrators to decide and that courts may not scrutinize whether the underlying issue is ripe for adjudication. Specifically, the PNOs claim that *Lower Colorado River* "wrongly extended . . . *Vaden* . . . to a case that did not involve a federal question." Case No. 21-cv-58-SPW-TJC, Dkt. 43 at 15. This argument cannot be squared with *Vaden's* holding: "a party seeking to compel arbitration may gain a federal court's assistance only if, save for the agreement, the entire, actual controversy between the parties, as they have framed it, *could be litigated in federal court*." *Vaden*, 556 U.S.

8

at 66 (emphasis added) (internal quotation marks omitted). The dispositive question is thus whether the dispute to be arbitrated could be litigated in federal court. Federal courts always lack subject matter jurisdiction over unripe disputes. *See Clark v. City of Seattle*, 899 F.3d 802, 808 (9th Cir. 2018) ("Ripeness is one of the justiciability doctrines that [courts] use to determine whether a case presents a live case or controversy."). Ripeness is thus a prerequisite for this Court to compel arbitration.

The PNOs ask the Court to view *Lower Colorado River* as an outlier decision, Case No. 21-cv-58-SPW-TJC, Dkt. 43 at 15, but it remains good law.[2] Other courts have followed suit. For example, in *Owners Insurance Co. v. Burling Professional Cleaners, Inc.*, 2020 WL 8367524, at *8 (C.D. Ill. Dec. 23, 2020), the court relied on *Vaden* to deny a motion to compel arbitration because the issue to be arbitrated was "premature and not ripe." Similarly, even before *Lower Colorado River*, in *Oil, Chemical & Atomic Workers International Union AFL-CIO v. Gillette Co.*, 905 F.2d 1176, 1177 (8th Cir. 1990), the court affirmed the dismissal of a petition to compel arbitration after concluding that the underlying dispute was "not ripe for

---

[2] Notably, the Fifth Circuit twice reaffirmed its decision at later stages of the case. *See Papalote Creek II, L.L.C v. Lower Colorado River Authority*, No. 19-50850, 2021 WL 3026857 (5th Cir. July 16, 2021) (affirming district court's judgment on merits of dispute); *Papalote Creek II, L.L.C v. Lower Colorado River Authority*, 918 F.3d 450 (5th Cir. 2019) (holding that, although dispute over Power Purchase Agreement ("PPA") had ripened when power purchaser gave notice it would curtail purchases, dispute fell outside arbitration clause in the PPA).

9

adjudication." *Id.* at 1177; *see also Elec. & Space Techs. Loc. Union 1553 v. Raytheon Co.*, 122 F. App'x 895, 895-96 (9th Cir. 2005) (district court erred by not granting motion "to stay arbitration on the grounds that there was no actual dispute between the parties as to an alleged violation").

 *Lower Colorado River* correctly applied *Vaden*, and this Court should follow its lead. Ripeness is a question for this Court; not the arbitrator.

  B. <u>The Issue NorthWestern Seeks to Arbitrate Is Unripe</u>

 There is no ripe dispute to arbitrate, and therefore this Court should deny NorthWestern's motion to compel arbitration.

 NorthWestern seeks to compel arbitration of an alleged dispute "among the Owners about the ongoing operation of Colstrip Units 3 and 4 beyond the year 2025," Brief at 18, specifically "the vote required to close Colstrip," Brief at 19. But the PNOs have not initiated the procedural steps contractually required for petitioning the Project Committee to close Colstrip in 2026 (which would, presumably, then lead to a vote among the co-owners). For example, Section 17 of the O&O Agreement specifies that co-owners must present proposals relating to maintenance, operation, and construction at Colstrip to the Project Committee. Section 17(g) requires that any proposal include "itemized cost estimates and other detail sufficient to support a comprehensive review." And Section 17(i) requires 15

days' advance notice of intent to make a proposal. The PNOs have done none of these things. Any vote to close Colstrip remains completely hypothetical.

