Charles E. Hansberry
Jenny M. Jourdonnais
HANSBERRY & JOURDONNAIS, PLLC
2315 McDonald Avenue, Suite 210
Missoula, MT 59801
Phone: (406) 203-1730
Fax: (406) 205-3170
chuck@hjbusinesslaw.com
jenny@hjbusinesslaw.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **PUGET SOUND ENERGY, INC.; AVISTA CORPORATION; PORTLAND GENERAL ELECTRIC COMPANY; and PACIFICORP,**<br><br>**Plaintiffs,**<br><br><br>**v.**<br><br>**AUSTIN KNUDSEN, in his official capacity as Attorney General for the State of Montana,**<br><br>**Defendant.** | Case No. 1:21-cv-00047-SPW-KLD<br><br>**DECLARATION OF WILLIAM J. SCHROEDER IN SUPPORT OF PLAINTIFFS' AVISTA CORPORATION, PORTLAND GENERAL ELECTRIC COMPANY AND PACIFICORP'S RESPONSE TO DEFENDANT NORTHWESTERN CORPORATION'S MOTION TO COMPEL ARBITRATION AND APPOINT A MAGISTRATE JUDGE TO OVERSEE ARBITRATION PROCEDURE NEGOTIATIONS** |

Page - 1   DECLARATION OF WILLIAM J. SCHROEDER IN SUPPORT OF
PLAINTIFFS' AVISTA CORPORATION, PORTLAND GENERAL
ELECTRIC COMPANY, AND PACIFICORP'S RESPONSE TO
DEFENDANT NORTHWESTERN CORPORATION'S MOTION TO
COMPEL ARBITRATION AND APPOINT A MAGISTRATE JUDGE
TO OVERSEE ARBITRATION PROCEDURE NEGOTIATIONS

I, William J. Schroeder, make the following declaration pursuant to 28 U.S.C. § 1746 and under penalty of perjury:

1.     I am an attorney at KSB Litigation, PS and I represent Avista Corporation in the above-captioned matter.

2.     I have personal knowledge of, and am competent to testify to, the matters set forth in this Declaration.

3.     On May 4, 2021, Talen Montana, LLC initiated a proceeding in Montana Thirteenth Judicial District Court in Yellowstone County, Case No. DV 21-0511, by filing a complaint for declaratory judgment and petition to compel arbitration ("Complaint"). The Complaint is attached hereto as Exhibit 1. In that proceeding Talen seeks, among other things:

1.     A declaration that Sections 18 and 34(c) of the O&O Agreement are invalid insofar as they (1) require any arbitration to be conducted in Washington; (2) permit a Washington court to appoint an arbitrator; (3) require any arbitration to be governed by the Uniform Washington Arbitration Act; (4) allow for arbitration to be by one rather than three arbitrators; or (5) otherwise allow the laws or courts of Washington to influence where and how the arbitration proceeds.

Page - 2  DECLARATION OF WILLIAM J. SCHROEDER IN SUPPORT OF PLAINTIFFS' AVISTA CORPORATION, PORTLAND GENERAL ELECTRIC COMPANY, AND PACIFICORP'S RESPONSE TO DEFENDANT NORTHWESTERN CORPORATION'S MOTION TO COMPEL ARBITRATION AND APPOINT A MAGISTRATE JUDGE TO OVERSEE ARBITRATION PROCEDURE NEGOTIATIONS

2.      An order enjoining the Defendants to comply with, and conditionally

compelling them to arbitrate in accordance with the O&O Agreement

as modified by, Montana Code § 27-5-323 [Senate Bill 265]."

Exhibit 1 at 12.

4.      On April 13, 2021, prior to the enactment of Senate Bill 265, Avista

Corporation, Portland General Electric Company, PacifiCorp, and Puget Sound

Energy, Inc. (collectively, the "Plaintiffs") filed a petition to compel arbitration

("Petition") in Superior Court of the State of Washington for Spokane County,

Case No. 21-2-01000-32.  On April 20, 2021, in Case No. 21-2-01000-32, the

Plaintiffs filed a motion to compel arbitration pursuant to Washington law and the

Arbitration and Venue Clause of the O&O Agreement ("Motion to Compel").

The Plaintiffs' Petition and Motion to Compel are attached hereto as Exhibits 2

and 3, respectively.  Case No. 21-2-01000-32 was subsequently removed to

United States District Court for the Eastern District of Washington, Case No.

2:21-CV-163-RMP, and was later transferred to, and is currently pending in the

United States District Court for the District of Montana, Billings Division, Case

No. CV-21-90-SPW-TJC ("Transferred Proceeding").  To date, the Plaintiffs

have not pursued a motion to compel arbitration in the Transferred Proceeding.

Page - 3  DECLARATION OF WILLIAM J. SCHROEDER IN SUPPORT OF
         PLAINTIFFS' AVISTA CORPORATION, PORTLAND GENERAL
         ELECTRIC COMPANY, AND PACIFICORP'S RESPONSE TO
         DEFENDANT NORTHWESTERN CORPORATION'S MOTION TO
         COMPEL ARBITRATION AND APPOINT A MAGISTRATE JUDGE
         TO OVERSEE ARBITRATION PROCEDURE NEGOTIATIONS

5.      On February 9, 2021, NorthWestern Corporation ("NorthWestern") initiated the arbitration process under Section 18 of the O&O Agreement by sending a letter to each of the other owners of Colstrip.  On March 12, NorthWestern sent a demand for arbitration to each of the other owners of Colstrip. On April 2, 2021, NorthWestern amended its demand for arbitration.

6.      On April 20, 2021, Avista, PSE, and PGE served their responses to NorthWestern's amended arbitration demand and their own demands for arbitration, while PacifiCorp did the same on April 22, 2021. The Plaintiffs denied that NorthWestern is entitled to its requested declaratory relief, and they asserted counterclaims against NorthWestern.  PSE, PGE and PacifiCorp also asserted crossclaims against Talen Montana, LLC ("Talen").

7.      On April 23, 2021, Talen sent a letter to the other owners of Colstrip in response to NorthWestern's amended arbitration demand.  In its letter, Talen, among other things, indicated that it did not think any owner had taken the steps to make a dispute ripe for arbitration under the O&O Agreement.  Nevertheless, Talen indicated it was open to continuing discussions that could lead to agreement on, among other things, procedures for arbitration.

8.      To date, no owner has explicitly refused to arbitrate issues arising out of or related to the O&O Agreement.  Although the Arbitration and Venue

Page - 4  DECLARATION OF WILLIAM J. SCHROEDER IN SUPPORT OF
PLAINTIFFS' AVISTA CORPORATION, PORTLAND GENERAL
ELECTRIC COMPANY, AND PACIFICORP'S RESPONSE TO
DEFENDANT NORTHWESTERN CORPORATION'S MOTION TO
COMPEL ARBITRATION AND APPOINT A MAGISTRATE JUDGE
TO OVERSEE ARBITRATION PROCEDURE NEGOTIATIONS

Clause contains the parties' decades-old agreement on arbitration, to date, the

owners have not been able to agree on procedures to govern the arbitration initiated

by NorthWestern.

I certify and attest that the foregoing statements made by me are true under

penalty of perjury.