Nor would any disagreement about Colstrip's post-2025 operations be substantively ripe even if the PNOs truly intended to comply with the O&O Agreement's procedures. Section 32 of the O&O Agreement provides that Colstrip shall continue operating so long as it is "capable of producing electricity consistent with Prudent Utility Practice or the requirements of governmental agencies having jurisdiction." Colstrip is currently producing electricity consistent with Prudent Utility Practice and that will continue to be the case for the foreseeable future. Talen Montana's Answer, Dkt. 58, ¶ 44. The PNOs have not presented any evidence that Colstrip will as of 2026 fail to meet this standard—or even suggested that such evidence exists. Nor could they. It is far too early to make that substantive determination.

NorthWestern appears to argue that the parties can nevertheless arbitrate over the proper process for closing Colstrip, even if no party currently is asking for Colstrip's closure or trying to invoke those procedures. Brief at 19 (framing the

11

disputed issue as "the vote required to close Colstrip"). That makes the issue even less concrete (and therefore unripe).

The Fifth Circuit's decision in *Lower Colorado River Authority*, 858 F.3d at 918, is squarely on point. There, the petitioner sought to compel arbitration of the parties' "differing interpretations" of their Power Purchase Agreement's damages provision governing the obligation of the Lower Colorado River Authority ("LCRA") to buy all the energy produced by the operator of a wind farm, Papalote Creek. *Id.* at 925. LCRA sought to compel arbitration while, at the same time, assuring Papalote Creek that it "intends to continue to fully perform its obligations under the PPA during this arbitration process." *Id.* at 920. The Fifth Circuit held that the district court lacked jurisdiction to compel arbitration because "there is no evidence that LCRA threatened to stop taking energy or that such a decision was even likely." *Id.* at 925. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

The circumstances in this case fit squarely within the holding of *Lower Colorado River Authority*. Like the power purchaser in that case, the PNOs have no concrete plans to seek to close Colstrip. *See* Dkt. 38 at 28. Nor have the PNOs even initiated, much less completed, the steps necessary under the O&O Agreement to

call a vote. Although they well know that the O&O Agreement sets the standard for operating Colstrip as Prudent Utility Practice, the PNOs have offered no evidence—or a plan to develop evidence—to meet the burden of showing what PUP requires. Even more than in *Lower Colorado River*, the alleged dispute "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." 858 F.3d at 925. Because "the underlying dispute is not ripe, . . . the district court [does] not have jurisdiction to compel arbitration." *Id.* at 923.

*Gillette Co.*, 905 F.2d at 1177, is also instructive. Because the employee "had not filed a [benefits] claim," the court refused to compel arbitration over whether he was entitled to certain benefits, declining to "rule based on the conjectural possibility that the plan may decline his claim." *Id.* at 1177. Like the employee in *Gillette*, the PNOs have not initiated the requisite process—here, bringing a concrete closure proposal to the Project Committee. This Court should likewise decline to "rule based on the conjectural possibility" that the PNOs might one day do so or that, if they ever do, their still inchoate plan will be objected to on procedural grounds. *Id.*

The PNOs' conclusory statements that they secretly planned to call a closure vote during the May 19, 2021 Project Committee meeting but chose not to make no difference. *See* Roberts Decl. ¶ 42, Dkt. 39-2; Greene Decl. ¶ 4, Dkt. 105. Even if credible (and it is not for the reasons Talen Montana previously explained, Dkt. 129

13

at 9), a spur of the moment request for such a vote would have violated multiple requirements of the O&O Agreement, is extremely unlikely to have been accompanied by proof that the PUP standard supported the PNOs' advocacy of early closure, and contradicts their assurances to this Court that they have no plans to shut Colstrip any time soon.[3] In any event, the PNOs' statements raise factual disputes that require discovery.