Dated this 23 day of December, 2021

William J. Schroeder

DECLARATION OF WILLIAM J. SCHROEDER IN SUPPORT OF
PLAINTIFFS' AVISTA CORPORATION, PORTLAND GENERAL
ELECTRIC COMPANY, AND PACIFICORP'S RESPONSE TO
DEFENDANT NORTHWESTERN CORPORATION'S MOTION TO
COMPEL ARBITRATION AND APPOINT A MAGISTRATE JUDGE
TO OVERSEE ARBITRATION PROCEDURE NEGOTIATIONS

EXHIBIT 1

Robert L. Sterup
Brown Law Firm, PC
315 North 24th Street
Billings, Montana 59101
Telephone: (406) 248-2611
Facsimile: (406) 248-3128
rsterup@brownfirm.com

Barry Barnett (*pro hac vice* forthcoming)
Susman Godfrey L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
bbarnett@susmangodfrey.com

Attorneys for Plaintiff Talen Montana, LLC
Additional Attorneys listed in signature block

CLERK OF THE
DISTRICT COURT
TERRY HALPIN

2021 MAY -4  P 4: 49

FILED

BY _____ DEPUTY

## Montana Thirteenth Judicial District Court
## Yellowstone County

| | |
|---|---|
| Talen Montana, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>Avista Corporation; NorthWestern Corporation; PacifiCorp; Portland General Electric Company; and Puget Sound Energy, Inc.,<br><br>    Defendants. | Cause No. DV 21-0511<br><br>Judge: Ashley Harada<br><br><br>Complaint for Declaratory Judgment and Petition to Compel Arbitration |

Plaintiff Talen Montana, LLC ("Talen Montana") respectfully states the following:

<u>Necessity of Action</u>

1.      Since the 1980s, the people of the State of Montana and the City of Colstrip have relied on the Colstrip Steam Electric Station for jobs, power, and prosperity.  Now mandates by the States of Washington and Oregon have put Colstrip's future at risk.  Four of Colstrip's co-

owners—Avista Corporation, PacifiCorp, Portland General Electric Company, and Puget Sound Energy—are attempting to force Colstrip to close by the end of 2025, in obedience to Washington's ban on the sale of electricity from Colstrip and other plants that generate power from coal. They are also trying to compel arbitration of Colstrip's fate in Washington by a single arbitrator to be chosen by a Washington court, in disobedience to controlling Montana law requiring arbitration in Montana before three arbitrators. As the Operator and a co-owner of Colstrip, Talen Montana brings this action for declaratory and injunctive relief, including a declaration that the arbitration over its and Montana's future must be held in Montana before a panel of three arbitrators applying Montana law. *See* Mont. Code § 27-5-323.

The Parties

2.      Plaintiff Talen Montana is a Delaware limited liability company with its principal place of business in The Woodlands, Texas. Talen Montana is the Operator of and a co-owner of Colstrip.

3.      Defendant Avista Corporation ("Avista") is a Washington investor-owned utility with its principal place of business in Spokane, Washington. Avista serves customers in Idaho, Montana, Oregon, and Washington. Avista is a co-owner of Colstrip.

4.      Nominal Defendant NorthWestern Corporation ("NorthWestern") is a Delaware corporation with its principal place of business in Sioux Falls, South Dakota. NorthWestern is an investor-owned utility that serves customers in Montana, Nebraska, South Dakota, and Yellowstone National Park. NorthWestern is a co-owner of Colstrip.

5.      Defendant PacifiCorp is a wholly-owned subsidiary of Berkshire Hathaway Energy with two business units: Pacific Power and Rocky Mountain Power. Pacific Power is a regulated electric utility based in Portland, Oregon that provides services to customers in

2

California, Oregon, and Washington. Rocky Mountain Power is a regulated electric utility based in Salt Lake City, Utah that provides services to customers in Idaho, Utah, and Wyoming. PacifiCorp is a co-owner of Colstrip.

6.      Defendant Portland General Electric Company ("Portland") is an investor-owned Oregon utility with its principal place of business in Portland, Oregon.  Portland serves customers in Oregon. Portland is a co-owner of Colstrip.

7.      Defendant Puget Sound Energy, Inc. ("Puget") is a Washington investor-owned utility with its principal place of business in Bellevue, Washington. Puget serves customers in Washington. Puget is a co-owner of Colstrip.

## Jurisdiction and Venue

8.      This Court has original jurisdiction over the subject matter of this action, Mont. Code § 3-5-302(1)(b), and has personal jurisdiction over Defendants, Mont. R. Civ. P. 4(b)(1)(A), 4(b)(1)(C).

9.      Venue is proper in this Court under Montana Code § 27-5-323. NorthWestern has a place of business in Yellowstone County, including a customer service office in Billings, Montana. In addition, Colstrip's transmission line runs through Yellowstone County.

## Additional Allegations Common to all Counts

A.      Colstrip's Importance to Montana

10.      Montanans rely on Colstrip for both electricity generation and economic opportunity. It is particularly important to the City of Colstrip.

11.      As of the 2020 census, the City of Colstrip is home to 2,196 people, many of whom work directly at Colstrip or for local businesses that support it.

3

Complaint

12.     Colstrip has two active, coal-fired generating units—Units 3 and 4—which are together capable of producing up to 1,480 Megawatts of electricity.  Unit 3 became active in 1983, and Unit 4 followed in 1985.  (Units 1 and 2 were built much earlier and were retired in 2020.)

13.     Colstrip is vital to Montana's economy.  In 2018, the University of Montana's Bureau of Business and Economic Research examined how a hypothetical 2027 retirement of Colstrip would impact jobs, income, population, and economic output throughout Montana.  The study concluded that the negative economic effects would be dramatic and felt throughout the state:

    a.   Approximately 3,300 jobs would be lost;

    b.   Household income in Montana would fall by between $250 million and $350 million per year;

    c.   Montana's population would decline by approximately 7,000 as people left the state in search of better opportunities; and

    d.   Montana would lose more than $1.2 billion in tax and nontax revenues, not including additional losses to local governments from declining property tax revenue and coal gross proceeds taxes.

14.     The consequences would be felt throughout the state.  Jobs in the service industry, retail, and construction would evaporate.  Declining tax revenues would force cuts in government services.  Even seemingly unrelated industries, such as health care, would suffer due to reduced incomes and populations.

15.     The consequences of shuttering Colstrip are dire and there is no good reason to do so because it is producing electricity consistent with prudent utility practice or "PUP."

4

B.     Avista, PacifiCorp, Portland, and Puget Try to Close Colstrip Prematurely

16.     Avista, PacifiCorp, and Puget want Colstrip closed, not because it is broken, but because their market for Colstrip-produced electricity will shrink in 2026 when a new Washington law will prevent them from using this electricity to serve customers in Washington. *See* RCW Chapter 19-405.  Similarly, Portland exports electricity exclusively to Oregon, which will not accept coal-generated electricity after 2029 (and may accelerate that timeline).  *See* ORS 757.518(2).

17.     During the 2021 budgeting cycle, Avista, PacifiCorp, Portland, and Puget took the idiosyncratic and self-interested position that Talen Montana must operate Units 3 and 4 as if they are being retired before January 1, 2026, when they lose a portion of their market for Colstrip-produced electricity.

18.     As Operator, Talen Montana is guided by the parties' Ownership & Operation Agreement ("O&O Agreement"), which provides that Colstrip should continue to operate as long as it is capable of producing electricity consistent with PUP and not at an arbitrary date determined by factors peculiar to a particular co-owner or group of co-owners.

19.     Section 32 of the O&O Agreement confirms the parties' intent to run Colstrip for so long as it can produce electricity consistent with PUP.  It does so by providing that the O&O Agreement (and the parties' obligations under it, including the obligation to submit and approve operating budgets) "shall continue for so long as the Project or any part thereof . . . is, or can be made, capable of producing electricity consistent with Prudent Utility Practice or the requirements of governmental agencies having jurisdiction."

20.     No one disputes that Colstrip is currently producing electricity consistent with PUP.  Nor has anyone claimed that Colstrip will become incapable of producing electricity

consistent with PUP after 2025.  The focus of some co-owners on a 2025 retirement appears to rest entirely on the inability to sell Colstrip-produced electricity to Washington customers after 2025 and to Oregon customers after 2029.

21.     NorthWestern likewise has rejected the efforts of Avista, PacifiCorp, Portland, and Puget to close Colstrip.  It recently initiated an arbitration to "obtain a definitive answer to the questions of what vote is required to close Units 3 and 4 and what is the obligation of each co-owner to fund operations of the plant."

22.     Talen Montana, as Operator and a co-owner, looks forward to proving that Colstrip need not be retired merely because some co-owners have a desire driven by circumstances peculiar to them and external to Colstrip to abandon Colstrip and avoid their obligations to fund their share of costs by 2025.

C.     Avista, PacifiCorp, Portland, and Puget's Invalid Petition to Compel Arbitration in Washington

23.     On February 9, 2021, NorthWestern provided notice that it intended to initiate an arbitration within thirty days to resolve the dispute over whether Avista, PacifiCorp, Portland, or Puget could force Colstrip to close in 2025.