This Court should deny NorthWestern's motion without prejudice, so that this discovery can occur, particularly in the Thirteenth Judicial District Court, Yellowstone County, Montana. On December 1, Magistrate Judge Timothy J. Cavan recommended remand of *Talen Montana, LLC v. Avista Corp.*, No. 21-cv-58 (D. Mont.), Dkt. 56. In that case, Talen Montana, in relevant part, seeks an order "conditionally compelling arbitration in accordance with [SB 265] if and to the extent . . . there is a sufficiently ripe and concrete dispute that is properly resolved at this time by arbitration under the O&O Agreement." *Id.* Dkt. 1-1 ¶ 56. The co-owners in that case will accordingly need to litigate whether there is a sufficiently ripe and concrete dispute to be arbitrated at this time, including by exploring in discovery: the PNOs' alleged desire to close Colstrip as of 2026; Colstrip's ability

---

[3] *See* Dkt. 38 at 28 ("Nor is there any risk that the PNW Owners will close Colstrip in the immediate future").

to produce electricity consistent with PUP now and in the future; and the extent to which the Colstrip budget must at some point reflect a potential 2026 retirement. *See id.* Dkt. 43 at 5 (Talen Montana's proposed discovery plan). This Court should permit the parties to litigate these issues in the Thirteenth Judicial District Court and then revisit NorthWestern's motion based on what the discovery bears.

Finally, NorthWestern tries to manufacture a ripe dispute by suggesting that the "2022 budgeting process . . . reflects the need for prompt resolution of the issues in arbitration." Brief at 11. But NorthWestern's arbitration demand has nothing to do with the parties' ongoing efforts to negotiate Colstrip's 2022 budget. The currently under review proposal would look the same regardless of whether the owners intended to close Colstrip in 2026 or keep it running indefinitely. *See* Dkt. 129-9 at 1 (cover letter accompanying Talen Montana's 2022 budget proposal). To the extent the parties are unable to reach agreement on the 2022 budget, they will need to arbitrate whether Talen Montana's proposal is consistent with Prudent Utility Practice. O&O Agreement § 17(h). But that is an entirely different dispute from the one raised in NorthWestern's demand for arbitration. This Court should not compel the parties to arbitrate NorthWestern's unripe demand on the basis of an entirely different (and likewise unripe) issue.

15

This Court lacks jurisdiction to compel the arbitration NorthWestern seeks because any disagreement about what type of vote might be required to close Colstrip is not ripe. NorthWestern's motion should be denied.

## Conclusion

NorthWestern's Motion presents a hypothetical dispute over a vote that may never occur. Because the dispute is unripe, the Court should deny the Motion in all respects.


Respectfully submitted,

Dated: December 23, 2021                    /s/ Robert L. Sterup

Robert L. Sterup
Brown Law Firm, PC
315 North 24th Street
Billings, Montana 59101
Telephone: (406) 248-2611
Facsimile: (406) 248-3128
rsterup@brownfirm.com

Barry Barnett (admitted *pro hac vice*)
Adam Carlis (admitted *pro hac vice*)
Susman Godfrey L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
bbarnett@susmangodfrey.com

16

acarlis@susmangodfrey.com

Alexander P. Frawley (admitted
*pro hac vice*)
Susman Godfrey L.L.P.
1301 Avenue of the Americas,
32 Fl New York, New York
10019-6023
Tel.: (212) 336-8330
Facsimile: (212) 336-8340
afrawley@susmangodfrey.com

Attorneys for Defendant Talen
Montana, LLC

17

<u>Certificate of Compliance</u>

Pursuant to L.R. 7.1(d)(2)(E), I certify that this Brief in Opposition to NorthWestern's Motion to Compel Arbitration is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count calculated by Microsoft Office Word is 3,622 words.

Dated this 23rd day of December, 2021

*/s/ Alexander Frawley*

Alexander P. Frawley (admitted *pro hac vice*)
Susman Godfrey L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Tel.: (212) 336-8330
Facsimile: (212) 336-8340
afrawley@susmangodfrey.com

Attorney for Defendant Talen Montana, LLC

18