24.     On March 12, 2021, NorthWestern served an arbitration demand, which it amended on April 2, 2021.

25.     The co-owners engaged in preliminary negotiations about rules and procedures for a potential arbitration, including during an introductory telephone call on March 30, 2021.

26.     Talen Montana proposed a comprehensive agreement regarding a potential arbitration and included in it a proposal that the parties agree to venue in Montana before a panel of three arbitrators, which is what Montana law requires.  A panel of three arbitrators is also

6

more likely to reach a well-reasoned decision consistent with the law and the governing contract than a single arbitrator.

27.     By contrast, the other co-owners proposed that arbitration occur in Washington, before a single arbitrator, and cited an arbitration provision in the O&O Agreement.

28.     During the March 30 introductory call, the parties discussed the venue and panel makeup proposals and scheduled a follow-up discussion for April 28, 2021.

29.     On April 14, 2021—two weeks before the parties' scheduled meeting to discuss proposals regarding arbitration venue and procedures—Avista, PacifiCorp, Portland, and Puget filed a lawsuit in the Superior Court of the State of Washington for Spokane County, seeking an order compelling the co-owners to arbitrate in Washington under the Washington Uniform Arbitration Act before a single arbitrator.

30.     The filing came on the same day Avista, PacifiCorp, Portland, and Puget failed in their aggressive lobbying effort to defeat Montana Senate Bill 265, which provides that "[a]n agreement concerning venue involving an electrical generation facility in this state is not valid unless the agreement requires that arbitration occur within the state before a panel of three arbitrators selected under the Uniform Arbitration Act."  Senate Bill 265 is now law and invalidates the arbitration provisions relied on by Avista, PacifiCorp, Portland, and Puget in the Washington lawsuit.

D.     The Court Should Enjoin the Parties to Comply with Montana Law

31.     The attempt to compel the co-owners to arbitrate in Washington is invalid for a number of reasons.

32.     First, the O&O Agreement's venue provisions allowing for arbitration in Washington, § 18, and interpreting § 18 based on Washington law, § 34(c), are not enforceable as a matter of law.

33.     Montana Code § 27-5-323 provides that an "agreement concerning venue involving an electrical generation facility in this state is not valid unless the agreement requires that arbitration occur within the state before a panel of three arbitrators selected under the Uniform Arbitration Act." S.B. 265, 67th Leg. (Mont. 2021). The amendment became effective upon passage and approval and applies retroactively to petitions to compel arbitration made on or after January 1, 2021.

34.     The Montana Legislature declared a legislative purpose that "electrical generation facilities located in Montana have significant implications for the economy, environment, and health and welfare of Montana consumers;" and that "arbitration of disputes concerning Montana electrical generation facilities outside of Montana threatens Montana's laws, policies, and the interests of Montana in securing and maintaining a reliable source of electricity." This is particularly true for Colstrip, which thousands of Montanans rely on for both power and economic opportunity.

35.     Montana law therefore requires that this arbitration be venued in Montana (not Washington), held before a panel of three arbitrators (not one), and governed by the Montana Uniform Arbitration Act (not the Washington Uniform Arbitration Act).

36.     Second, the Washington petition is premature under Section 18 of the O&O Agreement. Even if it were valid, which it is not, O&O Agreement § 18 would allow a co-owner to ask a Washington court to appoint an arbitrator only after it is clear that the co-owners "cannot mutually agree upon [an] Arbitrator." O&O Agreement § 18 ("If the Project Users cannot

8

mutually agree upon such Arbitrator, then upon petition of any Project User, such Arbitrator shall be appointed by the Superior Court of the State of Washington, in and for the County of Spokane.").

37.    No party has even proposed an arbitrator, so there cannot possibly be an impasse in negotiations that would allow for the Washington lawsuit.  The parties merely exchanged proposals about the procedures for the arbitration, including the number of arbitrators, and then agreed to table those discussions until after responsive pleadings were filed in the arbitration.

38.    In their Washington petition, the Avista, PacifiCorp, Portland, and Puget did not allege that the parties "cannot mutually agree" on selecting an arbitrator.  Nor could they.  As their petition correctly acknowledges, Talen Montana *proposed that*" the arbitration occur in Montana before a panel of three arbitrators.

39.    Third, the Washington court does not have jurisdiction over this dispute.

40.    That is because Talen Montana is not subject to personal jurisdiction in Washington, there is not a sufficient case or controversy to support subject matter jurisdiction, and potential disagreements in the future over budgeting decisions under the O&O Agreement are neither sufficiently concrete nor properly resolved by an arbitrator before the decisions have been timely presented and made.

<u>Count 1: Declaratory Judgment</u>

41.    Talen Montana re-alleges ¶¶ 1-40.

42.    There is a dispute among the parties regarding venue for the arbitration that NorthWestern has demanded.

43.    Montana Code § 27-5-323 provides that "An agreement concerning venue involving an electrical generation facility in this state is not valid unless the agreement requires

9

that arbitration occur within the state before a panel of three arbitrators selected under the Uniform Arbitration Act."

44.     Colstrip is an electrical generation facility located in Montana.

45.     Under Montana law, the arbitration venue clauses of the O&O Agreement, providing for arbitration in Washington State under the Washington Uniform Arbitration Act, are invalid.

46.     Any person interested under a written contract may have determined any question of validity arising under the contract.  Mont. Code § 27-8-202.

47.     Talen Montana therefore seeks an order declaring that Sections 18 and 34(c) of the O&O Agreement are invalid under Montana Code § 27-5-323 insofar as they (1) require that any arbitration be conducted in Washington; (2) permit a Washington court to appoint an arbitrator; (3) require that any arbitration be governed by the Washington Uniform Arbitration Act; (4) allow for arbitration by one rather than three arbitrators; or (5) otherwise allow the laws or courts of Washington to influence where and how the arbitration proceeds.

<u>Count 2: Conditional Petition to Compel Arbitration</u>

48.     Talen Montana re-alleges ¶¶ 1-47.

49.     It is too early to reasonably predict whether Colstrip will be capable of producing electricity consistent with PUP after 2025.  That determination will turn on various factors, including the price of power, the price of coal, and the condition of the units, none of which can be assessed this far in advance.

50.     It is also too early to assess whether any potential decision to retire Colstrip at any particular time is a correct or incorrect one.  There is no formal proposal to close Colstrip and

therefore any dispute over such a proposal or decision has not yet been sufficiently defined to permit adjudication.

51.     Nevertheless, Section 18 of the O&O Agreement provides: "Any controversies arising out of or relating to this Agreement which cannot be resolved through negotiations among the Project Users within thirty (30) days after inception of the matter in dispute shall, upon demand of any Project User involved in the controversy, be submitted to an Arbitrator having demonstrated expertise in the matter submitted."

52.     NorthWestern has served a Demand for Arbitration to resolve a dispute that it contends is within the scope of that binding arbitration provision.

53.     Montana Code § 27-5-323 requires that an arbitration be held in Montana before a panel of three arbitrators selected under the Montana Uniform Arbitration Act.

54.     Avista, PacifiCorp, Portland, and Puget are refusing to arbitrate in accordance with Montana Code § 27-5-323.  Instead, they filed a lawsuit in Washington seeking to compel the owners to arbitrate in Washington under the Washington Uniform Arbitration Act.  Their petition asks a Washington court to enforce contractual venue provisions that are invalid under Montana law.

55.     Under the Montana Uniform Arbitration Act, on the application of a party showing an agreement to arbitrate and the opposing party's refusal to arbitrate, "the district court shall order the parties to proceed with arbitration . . . ." Mont. Code § 27-5-115(1).

56.     Talen Montana is entitled to an order conditionally compelling arbitration in accordance with Montana Code § 27-5-323 and the Uniform Arbitration Act if and to the extent the arbitration provisions in the O&O Agreement may survive enactment of Montana Code § 27-

11

5-323 and there is a sufficiently ripe and concrete dispute that is properly resolved at this time by arbitration under the O&O Agreement.  Mont. Code § 27-5-115.


### Prayer for Relief

Talen Montana respectfully requests the following relief:

1.     A declaration that Sections 18 and 34(c) of the O&O Agreement are invalid insofar as they (1) require that any arbitration be conducted in Washington; (2) permit a Washington court to appoint an arbitrator; (3) require that any arbitration be governed by the Washington Uniform Arbitration Act; (4) allow for arbitration by one rather than three arbitrators; or (5) otherwise allow the laws or courts of Washington to influence where and how the arbitration proceeds.

2.     An order enjoining Defendants to comply with, and conditionally compelling them to arbitrate in accordance with the O&O Agreement as modified by, Montana Code § 27-5-323.

3.     For such of its costs, fees, and expenses as may be awardable at law or in equity.

4.     For such other and further relief as the Court deems just, equitable, and proper.


Dated: May 4, 2021

/s/Robert L. Sterup
Robert L. Sterup
Brown Law Firm, PC
315 North 24th Street
Billings, Montana 59101
Telephone: (406) 248-2611
Facsimile: (406) 248-3128
rsterup@brownfirm.com

Barry Barnett (*pro hac vice* application forthcoming)
Adam Carlis (*pro hac vice* application forthcoming)
Susman Godfrey L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002

Telephone: (713) 651-9366
Facsimile: (713) 654-6666
bbarnett@susmangodfrey.com
acarlis@susmangodfrey.com

Alexander P. Frawley (*pro hac vice*
application forthcoming)
Susman Godfrey L.L.P.
1301 Avenue of the Americas, 32 Fl
New York, New York 10019-6023
Tel.: (212) 336-8330
Fax: (212) 336-8340
afrawley@susmangodfrey.com

Attorneys for Plaintiff Talen
Montana, LLC

13

Complaint

EXHIBIT 2

FILED

2021 APR 14 P 11: 56

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR SPOKANE COUNTY

AVISTA CORPORATION, PUGET
SOUND ENERGY, INC., PACIFICORP,
and PORTLAND GENERAL
ELECTRIC CO.,

                    Petitioners,

        v.

NORTHWESTERN CORPORATION and
TALEN MONTANA, LLC,

                    Respondents.

No. 21201000-32

**PETITION TO COMPEL
ARBITRATION PURSUANT TO RCW
7.04A**

## NATURE OF THE CASE

1.      Pursuant to RCW 7.04A.050, RCW 7.04A.110, and a contractual, mandatory

arbitration provision, Petitioners Avista Corporation ("Avista"), Puget Sound Energy, Inc.

("PSE"), PacifiCorp, and Portland General Electric Co. ("PGE") (collectively, "Petitioners")

petition this Court to compel arbitration consistent with the arbitration agreement and

provide any other relief as necessary and appropriate. Petitioners intend to file a forthcoming

motion or motions to seek the requested relief.

2.      Petitioners and Respondents NorthWestern Corporation ("NorthWestern")

and Talen Montana, LLC ("Talen") (collectively, "the Parties") are co-owners of two coal-

PETITION TO COMPEL ARBITRATION – 1



*KSB LITIGATION P.S.*
510 W. Riverside Ave., SUITE 210,
Spokane, WA 99201
PHONE (509) 624-8988
FAX (509) 474-0358

152110171.2

fired steam units located in Colstrip, Montana ("Colstrip Units 3 & 4"). The two units are governed by an Ownership and Operation Agreement, dated as of May 6, 1981, which has been amended four times ("O&O Agreement").

3.      If the Parties cannot resolve through negotiation a dispute arising out of or relating to the O&O Agreement within 30 days after inception of the controversy, Section 18 of the O&O Agreement provides that the controversy "shall, upon demand of any [owner] involved in the controversy, be submitted to an Arbitrator having demonstrated expertise in the matter submitted."

4.      Here, the Parties did not resolve their disputes through negotiation, and NorthWestern served an Arbitration Demand on the Parties on March 12, 2021. NorthWestern served an Amended Arbitration Demand on April 2, 2021.

5.      Even though Section 18 provides that disputes will be resolved by a single arbitrator, Talen has insisted that the arbitration be submitted to a panel of three arbitrators.

6.      Section 18 provides that "[t]he arbitration shall be conducted in Spokane, Washington, pursuant to the Washington Arbitration Act, RCW Chapter 7.04[,] as the same may be amended from time to time" (i.e., pursuant to current RCW Chapter 7.04A).

7.      Despite this provision, Talen has insisted that the arbitration venue be Montana and that Washington Arbitration Act would not apply (and, by implication, that the Montana Uniform Arbitration Act apply).

8.      Petitioners therefore petition this Court to compel arbitration consistent with the terms the Parties agreed to in the O&O Agreement.

**PARTIES**

9.      Petitioner Avista is an investor-owned utility based in Spokane, Washington, that serves customers in eastern Washington, northern Idaho, and eastern Oregon.

PETITION TO COMPEL ARBITRATION – 2

*KSB LITIGATION P.S.*
510 W. Riverside Ave., SUITE 210,
Spokane, WA 99201
PHONE (509) 624-8988
FAX (509) 474-0358

152110171.2

10.     Petitioner PSE is an investor-owned utility based in Washington state that serves customers primarily in western Washington.

11.     Petitioner PacifiCorp's business unit Pacific Power is a utility based in Oregon that serves customers in Oregon, northern California, and southeastern Washington. PacifiCorp's business unit Rock Mountain Power is a utility based in Utah that serves customers in Utah, Wyoming, and southeastern Idaho.

12.     Petitioner PGE is an investor-owned utility based in Oregon that serves customers in Oregon.

13.     Respondent NorthWestern is an investor-owned utility based in South Dakota that serves customers in Montana, South Dakota, Nebraska, and Yellowstone National Park.

14.     Respondent Talen, a wholly owned subsidiary of Talen Energy, is an independent power producer, not a regulated utility. Talen is the operator of Colstrip Units 3 & 4.

## JURISDICTION AND VENUE

15.     This action is brought pursuant to RCW 7.04A.010, et seq., the Washington Uniform Arbitration Act ("the Act"), and the arbitration clause in the O&O Agreement (Section 18). The Act applies to the dispute based on RCW 7.04A.030(2) and the terms of the arbitration clause.

16.     The Court has subject matter jurisdiction pursuant to RCW 2.08.010.

17.     Venue is proper pursuant to RCW 7.04A.270 and Section 18 of the O&O Agreement.

18.     This Court has specific personal jurisdiction over Respondents. In Section 18 of the O&O Agreement, all Parties agreed to be subject to the personal jurisdiction of the Superior Court of the State of Washington, in and for the County of Spokane. Further,

PETITION TO COMPEL ARBITRATION – 3

*KSB LITIGATION P.S.*
510 W. Riverside Ave., SUITE 210,
Spokane, WA 99201
PHONE (509) 624-8988
FAX (509) 474-0358

152110171.2

Talen, as Operator of Units #3 and #4, and both Talen and NorthWestern, as co-owners, are transacting business with petitioners Avista, PacifiCorp, and PSE in Washington.

## FACTUAL ALLEGATIONS

19.     In a letter dated February 9, 2021, NorthWestern provided notice to the other Parties that it was initiating the 30-day negotiation period under Section 18 to resolve disputes under the O&O Agreement and applicable law as to "what vote is required to close Units 3 and 4 and . . . the obligation of each co-owner to fund operations of the [Colstrip] plant" (the "Disputes").

20.     The Parties did not resolve the Disputes within 30 days.

21.     On March 12, 2021, NorthWestern served an Arbitration Demand on the other Parties asserting claims for declaratory judgment related to the Disputes.

22.     NorthWestern served an Amended Arbitration Demand on April 2, 2021.

23.     Since NorthWestern served its initial Arbitration Demand, counsel for the Parties have exchanged proposals for an arbitration protocol.

24.     On March 29, and again on April 3, 2021, Talen proposed that (1) the arbitration be heard by a panel of three arbitrators, (2) the arbitration's venue be Montana, (3) Montana courts have exclusive jurisdiction over any lawsuits related to the arbitration, and (4) the Washington Arbitration would not apply (and, by implication, that the Montana Uniform Arbitration Act would apply).

25.     Each of these proposals is contrary to the terms of Section 18 of the O&O Agreement.

26.     Petitioners therefore petition this Court to compel arbitration in accordance with the terms of the O&O Agreement.

PETITION TO COMPEL ARBITRATION – 4

*KSB LITIGATION P.S.*
510 W. Riverside Ave., SUITE 210,
Spokane, WA 99201
PHONE (509) 624-8988
FAX (509) 474-0358

152110171.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47

## PRAYER FOR RELIEF

Based on the foregoing, Petitioners request that the Court issue the following relief:

A.      Entry of an Order compelling the Parties to arbitrate the Disputes pursuant to RCW 7.04A.070 and Section 18 of the O&O Agreement;

B.      Entry of an Order awarding to Petitioners such other and further relief as the Court may deem just and proper; and

C.      Following issuance of the arbitrator's written award, entry of an Order confirming the arbitrator's award under RCW 7.04A.220.

DATED:  April 13, 2021

William J. Schroeder, WSBA  7942
William.schroeder@Ksblit.legal
**KSB Litigation PS**
510 W. Riverside, Suite 300
Spokane, WA 99201
Telephone: (509) 624-8988
Facsimile: (509) 474-0358

Attorneys for Petitioner Avista Corporation

PETITION TO COMPEL ARBITRATION – 5

*KSB LITIGATION P.S.*
510 W. Riverside Ave., SUITE 210,
Spokane, WA 99201
PHONE (509) 624-8988
FAX (509) 474-0358

1521101171.2

1
2
3
4       Jeffrey M. Hanson, WSBA 34871
5       JHanson@perkinscoie.com
6       **Perkins Coie LLP**
7       1201 Third Avenue, Suite 4900
8       Seattle, WA 98101-3099
9       Telephone: 206.359.8000
10      Facsimile: 206.359.9000
11
12      Attorneys for Petitioner
13      Puget Sound Energy, Inc.
14
15
16      Troy Greenfield, WSBA 21578
17      TGreenfield@Schwabe.com
18      **Schwabe Williamson & Wyatt**
19      US Bank Centre
20      1420 Fifth Ave., Suite 3400
21      Seattle, WA 98101
22      Telephone: (206) 622-1711
23      Facsimile: (206) 292-0460
24
25      Attorneys for Petitioner PacifiCorp
26
27
28
29
30      Dallas DeLuca, WSBA 45948
31      DallasDeluca@MarkowitzHerbold.com
32      **Markowitz Herbold PC**
33      1455 SW Broadway, Suite 1900
34      Portland, OR 97201-3412
35      Telephone: (503) 295-3085
36      Facsimile: (503) 323-9105
37
38      Attorneys for Petitioner Portland General
39      Electric Co.
40
41
42
43
44
45
46
47

PETITION TO COMPEL ARBITRATION – 6

1521101712

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47

Jeffrey M. Hanson, WSBA 34871
JHanson@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Petitioner
Puget Sound Energy, Inc.


Troy Greenfield, WSBA 21578
TGreenfield@Schwabe.com
**Schwabe Williamson & Wyatt**
US Bank Centre
1420 Fifth Ave., Suite 3400
Seattle, WA 98101
Telephone: (206) 622-1711
Facsimile: (206) 292-0460

Attorneys for Petitioner PacifiCorp


Dallas DeLuca, WSBA 45948
DallasDeluca@MarkowitzHerbold.com
**Markowitz Herbold PC**
1455 SW Broadway, Suite 1900
Portland, OR  97201-3412
Telephone: (503) 295-3085
Facsimile: (503) 323-9105

Attorneys for Petitioner Portland General
Electric Co.

PETITION TO COMPEL ARBITRATION – 6

152110171.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47

Jeffrey M. Hanson, WSBA 34871
JHanson@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Petitioner
Puget Sound Energy, Inc.

Troy Greenfield, WSBA 21578
TGreenfield@Schwabe.com
**Schwabe Williamson & Wyatt**
US Bank Centre
1420 Fifth Ave., Suite 3400
Seattle, WA 98101
Telephone: (206) 622-1711
Facsimile: (206) 292-0460

Attorneys for Petitioner PacifiCorp

Dallas DeLuca, WSBA 45948
DallasDeluca@MarkowitzHerbold.com
**Markowitz Herbold PC**
1455 SW Broadway, Suite 1900
Portland, OR  97201-3412
Telephone: (503) 295-3085
Facsimile: (503) 323-9105

Attorneys for Petitioner Portland General
Electric Co.

PETITION TO COMPEL ARBITRATION – 6

152110171.2

EXHIBIT 3

FILED

2021 APR 20 P 4: 47

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR SPOKANE COUNTY

| | |
|---|---|
| AVISTA CORPORATION, PUGET SOUND ENERGY, INC., PACIFICORP, and PORTLAND GENERAL ELECTRIC CO., | No. 21-2-01000-32 |
| Petitioners, | **MOTION TO COMPEL ARBITRATION PURSUANT TO CHAPTER 7.04A RCW AND PARTIES' ARBITRATION AGREEMENT** |
| v. | |
| NORTHWESTERN CORPORATION and TALEN MONTANA, LLC, | |
| Respondents. | |

MOTION TO COMPEL ARBITRATION

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL152236445.1

# TABLE OF CONTENTS

INTRODUCTION AND RELIEF REQUESTED......................................................... 1

STATEMENT OF FACTS ....................................................................................... 1

    A.    The Parties and Colstrip Units 3 & 4.......................................... 1

    B.    NorthWestern Demands Arbitration and Talen Proposes Arbitration Protocols Contrary to the O&O Agreement ...................................... 2

    C.    Montana Senate Bill 265 .............................................................. 3

STATEMENT OF THE ISSUE................................................................................. 4

EVIDENCE RELIED UPON .................................................................................... 4

ARGUMENT AND AUTHORITY ............................................................................ 4

    A.    The Parties Should Be Ordered to Arbitrate Before a Single Arbitrator and Otherwise in Accordance with the Terms of the O&O Agreement......... 6

    B.    Montana Senate Bill 265 Is Not Relevant ..................................... 8

    C.    Senate Bill 265 Is Preempted by the Federal Arbitration Act ....................... 9

    D.    Senate Bill 265 Violates the Contract Clause Because It Substantially Interferes with Petitioners' Private Rights.................................................. 11

        1.    The Bill Substantially Interferes with Petitioners' Right to Choose the Manner and Location of an Arbitration ......................... 12

        2.    The Bill Is Special-Interest Legislation that Does Not Promote a Significant and Legitimate Public Purpose..................................... 13

CONCLUSION......................................................................................................... 14

MOTION TO COMPEL ARBITRATION – i
LEGAL152236445.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

### INTRODUCTION AND RELIEF REQUESTED

To resolve disputes among the parties arising out of a contract governing the ownership and operation of a coal-fired steam plant, NorthWestern Corporation has invoked an arbitration provision in the contract. There is no question the disputes fall within the scope of the arbitration agreement. Yet Respondent Talen Montana, LLC has insisted on rules for the arbitration that are contrary to those required in the contract, calling for the arbitration be heard in Montana by a panel of three arbitrators and for application of the Montana Uniform Arbitration Act. As a result, Petitioners Puget Sound Energy, Inc., Avista Corporation, PacifiCorp, and Portland General Electric Company request an order compelling the parties to arbitrate their disputes before a single arbitrator and otherwise consistent with the terms of the arbitration agreement, as required under the Federal Arbitration Act and the Washington Uniform Arbitration Act.

### STATEMENT OF FACTS

**A.      The Parties and Colstrip Units 3 & 4**

Petitioners and Respondents are co-owners of two coal-fired steam units located in Colstrip, Montana ("Colstrip Units 3 & 4"). Declaration of Jeffrey M. Hanson ("Hanson Decl."), ¶ 3. Colstrip Units 3 & 4 supply electricity to states across the western United States including Montana, Idaho, Washington, Oregon, Utah, and Wyoming.[1] The two units are governed by an Ownership and Operation Agreement, dated as of May 6, 1981, which has been amended four times ("O&O Agreement"). Hanson Decl. Ex. A.

---

[1] *See* https://www.pse.com/en/Customer-Service/pse-locations-2; https://investor.avistacorp.com/; https://www.pacificorp.com/about.html; https://portlandgeneral.com/about/info/service-area.

MOTION TO COMPEL ARBITRATION – 1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL152236445.1

The O&O Agreement contains an arbitration clause in section 18, which includes a 30-day negotiation requirement:

> Any controversies arising out of or relating to this Agreement which cannot be resolved through negotiations among the Project Users [Owners] within thirty (30) days after inception of the matter in dispute shall, upon demand of any Project User involved in the controversy, be submitted to an Arbitrator having demonstrated expertise in the matter submitted.[2]

Hanson Decl., Ex. A. The arbitration clause provides further that:

> If the Project Users cannot mutually agree upon such Arbitrator, then upon petition of any Project User, such Arbitrator shall be appointed by the Superior Court of the State of Washington, in and for the County of Spokane. The arbitration shall be conducted in Spokane, Washington, pursuant to the Washington Arbitration Act, RCW Chapter 7.04 as the same may be amended from time to time.

*Id.*

**B.     NorthWestern Demands Arbitration and Talen Proposes Arbitration Protocols Contrary to the O&O Agreement**

In a letter dated February 9, 2021, NorthWestern provided notice to the other parties that it was initiating the 30-day negotiation period under section 18 to resolve disputes under the O&O Agreement as to "what vote is required to close Units 3 and 4 and . . . the obligation of each co-owner to fund operations of the [Colstrip] plant" (the "Disputes"). Hanson Decl., Ex. B. The parties did not resolve the Disputes within 30 days, and on March 12, 2021, NorthWestern served an Arbitration Demand on the other parties asserting claims for declaratory judgment related to the Disputes. *Id.*, ¶ 6. NorthWestern served an Amended Arbitration Demand on April 2, 2021. *Id.* The Disputes fall within the scope of the

---

[2] "Project Users," as relevant to the current disputes, means any Owner of Colstrip Units 3 & 4.

MOTION TO COMPEL ARBITRATION – 2

LEGAL152236445.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

arbitration clause in section 18 of the O&O Agreement, and no party has argued otherwise to date.

Talen, however, has submitted proposals for an arbitration protocol that are inconsistent with the requirements in the O&O Agreement. For example, on March 29, and again on April 3, 2021, Talen proposed that (1) the arbitration be heard by a panel of three arbitrators, (2) the arbitration's venue be Montana, (3) Montana courts have exclusive jurisdiction over any lawsuits related to the arbitration, and (4) the Washington Uniform Arbitration Act ("WUAA") would *not* apply (and, by implication, that the Montana Uniform Arbitration Act would apply). *Id.*, Exs. C, D. Each of these proposals is contrary to the terms of section 18 of the O&O Agreement.

## C.   Montana Senate Bill 265

On April 13, 2021, the State of Montana Legislature passed Senate Bill 265, which, if signed by the Governor of Montana, would amend section 27-5-323 of the Montana Code by adding the following:

> (2)(a) An agreement concerning venue involving an electrical generation facility in this state is not valid unless the agreement requires that arbitration occur within the state before a panel of three arbitrators selected under the [Montana] Uniform Arbitration Act unless all parties agree in writing to a single arbitrator.
>
> (b) For the purposes of this subsection, "electrical generation facility" has the meaning provided in 15-24-3001.
>
> . . . .
>
> [This act] applies retroactively, within the meaning of 1-2-109, to applications made on or after January 1, 2021.

S.B. 265, 67th Leg., Reg. Sess. § 1 (Mont. 2021).

Senate Bill 265 was proposed and drafted to target the issues that prompted NorthWestern to trigger the dispute-resolution provision in the O&O Agreement. Senate

MOTION TO COMPEL ARBITRATION – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL152236445.1

Bill 265 conflicts with section 18 of that agreement because the bill would purport to invalidate the O&O Agreement's requirements (1) that the arbitration take place in Spokane (2) before a single arbitrator (3) subject to the WUAA.

On April 14, 2021, the Petitioners filed a petition before this Court to compel arbitration in accordance with the terms of section 18 of the O&O Agreement.

## STATEMENT OF THE ISSUE

Whether the Court should order the parties to arbitrate the Disputes before a single arbitrator and otherwise consistent with section 18 of the O&O Agreement.

## EVIDENCE RELIED UPON

This motion is based on this memorandum, the accompanying Declaration of Jeffrey M. Hanson and attached exhibits, and the pleadings and papers in this case.

## ARGUMENT AND AUTHORITY

There is a strong public policy—recognized both nationally and in the State of Washington—in enforcing arbitration clauses by their terms. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, which applies in this case because the O&O Agreement is a transaction in interstate commerce,[3] requires that arbitration agreements be enforced as written. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'") (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 478 (1989)); *see also Burgess v. Lithia Motors, Inc.*, 196 Wn.2d 187, 196–97, 471 P.3d 201 (2020). The opposing party bears the burden of showing that the agreement is not enforceable. *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 301–02, 103 P.3d 753

---

[3] *See Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 797–801, 225 P.3d 213 (2009).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

(2004). The WUAA applies by virtue of the parties' arbitration agreement to the extent the WUAA is not contrary to the provisions and purposes of the FAA. *See Concepcion*, 563 U.S. at 343; *Volt*, 489 U.S. at 476–77.

Respondents will likely argue that section 18 of the O&O Agreement is unenforceable because of Senate Bill 265, assuming it is signed by the Governor of Montana. But the O&O Agreement designates that Washington law applies with respect to section 18.[4] Thus Senate Bill 265 is irrelevant.

Even if Montana law applies, the FAA guarantees private parties the "liberty to choose the terms under which they will arbitrate," *Volt*, 489 U.S. at 472, by "giv[ing] preference . . . to arbitration provisions" and "outlaw[ing] discrimination in state policy that is unfavorable to arbitration," *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013). Senate Bill 265 is just such a policy: it expressly targets arbitration provisions involving electrical generation facilities, and it prevents private parties from choosing the venue and rules for arbitrating their disputes. Senate Bill 265 is therefore preempted by the FAA.

Senate Bill 265 also runs afoul of the Contract Clause of the United States Constitution, U.S. Const. art 1, § 10, cl. 1. Respondents Talen and NorthWestern testified in favor of the bill so they could arbitrate an ongoing contractual dispute in the venue of their choice, with the number of arbitrators they want, under the rules they prefer.[5] In doing so, they asked Montana's legislature to override Petitioners' contractual rights to benefit a

---

[4] O&O Agreement, § 34(c).

[5] *See* Testimony on Senate Bill 265 before Montana House Energy, Technology and Federal Relations Committee, March 24, 2021, http://sg001-harmony.sliq.net/00309/Harmony/en/PowerBrowser/PowerBrowserV2/20170221/-1/41592?agendaId=198623 (NorthWestern testimony in support at 17:09:19; Talen testimony in support at 17:10:20).

MOTION TO COMPEL ARBITRATION – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

LEGAL152236445.1

"narrow class"—themselves. *See Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 248–49 (1978). This type of special interest legislation is antithetical to the Constitution. *See id.*

In short, the arbitration procedures in section 18 of the O&O Agreement must be adhered to and Senate Bill 265 is invalid under the FAA, the WUAA, and the Contract Clause. Accordingly, the Court should enforce the parties' arbitration agreement and compel Respondents to arbitrate before a single arbitrator and otherwise in accordance with the terms of their agreement. Petitioners do not ask the Court to appoint an arbitrator at this time, but reserve the right to do so if the parties cannot agree on an arbitrator.

**A.   The Parties Should Be Ordered to Arbitrate Before a Single Arbitrator and Otherwise in Accordance with the Terms of the O&O Agreement**

Under the FAA and WUAA, the Court should enforce section 18 of the O&O Agreement as written because arbitration provisions in a contract are "valid, irrevocable and enforceable," and must be enforced "in accordance with the terms of the agreement." 9 U.S.C. §§ 2–4; RCW 7.04A.060.

The U.S. Supreme Court has long affirmed and emphasized the enforceability of arbitration agreements under the FAA, as written. *See, e.g., Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) ("Not only did Congress require courts to respect and enforce agreements to arbitrate; it also specifically directed them to respect and enforce the parties' chosen arbitration procedures."); *Concepcion*, 563 U.S. at 344 (observing the FAA "afford[s] parties discretion in designing arbitration processes . . . to allow for efficient, streamlined procedures tailored to the type of dispute"); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("[The FAA] text reflects the overarching principle that arbitration is a matter of contract. And consistent with that text, courts must 'rigorously

MOTION TO COMPEL ARBITRATION – 6

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

enforce' arbitration agreements according to their terms, including terms that 'specify with whom [the parties] choose to arbitrate their disputes,' and 'the rules under which that arbitration will be conducted.'") (internal citations omitted); *Hetland v. Lincoln Logs Ltd.*, 41 F. App'x 46, 49 (9th Cir. 2002) (reversing lower court for disregarding terms of an arbitration clause).

Washington courts enforce the same rule in applying the FAA and WUAA. *See, e.g.*, *Satomi Owners Ass'n*, 167 Wn.2d at 804, 225 P.3d 213 (arbitration terms are enforceable "like other contracts, in accordance with their terms"); *Zuver*, 153 Wn.2d at 320, 103 P.3d 753 (in enforcing arbitration agreements, "[c]ourts are generally loath to upset the terms of an agreement and strive to give effect to the intent of the parties"); *Dahl v. Parquet & Colonial Hardwood Floor Co.*, 108 Wn. App. 403, 410, 30 P.3d 537 (2001) ("[C]hapter 7.04 RCW imposes no restrictions on the parties' ability to contract with respect to the means of selecting their arbitrator(s), or the number of arbitrators, or the procedures by which the arbitration shall be conducted.").[6]

Here, section 18 of the O&O Agreement is plain and unambiguous:

- "Upon demand of any Project User [Owner] involved in the controversy, [the controversy shall] be submitted to an Arbitrator having demonstrated expertise in the matter submitted." Hanson Decl., Ex. A.

- "If the Project Users cannot mutually agree upon such Arbitrator, then upon petition of any Project User, such Arbitrator shall be appointed by the Superior Court of the State of Washington, in and for the County of Spokane." *Id.*

- "The arbitration shall be conducted in Spokane, Washington, pursuant to the Washington Arbitration Act, RCW Chapter 7.04." *Id.*

---

[6] Chapter 7.04 RCW is the predecessor to the current version of the WAA.

MOTION TO COMPEL ARBITRATION – 7

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL152236445.1

NorthWestern initiated arbitration under section 18 of the O&O Agreement, asserting claims that arise out of the agreement, and therefore the terms of section 18 apply. *See* Hanson Decl., Ex. B. Talen's proposal that the arbitration should instead proceed before a panel of three arbitrators in Montana, and that the WUAA not apply, contravenes the plain language of section 18 and should be rejected under the FAA and WUAA.

**B.      Montana Senate Bill 265 Is Not Relevant**

To circumvent the terms of the O&O Agreement, Talen and NorthWestern testified in support of Senate Bill 265.[7] Petitioners therefore expect that one or both Respondents will argue that, if enacted by the Governor, Senate Bill 265 requires the parties to arbitrate their dispute in Montana before a panel of three arbitrators selected under Montana's Uniform Arbitration Act in contravention of section 18 of the O&O Agreement. Montana law, however, is not relevant to this motion because the choice-of-law clause in the O&O Agreement designates that Washington law applies to the arbitration provisions.[8] Washington courts enforce parties' choice-of-law provision unless (1) the chosen state has no substantial relationship to the parties, or (2) application of the chosen law would be (a) contrary to a fundamental policy of a state (b) that has a materially greater interest in the determination of the chosen issue and (c) whose law would otherwise apply if the choice-of-law clause was ineffective. *Schnall v. AT & T Wireless Servs., Inc.*, 171 Wn.2d 260, 267, 259 P.3d 129 (2011); *Erwin v. Cotter Health Centers*, 161 Wn.2d 676, 693–99, 167 P.3d 1112, 1123 (2007) (upholding choice-of-law provision based on same test, noting that doing so was consistent with the justifiable expectations of the parties in multistate transaction).

---

[7] *See supra* n.5.

[8] O&O Agreement, § 34(c) ("Section 18 shall be construed in accordance with the laws of the State of Washington.").

MOTION TO COMPEL ARBITRATION – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

LEGAL152236445.1

Here, Washington has a substantial relationship to the parties and their agreement governing Colstrip Units 3&4 (i.e., the units supply electricity to Washington customers of three of the parties, PacifiCorp and Washington-based PSE and Avista). And it cannot reasonably be argued that application of the WUAA would violate a fundamental policy of Montana, which also does not have a materially greater interest than Washington in determination of the issue.[9]

**C.      Senate Bill 265 Is Preempted by the Federal Arbitration Act**

Even if Montana law were to apply, the terms of Senate Bill 265 are inapplicable because it is preempted by the FAA. The FAA requires courts to treat arbitration agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Interpreting this language and the FAA's broader purpose, the Supreme Court has held that a "state-law rule can be preempted by the FAA in two ways." *See Blair v. Rent-A-Car Center, Inc.*, 928 F.3d 819, 825 (9th Cir. 2019) (citing *Concepcion*, 563 U.S. at 339, 341).

First, the FAA preempts state law rules that are not "generally applicable contract defense[s]," as those rules "do[] not fall within the saving clause as a 'ground[] . . . for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2 and *Concepcion*, 563 U.S. at 339). A rule is generally applicable only if it "appl[ies] equally to arbitration and non-arbitration agreements." *Id.* (quoting *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432 (9th Cir. 2015)).

Second, the FAA preempts even generally applicable rules that "stand[] as an obstacle to the accomplishment of the FAA's objectives." *Id.* (quoting *Concepcion*, 563 U.S.

---

[9] Although Colstrip Units 3&4 are located in Montana, none of the parties is a Montana entity, while PSE and Avista are Washington corporations located in Washington. Hanson Decl. ¶ 8.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

at 339). One of the FAA's objectives—indeed, its "principal purpose"—"is to 'ensur[e] that private arbitration agreements are enforced *according to their terms.'*" *Concepcion*, 563 U.S. at 344 (emphasis added) (quoting *Volt*, 489 U.S. at 478).

If enacted, Senate Bill 265 would be preempted under both tests. To begin, the bill would not add a "generally applicable contract defense" to Montana Code section 27-5-323. Instead, the bill narrowly targets arbitration agreements "involving an electrical generation facility in" Montana, rendering the venue provisions in such agreements invalid "unless the agreement requires that arbitration occur within [Montana] before a panel of three arbitrators selected under [Montana's] Uniform Arbitration Act." S.B. 265, 67th Leg., Reg. Sess. § 1 (Mont. 2021). Thus, the bill "single[s] out arbitration agreements" by imposing procedural rules that apply only to arbitration and by invalidating venue provisions only if they are part of an arbitration agreement. *Sakkab*, 803 F.3d at 432. Venue provisions for litigation involving an electrical generation facility in Montana, by contrast, are not subject to a Montana venue requirement. The FAA does not permit that type of "special treatment."[10] *Id.*

Senate Bill 265 also undermines the principal purpose of the FAA by preventing Petitioners from selecting their own venue and rules for arbitration. Petitioners are entitled

---

[10] In *Keystone, Inc. v. Trial Systems Corp.*, 917 P.2d 1240, 1245 (Mont. 1998), Montana's Supreme Court upheld the current version of Montana Code section 27-5-323 on the ground that Montana law equally invalidates choice-of-forum provisions in arbitration clauses and contracts generally. The decision, which is not binding on this Court, was based on a narrow reading of *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996), that many courts have rejected. *See, e.g., Bradley v. Harris Research, Inc.*, 257 F.3d 884, 889–90 (9th Cir. 2001); *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 447 (5th Cir. 2001). The decision also failed to consider whether Montana Code section 27–5–323 interfered with the purpose of the FAA by preventing parties from choosing the terms of their arbitration agreements. *See Bradley*, 275 F.3d at 890. In any event, the decision's core rationale—that Montana law treats arbitration provisions the same as it treats other contracts—does not apply to Senate Bill 265 because the bill uniquely targets arbitration provisions and there is no equivalent law that applies to contracts generally.

MOTION TO COMPEL ARBITRATION – 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

to select both under Ninth Circuit and Supreme Court precedent. For example, in *Bradley v. Harris Research Inc,* 275 F.3d 884 (9th Cir. 2001), the Ninth Circuit struck down a California law requiring disputes over franchise agreements to be arbitrated (or litigated) in California. *See id.* at 889–93. In doing so, the Ninth Circuit emphasized "that the statute 'present[ed] an obstacle' to the FAA's purpose requiring courts to 'enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.'" *See id.* at 890 (quoting *KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.,* 184 F.3d 42, 50 (1st Cir. 1999)); *see also Epic Systems,* 138 S. Ct. at 1621 ("The parties before us contracted for arbitration. They proceeded to specify the rules that would govern their arbitrations . . . . And this much the Arbitration Act seems to protect pretty absolutely."). Senate Bill 265 would impermissibly prevent Petitioners from using the parties' contractually agreed-upon rules to govern their own dispute.

**D.     Senate Bill 265 Violates the Contract Clause Because It Substantially Interferes with Petitioners' Private Rights**

In addition to running afoul of the FAA, Senate Bill 265 violates the Contract Clause because it substantially interferes with Petitioners' pre-existing private rights under the O&O Agreement.

"If the Contract Clause is to retain any meaning at all, . . . it must be understood to impose *some* limits upon the power of the State to abridge existing contractual relationships." *Allied Structural,* 438 U.S. at 242 (emphasis in original). "To determine when such a law crosses the constitutional line, th[e] Court has long applied a two-step test." *Sveen v. Melin,* 138 S. Ct. 1815, 1821 (2018). First, a court must decide if the law substantially impairs a contractual relationship. *Id.* Second, a court must determine whether the law is "an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate

MOTION TO COMPEL ARBITRATION – 11

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL152236445.1

public purpose.'" *Id.* (quoting *Allied Structural Steel*, 438 U.S. at 246). Senate Bill 265 fails both parts of that test.

1.    **The Bill Substantially Interferes with Petitioners' Right to Choose the Manner and Location of an Arbitration**

Senate Bill 265 impairs Petitioners' contractual relationship by invalidating multiple parts of the arbitration agreement. Thus, the key question is whether Senate Bill 265 "substantially" impairs Petitioners' contractual relationship. For that to be true, "[t]otal destruction of contractual expectations is not necessary." *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983). And "[i]n determining the degree to which an obligation has been impaired, [courts] must be mindful that the contracts clause is designed to 'enable individuals to order their personal and business affairs according to their particular needs and interest. Once arranged, those rights and obligations are binding under the law, and the parties are entitled to rely on them.'" *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1322 (8th Cir. 1991) (quoting *Allied Structural Steel*, 438 U.S. at 245).

Senate Bill 265 directly and substantially interferes with Petitioners' ability "to order their personal and business affairs according to their particular needs and interest." *Allied Structural Steel*, 438 U.S. at 245. The parties to the O&O Agreement structured the agreement's arbitration provision so that they could efficiently resolve any dispute. The parties chose the number of arbitrators they preferred, the venue they felt was appropriate, and the rules they thought were best. Those choices are protected under federal law, *see Epic Systems*, 138 S. Ct. at 1621, and they are entitled to respect under the Contract Clause as well, *see Angostura Int'l Ltd. v. Melemed*, 25 F. Supp. 2d 1008, 1011 (D. Minn. 1998) ("[P]rior to the MSRA, [plaintiff] could select any forum it wished in which to resolve

MOTION TO COMPEL ARBITRATION – 12

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL152236445.1

disputes with [defendant]. To the extent the MSRA deprives [plaintiff] of these rights, it is a substantial impairment.").

### 2.    The Bill Is Special-Interest Legislation that Does Not Promote a Significant and Legitimate Public Purpose

"If [a] state regulation constitutes a substantial impairment, the State . . . must have a significant and legitimate public purpose behind the regulation, such as remedying of a broad and general social or economic problem." *Energy Reserves Grp.*, 459 U.S. at 411–12. "The requirement of a legitimate public purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests." *Energy Reserves Grp., Inc.*, 459 U.S. at 412. Courts enforce this requirement by striking down "special interest legislation" that benefits only a narrow group of individuals. *See, e.g., Ass'n of Equip. Mfrs. v. Burgum*, 932 F.3d 727, 733–34 (8th Cir. 2019) ("The law primarily benefits a particular economic actor in the farm economy—farm equipment dealers. Even if the law indirectly might benefit farmers and rural communities, the Contract Clause demands more than incidental public benefits."); *Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842, 861 (8th Cir. 2002) ("It is clear that the only real beneficiaries under the Act are the narrow class of dealers of agricultural machinery. . . . [S]uch special interest legislation runs afoul of the Contract Clause when it impairs pre-existing contracts.").

Senate Bill 265 bears all the hallmarks of "special interest legislation." The bill was pushed by Talen and NorthWestern for purposes of changing the contractual terms of the O&O Agreement to their perceived advantage during pending arbitration. *See* Testimony on Senate Bill 265, *supra*, Note 5; *see also Jacobsen v. Anheuser-Busch, Inc.*, 392 N.W.2d 868, 875 (Minn. 1986) ("[A]n examination of the legislative history reveals that this legislation arose not in response to any broad and general social or economic problem, but rather at the

MOTION TO COMPEL ARBITRATION – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

instigation and promotion of beer distributors."). The bill surgically targets those disputes by codifying the companies' preferences into Montana's code. And the bill is not coherently connected to a broad societal interest because it focuses on "purely private rights," such as the location where the parties' arbitration will take place and the rules under which their dispute will be arbitrated. *See Treigle v. Acme Homestead Ass'n*, 297 U.S. 189, 197 (1936) (holding law was invalid where it altered the withdrawal rights of members of a building and loan association for no discernable public purpose). This "extremely narrow focus" renders Senate Bill 265 unconstitutional. *See Allied Structural Steel*, 438 U.S. at 249 (holding law was not enacted to "protect a broad societal interest" because it applied to a limited number of employers).

## CONCLUSION

For the foregoing reasons, Petitioners request an order compelling arbitration before a single arbitrator and otherwise in accordance with section 18 of the O&O Agreement.

DATED:  April 20, 2021

Jeffrey M. Hanson, WSBA 34871
JHanson@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Petitioner
Puget Sound Energy, Inc.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

MOTION TO COMPEL ARBITRATION – 14

LEGAL152236445.1

1
2
3
4       William J. Schroeder, WSBA 7942
5       William.schroeder@Ksblit.legal
6       **KSB Litigation PS**
7       510 W. Riverside, Suite 300
8       Spokane, WA 99201
9       Telephone: (509) 624-8988
10      Facsimile: (509) 474-035
11
12      Attorneys for Petitioner Avista Corporation
13
14
15      Troy Greenfield, WSBA 21578
16      TGreenfield@Schwabe.com
17      **Schwabe Williamson & Wyatt**
18      US Bank Centre
19      1420 Fifth Ave., Suite 3400
20      Seattle, WA 98101
21      Telephone: (206) 622-1711
22      Facsimile: (206) 292-0460
23
24      Attorneys for Petitioner PacifiCorp
25
26
27
28      Dallas DeLuca, WSBA 45948
29      DallasDeluca@MarkowitzHerbold.com
30      **Markowitz Herbold PC**
31      1455 SW Broadway, Suite 1900
32      Portland, OR  97201-3412
33      Telephone: (503) 295-3085
34      Facsimile: (503) 323-9105
35
36
37      Attorneys for Petitioner Portland General
38      Electric Co.
39
40
41
42
43
44
45
46
47

MOTION TO COMPEL ARBITRATION – 15

LEGAL152236445.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47

William J. Schroeder, WSBA 7942
William.schroeder@Ksblit.legal
**KSB Litigation PS**
510 W. Riverside, Suite 300
Spokane, WA 99201
Telephone: (509) 624-8988
Facsimile: (509) 474-035

Attorneys for Petitioner Avista Corporation

Troy Greenfield, WSBA 21578
TGreenfield@Schwabe.com
**Schwabe Williamson & Wyatt**
US Bank Centre
1420 Fifth Ave., Suite 3400
Seattle, WA 98101
Telephone: (206) 622-1711
Facsimile: (206) 292-0460

Attorneys for Petitioner PacifiCorp

Dallas DeLuca, WSBA 45948
DallasDeluca@MarkowitzHerbold.com
**Markowitz Herbold PC**
1455 SW Broadway, Suite 1900
Portland, OR 97201-3412
Telephone: (503) 295-3085
Facsimile: (503) 323-9105

Attorneys for Petitioner Portland General
Electric Co.

MOTION TO COMPEL ARBITRATION – 15

LEGAL152236445.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000