Charles E. Hansberry
Jenny M. Jourdonnais
HANSBERRY & JOURDONNAIS, PLLC
2315 McDonald Avenue, Suite 210
Missoula, MT 59801
chuck@hjbusinesslaw.com
jenny@hjbusinesslaw.com
Phone: (406) 203-1730
Fax: (406) 205-3170

*Attorneys for Plaintiffs*
[additional counsel on signature page]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| **PORTLAND GENERAL ELECTRIC COMPANY, AVISTA CORPORATION, PACIFICORP**, and **PUGET SOUND ENERGY, INC.**,<br><br>Plaintiffs,<br><br>v.<br><br>**NORTHWESTERN CORPORATION; TALEN MONTANA, LLC; AUSTIN KNUDSEN**, in his official capacity as Attorney General for the State of Montana,<br><br>Defendants. | Case No. 1:21-cv-00047-BLG-SPW-KLD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF** |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................2

I.    This case is ripe because an actual case or controversy exists. ......................2

     A.    Talen's proposed test does not apply because an injury has already occurred. ...........................................................2

         1.    Plaintiffs' harm already occurred ................................3

         2.    Harm has occurred as a matter of law because of the passage of SB 266. ..............................................5

     B.    The claims are constitutionally ripe under Talen's test. ......................6

II.    This Motion does not require interpreting the O&O Agreement and is not subject to arbitration. ...............................................7

III.    SB 266 violates the Contract Clause. ...........................................8

     A.    SB 266 substantially impairs Plaintiffs' contractual rights ..................8

     B.    SB 266 does not reasonably advance the purposes Talen identifies. ...........................................................11

IV.    SB 266 violates the Dormant Commerce Clause. .........................................13

V.    Discovery is not necessary to decide the Motion. ........................................16

VI.    Plaintiffs are entitled to an injunction permanently enjoining the enforcement of SB 266. ...............................................17

CONCLUSION ...................................................................................18

**Page i -**    **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Allied Structural Steel Co. v. Spannaus,*
   438 U.S. 234 (1978)................................................................ 9, 10, 11

*Ass'n des Eleveurs de Canards v. Harris,*
   729 F.3d 937 (9th Cir. 2013) .......................................................... 15

*Assoc. Builders & Contractors, Golden Gate Chapter Inc. v. Baca,*
   769 F. Supp. 1537 (N.D. Cal. 1991) ............................................... 11

*Az. Dream Act Coal. v. Brewer,*
   855 F.3d 957 (9th Cir. 2017) .................................................... 17, 18

*Bacchus Imps., Ltd. v. Dias,*
   468 U.S. 263 (1984)........................................................................ 14

*Bishop Paiute Tribe v. Inyo County,*
   863 F.3d 1144 (9th Cir. 2017) ......................................................... 3

*Donohue v. Mangano,*
   886 F. Supp. 2d 126 (E.D.N.Y. 2012) ............................................. 5

*Edgar v. MITE Corp.,*
   457 U.S. 624 (1982)........................................................................ 15

*Energy Rsrvs. Grp. v. Kansas Power & Light Co.,*
   459 U.S. 400 (1983)........................................................................ 12

*Grocery Mfrs. Ass'n v. Sorrell,*
   102 F. Supp. 3d 583 (D. Vt. 2015) ................................................. 14

*HRPT Props. Tr. v. Lingle,*
   715 F. Supp. 2d 1115 (D. Haw. 2010) ............................................. 6

*Hunt v. Wash. State Apple Adver. Comm'n,*
   432 U.S. 333 (1977)........................................................................ 14

*Kassel v. Consol. Freightways Corp.,*
   450 U.S. 662 (1981)........................................................................ 16

*Keystone Bituminous Coal Ass'n v. DeBenedicts,*
   480 U.S. 470 (1987).................................................................. 10, 11

*Lazar v. Kronkce,*
   862 F.3d 1186 (9th Cir. 2017) ......................................................... 6

*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007)..................................................................... 4, 5

*Melendres v. Arpaio*,
 695 F.3d 990 (9th Cir. 2012) .......................................................... 18

*Nat'l Audubon Soc. v. Davis*,
 307 F.3d 835 (9th Cir. 2002) ............................................................ 2

*Nieves v. Hess Oil Virgin Islands Corp.*,
 819 F.2d 1237 (3d Cir. 1987)......................................................... 12

*Pike v. Bruce Church, Inc.*,
 397 U.S. 137 (1970)......................................................................... 16

*Thomas v. Anchorage Equal Rights Commission*,
 220 F.3d 1134 (9th Cir. 2000) ............................................ 2, 3, 6, 7

*Toomer v. Witsell*,
 334 U.S. 385 (1948).................................................................. 15, 16

*Valley Bank of Nevada v. Plus Sys., Inc.*,
 914 F.2d 1186 (9th Cir. 1990) ....................................................... 16

## **Other Authorities**

Montana Senate Bill 266............................................................ *passim*

**INTRODUCTION**

Montana Senate Bill 266 is unconstitutional.  In response to this motion

(Doc. 102, the "Motion"), only Talen Montana, LLC opposes it.  NorthWestern

Corporation takes no position.  (Doc. 124.)  Attorney General Knudsen has not

responded to the Motion and instead filed a motion to stay the entire case or, in the

alternative, to stay this Motion.  (Doc. 116.)  Plaintiffs oppose the motion to stay.

(Doc. 127.)

The Montana Legislature and the Montana Governor explicitly intended to

limit Plaintiffs' rights.  (Doc. 103 ¶¶ 8-9 (quoting legislators); Doc. 39-6 ¶ 8

(Governor's statement).)  The legislator who sponsored the bill testified that

SB 266 "allows [Montana] to have greater control over the Colstrip facility."

(Doc. 103 ¶ 8.)  Talen and NorthWestern testified in favor of the bill.  (*Id.* ¶ 11.)

SB 266 was written to threaten Plaintiffs and to favor narrow Montana

interests over out-of-state interests.  The bill substantially impairs Plaintiffs'

contract rights just as the legislature and Governor intended.  The bill discriminates

in favor of Montana exactly as the legislature and Governor intended.  Plaintiffs

have demonstrated existing and ongoing harm.  None of the contract issues in the

Motion are subject to arbitration, and no discovery is needed.  Talen's arguments

to the contrary lack merit, for the reasons below.  The Court should grant

**Page 1 -   PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
               PARTIAL SUMMARY JUDGMENT REGARDING THEIR
               FOURTH AND FIFTH CLAIMS FOR RELIEF**

Plaintiffs' Motion because it does not depend upon a question of disputed fact or on the outcome of the parties' arbitration under the Colstrip Units 3 and 4 Ownership and Operation Agreement ("O&O Agreement").

## ARGUMENT

I.     **This case is ripe because an actual case or controversy exists.**

Talen argues the claims are unripe under *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134 (9th Cir. 2000).  The Court should reject Talen's ripeness argument for the reasons it previously rejected the same argument in the context of Plaintiffs' motion for preliminary injunction.  (Doc. 60 at 8-19; Doc. 100 at 12-13.)  As explained below and in prior briefing (Doc. 67 at 1-7), Plaintiffs have already suffered actual harm.  Therefore, *Thomas* does not apply, and Plaintiffs' claims are ripe.

A.     **Talen's proposed test does not apply because an injury has already occurred.**

*Thomas*'s three-part test applies when a plaintiff claims to be injured only by the risk of prosecution itself.  *See Nat'l Audubon Soc. v. Davis*, 307 F.3d 835, 855 (9th Cir. 2002).  If the plaintiff has *already* suffered "actual, ongoing . . . harm"

**Page 2 -     PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

that is "fairly traceable" to the challenged law, then *Thomas*'s test is irrelevant, and the plaintiff has standing and a ripe claim.[1]  *See id.*

Talen, apparently conceding that point, now wrongly contends that Plaintiffs have not asserted actual ongoing harm.  (Doc. 129 at 12-13.)  Talen's contention hinges on whether Plaintiffs have taken enough steps to show that they intend to close Colstrip.  (*Id.* at 14-19.)  Talen's contention is meritless because Plaintiffs were stopped from taking any steps and because SB 266 harmed Plaintiffs when enacted.

### 1.    Plaintiffs' harm already occurred.

SB 266 stopped Plaintiffs from proposing a vote to close Colstrip Unit 3 for fear that even calling for a vote would be "conduct" that AG Knudsen would seek to punish.  (Doc. 103 ¶ 14.)  Talen contends that such an intent is insufficient because Plaintiffs did not call for a vote and because, according to Talen, they should have submitted a budget for closing the plant before calling for the vote.  (Doc. 129 at 14.)

It simply does not matter whether preliminary steps identified by Talen are necessary; Plaintiffs decided not to take any steps because of the threat posed by SB 266.  (Doc. 103 ¶ 14.)  Talen's request for discovery on the steps Plaintiffs

---

[1] "[R]ipeness coincides squarely with standing's injury in fact prong." *Bishop Paiute Tribe* v. *Inyo County*, 863 F.3d 1144, 1153 (9th Cir. 2017) (cleaned up).

**Page 3 -    PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

have taken to close Colstrip is irrelevant because Plaintiffs' decision not to take the supposedly required preliminary steps shows that they are already harmed.

SB 266 has already "effectively coerced" Plaintiffs from taking action they had the right to take under their O&O Agreement. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007). "The dilemma posed by that coercion—putting [Plaintiffs] to the choice between abandoning [their] rights or risking prosecution—is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" *Id.* (citation omitted). (*See also* Doc. 100 at 8, 13.)

Second, SB 266 has and will continue to harm Plaintiffs because it constrains their decisions concerning the budget. In the summer of 2021, AG Knudsen made it clear that he has not enforced SB 266 yet because there is a budget in place, meaning that if Plaintiffs subsequently do not approve a budget, Plaintiffs risk enforcement. (Doc. 103 ¶ 17; Doc. 104 at 12-14.) Talen acknowledges that there is no 2022 budget in place (Doc.129 at 17), despite the November 1 approval deadline in the O&O Agreement (Doc. 39-2 at 31, § 10).

Third, SB 266 has constrained and will continue to constrain Plaintiffs' ability to advocate in arbitration on the narrow question of what vote is required to close a unit. (Doc. 103 ¶ 19.) Talen wrongly argues that Plaintiffs have already advocated without restraint in this proceeding. (Doc. 129 at 16.) Plaintiffs have

not asked the Court to decide whether the O&O Agreement requires a unanimous vote or a 55% vote to close Colstrip. That question is for arbitration, and it is there that SB 266 constrains Plaintiffs' advocacy. And the fact that Plaintiffs have proposed a method for *arbitrator selection* (*id.* at 26) is irrelevant to SB 266's chilling effect on *advocacy* in arbitration.

### 2. Harm has occurred as a matter of law because of the passage of SB 266.

"The mere passage of th[e] law" violating the Contract Clause warrants an injunction, because it is "*passage* of a law" that impairs Plaintiffs' contract. *Donohue v. Mangano*, 886 F. Supp. 2d 126, 151-52 (E.D.N.Y. 2012) (emphasis added). Supreme Court precedent is clear:

> Our analysis must begin with the recognition that, where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction.

*MedImmune*, 549 U.S. at 128-29 (emphasis in original); *see also id.* at 128 n.8 (same analysis for ripeness and standing in such cases). As this Court stated, "Plaintiffs are faced with expensive potential liability should they proceed with their planned course of action to transition away from Colstrip Units 3 and 4.

**Page 5 -  PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

Their decision in the interim to comply with the law cannot be held against them as they seek an injunction."  (Doc. 100 at 13, ¶ 24.)

SB 266 injured Plaintiffs the moment it passed because it frustrated "the intent of the parties that formed the [contract]."  *See HRPT Props. Tr. v. Lingle*, 715 F. Supp. 2d 1115, 1129 (D. Haw. 2010) (holding Contract Clause claim ripe because statute "injures HPRT by changing the lease" even though appraisers had not yet set rent).  SB 266 forces the parties to operate under a modified O&O Agreement because SB 266 (1) effectively adds a liquidated damages clause in the form of a $100,000-per-day penalty if Plaintiffs breach any funding obligation; (2) imposes that fine for any "conduct" to close a Colstrip unit without first obtaining unanimous consent (NorthWestern opposes closure); and (3) limits Plaintiffs' right to vote against Talen-proposed budgets and use their combined 70% share to vote for a different budget because of the risk that AG Knudsen will argue that Plaintiffs refused to fund operating costs and will seek to impose fines. By modifying the contract, SB 266 "extinguish[ed] [Plaintiffs'] expectancy interest[s]"—"an injury which is actual, concrete, and particularized."  *Lazar v. Kronkce*, 862 F.3d 1186, 1198-99 (9th Cir. 2017).

**B.     The claims are constitutionally ripe under Talen's test.**

Even if *Thomas*'s three-part test is applied, the test is met here, for the reasons identified in Plaintiffs' preliminary injunction reply.  (Doc. 67 at 7-10.)

**Page 6 -     PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

First, Plaintiffs have a concrete plan to close Colstrip by the end of 2025,[2] which is also public knowledge based on Washington and Oregon statutes and Plaintiffs' regulatory filings;[3] that plan motivated the Montana legislature to pass SB 266.[4] Talen now contends that Plaintiffs' plans are "implausible" (Doc. 129-1 at 13) but Talen's complaints lack merit because Talen declined to depose Plaintiffs on this issue when offered.  (Doc. 128-1 ¶¶ 4-10.)  The second and third prongs are satisfied because the statute targeted Plaintiffs directly.  (Doc. 103 ¶¶ 8-9; Doc. 39-6 ¶ 8; *see* Doc. 67 at 7-10 (explaining Plaintiffs' satisfaction of *Thomas's* requirements).)

## II.    This Motion does not require interpreting the O&O Agreement and is not subject to arbitration.

Defendants are wrong that there is overlap between the contract impairments at issue in this Motion and the issues being arbitrated.  The Motion argues that SB 266 impairs Plaintiffs' contract rights to (1) vote or propose a vote to close Colstrip (regardless of whether a vote requires unanimity or 55%); (2) advocate in arbitration that the O&O Agreement requires a 55% vote to close a generating unit;

---

[2] Doc. 103 ¶ 14 (describing plan to call for vote to close Unit 3).

[3] *See* Doc. 39-2 ¶¶ 19-21; Doc. 39-3 ¶¶ 10-12; Doc. 39-4 ¶¶ 11-13; Doc. 39-5 ¶¶ 5-6 (each Plaintiff describing statutory restrictions on using coal-fired electricity and transition plans filed with regulators).

[4] *See* Doc. 39-6 at 8 (2/23/21 Tr. 3:7-9, Sen. Fitzpatrick testifying: "The West Coast operators, they're leaving the facility.").

**Page 7 -    PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

and (3) vote "no" on Talen-proposed budgets even on issues unrelated to closing Colstrip.  Those are three of the twelve arguments in the Motion why SB 266 is unconstitutional (*see* Doc. 127 at 7-10), and those twelve issues are independent of the claims subject to arbitration.

The issues in arbitration are whether (1) Colstrip "can only be shut down upon a unanimous vote"; (2)  Prudent Utility Practice plays a role in determining whether Colstrip can be closed; and (3) an owner that withholds approval of an annual budget "in an effort to cause the closure of [Colstrip] by 2025" has breached the O&O Agreement.  (Doc. 124 at 5 (NorthWestern amended arbitration demand); *see also* Doc. 128-1 at 9-10 (NorthWestern's arbitration claims for relief).)  There is no overlap between the arbitrable claims and the issues in the Motion.

## III.   SB 266 violates the Contract Clause.

### A.     SB 266 substantially impairs Plaintiffs' contractual rights.

Talen supported passage of SB 266 before the Montana Legislature, and the sponsoring legislator made it clear that SB 266 was intended to restrict Plaintiffs' rights under the O&O Agreement.  (Doc. 103 ¶¶ 8-9.)  Now, Talen takes the

contradictory and meritless position that "SB 266 does not affect any contractual rights, let alone substantially impair one." (Doc. 129 at 22.) [5]

Talen focuses on just one of the ways that SB 266 impairs Plaintiffs' contract rights: subjecting Plaintiffs to a fine for calling for a vote ("conduct") to close Colstrip when the owners already know that NorthWestern does not consent to closure by 2025. (*Id.* at 22-24.) Talen takes the position that when Plaintiffs propose and vote to close Colstrip and start the closure procedure, such a proposal and vote are not "conduct" under SB 266. (*Id.* at 23.) But AG Knudsen has not taken that position, and Talen's interpretation is not binding on him. Until there is a permanent injunction and declaration, SB 266 impairs Plaintiffs' contract rights by subjecting them to the risk that AG Knudsen will enforce SB 266 when Plaintiffs propose closure of, or vote to close, one or more Colstrip units or start preparing the unit(s) for eventual closure.

SB 266 impairs Plaintiffs rights in at least 11 other ways. (Doc. 127 at 7-10; Doc. 104 at 9.) And contrary to Talen's assertion that Plaintiffs "barely address"

---

[5] Undermining its own argument that SB 266 does not impair any contract right, Talen argues that parties in heavily regulated industries should expect impairment of contracts. (Doc. 129 at 21.) But that is only relevant where a challenged law regulates "in the particular" (i.e., on the same topic that was heavily regulated). *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 243 n.13 (1978). As Plaintiffs explained, and Talen does not rebut, that is not the situation here. (Doc. 104 at 26-27.)

**Page 9 -   PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

the part of SB 266 that punishes a refusal to fund operations, Plaintiffs argue that that part of SB 266 is unconstitutional in at least five different ways.  (Doc. 104 at 21-22; Doc. 127 at 8-9 (5th to 9th bullet points).)  The bulk of Talen's argument is that SB 266 does not affect any contract right because the O&O Agreement and SB 266 require the same payments for operating costs.  (Doc. 129 at 24-25.)

That misses the point: Plaintiffs' contract rights are substantially impaired because SB 266 ignores the O&O Agreement's arbitration provision and introduces an exorbitant penalty not agreed to by the parties.  *See Keystone Bituminous Coal Ass'n v. DeBenedicts*, 480 U.S. 470, 504 (1987); *Spannaus*, 438 U.S. at 247.  Under the O&O Agreement, if Plaintiffs reject Talen's proposed budget and use their 70% vote share to support a different budget, that could result in a dispute, but one that will be resolved under the parties' contractually agreed process.  If an evaluation of prudent utility practice is needed, that determination will be made by an arbitrator.  (Doc. 39-2 at 41-42, O&O Agreement §§ 17(h) & (i).)  Talen's argument thus introduces an *additional* reason why SB 266 is unconstitutional.  Under Talen's interpretation, Colstrip budgets will be subject to oversight by the Attorney General and Montana courts—not an arbitrator—to evaluate whether (1) a proposed budget is consistent with prudent utility practice and; (2) Plaintiffs' proposed budget (and rejection of Talen's budget) is a

**Page 10 -   PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

"refusal . . . to fund" operating costs consistent with prudent utility practices.  And, of course, the potential penalty is a $100,000-per-day fine instead of just an arbitrator's resolution of the dispute.

Further, Talen claims that a "'draconian fine' is no basis to find a constitutional violation."  (Doc. 129 at 27.)  Under SB 266, a defaulting owner pays not just the remedies in Section 21 of the O&O Agreement (Doc. 39-2 at 44-46) but also up to $100,000-per-day fines.  Thus, SB 266 also substantially impairs Plaintiffs' contract rights because it imposes a penalty far beyond what the parties agreed to as remedies for breach or default.  *See Keystone*, 480 U.S. at 504; *Spannaus*, 438 U.S. at 247.

### B.  SB 266 does not reasonably advance the purposes Talen identifies.

Talen asks this Court to defer to Montana's legislative judgment that SB 266 is necessary, because Montana is not a party to the O&O Agreement.  (Doc. 129 at 28.)  But even when the state is not a party to an impaired contract, courts are obligated to interrogate whether the "the *substance* of the [law]" serves the same purpose as its "*stated* objectives."  *See Assoc. Builders & Contractors, Golden Gate Chapter Inc. v. Baca*, 769 F. Supp. 1537, 1550 (N.D. Cal. 1991) (emphasis in original); *Spannaus*, 438 U.S. at 245 (requiring courts to conduct "a careful examination of the nature and purpose of the state legislation").  Courts strike

**Page 11 -  PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

down laws that do not reasonably advance a legitimate public purpose, particularly where a law has "a very narrow focus" that is "aimed at specific" companies—a feature of SB 266. *See Energy Rsrvs. Grp. v. Kansas Power & Light Co.*, 459 U.S. 400, 412 n.13 (1983); (*see also* Doc. 104 at 23-25 (citing cases)). Laws targeting the private rights of specific companies are not entitled to the same deference as laws seeking to vindicate general social problems. *Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237, 1249 (3d Cir. 1987).

Regardless of the deference the Court gives to Montana's legislature, neither the budget nor the closure provisions of SB 266 survive even modest scrutiny. Talen claims the budget provision reduces the risk that Colstrip could suffer a mechanical failure by requiring Colstrip's owners to adequately fund its operating costs consistent with prudent utility practice. (Doc. 129 at 28-29.) Yet SB 266 does far more than that: it unnecessarily injects Montana's Attorney General (and the courts) into Colstrip's budgeting process, as discussed above. This threat inures primarily to the benefit of Talen, not Montana's public, because it pressures Plaintiffs to agree to whatever budget Talen proposes rather than to vote for the budget that is best for Colstrip.

Talen argues that non-unanimous closure imperils Montana's interests because "NorthWestern is a utility company that serves customers in Montana"

**Page 12 -   PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

and "[r]etiring Colstrip over NorthWestern's objection could therefore threaten energy supply within Montana." (*Id.* at 29.)  This argument rests on the untenable premise that NorthWestern's interests are perfectly aligned with Montana's interests.  They are not.  NorthWestern is a South Dakota-based publicly traded Delaware corporation with obligations to its shareholders and South Dakota's utility regulator.  (*See* Doc. 32 ¶ 22; Doc. 40 ¶ 22.)  NorthWestern might choose to close Colstrip even if closing Colstrip is not in Montana's best interest, and SB 266 would not stop that from happening.  SB 266's closure provision protects the interests of *Talen* and *NorthWestern*, not Montana.

## IV.   SB 266 violates the Dormant Commerce Clause.

Talen's arguments on the Commerce Clause claim are meritless.  At the outset, Talen tries to limit the claim to Section 2(1)(b)'s closure provision.  (*See id.* at 30.)  Not true.  The Commerce Clause claim applies to both the funding and closure provisions because the legislature included both provisions for the discriminatory purpose and effect of ensuring the continued operation of Colstrip to the detriment of the out-of-state PNW Owners.  (*See* Doc. 103 ¶¶ 8-9; Doc. 100 at 10, ¶ 16 (this Court noting that defendants have failed to present evidence to controvert evidence of discriminatory purpose).)

**Page 13 -   PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

**Purpose.**  No party disputes that the legislative history establishes that the purpose of SB 266 is to promote local economic activity by keeping Colstrip operating, and to do so by putting pressure on the out-of-state PNW Owners.  (*See* Doc. 104 at 28-30.)  That alone is sufficient to violate the Commerce Clause. Facially neutral statutes violate the Dormant Commerce Clause where the "legislative history showed" they were "intended to foster local industry." *Grocery Mfrs. Ass'n v. Sorrell*, 102 F. Supp. 3d 583, 605 (D. Vt. 2015) (citing *Bacchus Imps., Ltd. v. Dias*, 468 U.S. 263, 265, 273 (1984) and *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 335-36, 352-54, (1977)).  The analysis is unchanged since this Court's finding that Plaintiffs were likely to succeed on the discriminatory-purpose prong.  (Doc. 100 at 10, ¶ 16.)

**Effect.**  The Court should grant the Motion due to discriminatory purpose alone.  But even looking at effect, Talen's arguments are meritless because Talen ignores all of Plaintiffs' arguments concerning the effects of SB 266.

First, SB 266 discriminates against interstate commerce because, as applied here, it requires Plaintiffs to source over 1,000 MW of power from Montana instead of replacing that with power from other states.  (*See* Doc. 103 ¶ 20.) Second, Talen ignores that SB 266 is facially discriminatory because it applies only to "a jointly owned electrical generation facility in the state" of Montana.

**Page 14 -   PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

SB 266 § 2(1)(a).  Companies cannot violate SB 266 by taking similar actions

regarding jointly owned facilities in other states, even if Montanans rely on that

out-of-state facility for power generation.  So, SB 266's penalties do "depend on

*where* the" economic activity occurs.  *Ass'n des Eleveurs de Canards v. Harris*,

729 F.3d 937, 948 (9th Cir. 2013) (emphasis in original).  Third, the Montana

Governor's signing statement confirmed that SB 266 discriminates against

companies in Washington (and Oregon) in favor of Montana because SB 266

impacts companies that sell power to Washington and Oregon, but not companies

that sell only in Montana.

Fourth, SB 266 discriminates as applied to Plaintiffs because it requires

out-of-state Plaintiffs to continue operating Colstrip when they would rather make

other decisions concerning their investment.  Laws that control how out-of-state

persons invest in-state are discriminatory.  *See Edgar v. MITE Corp.*, 457 U.S.

624, 642-44 (1982) (holding unconstitutional state law regulating out-of-state

purchases of in-state companies); *see also Toomer v. Witsell*, 334 U.S. 385, 403

(1948).

*Pike* **Balancing.**  Talen's two arguments under the *Pike* balancing test are

meritless.  First, it frivolously asserts that there is no burden on Plaintiffs because

they are "free to sell their shares and move on from Colstrip."  (Doc. 129 at 32.)

**Page 15 -   PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING THEIR
FOURTH AND FIFTH CLAIMS FOR RELIEF**

The fact a plaintiff can take steps to avoid fines is irrelevant.  The cantaloupe grower in *Pike v. Bruce Church, Inc.* could have sold its ranch in Arizona.  *See* 397 U.S. 137, 139 (1970).  Likewise, the shrimpers in *Toomer* could have sold their boats to others.  *See* 334 U.S. at 403-04.  Yet the Court struck down those laws. Second, Talen invokes the purported safety justifications of SB 266.  (*See* Doc. 129 at 32.)  "But the incantation of a purpose to promote the public health or safety" is unavailing where, as here, there is no evidence in the legislative record to support a finding that the law furthers the claimed purpose.  *Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 670-71 (1981); *see also Valley Bank of Nevada v. Plus Sys., Inc.*, 914 F.2d 1186, 1195 (9th Cir. 1990) (examining the legislative history).

## V.    Discovery is not necessary to decide the Motion.

The record belies Talen's argument that Plaintiffs "make no effort" to show they took or intended to take the steps necessary to propose closure of Colstrip and that further discovery will establish that lack of effort.  (Doc. 129 at 11.)  The declarations in the record demonstrate Plaintiffs intended to submit a proposal for a vote to close Colstrip at the May 19, 2021 Project Committee Meeting.  (Doc. 105 ¶ 4; Doc. 39-3 ¶ 21; Doc. 39-2 ¶ 42.)

**Page 16 -  PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

Talen argues that the declarations of Mr. Greene and Mr. Roberts are "dubious" and "not credible" and that the Court should allow Talen an opportunity to test them in discovery.  (Doc. 129 at 8, 9.)  But Talen *declined* that opportunity when Plaintiffs offered to make their executives available so Talen could depose them in early December before responding to this Motion.  (Doc. 128-1 ¶¶ 4-10.)

Further, the public record supports Plaintiffs' declarations.  The declarations cite each of their publicly available Integrated Resource Plans.  Each Plan reflects Plaintiffs' pre-existing plans to transition away from Colstrip or close Colstrip before Montana enacted SB 266 in May 2021.  (Doc. 39-3 ¶ 12; Doc. 39-2 ¶ 20); Doc. 39-4 ¶ 13; Doc. 39-5 ¶ 6.)  NorthWestern's arbitration demand corroborates the declarations.  (Doc. 128-1 at 8 (asserting that Plaintiffs "have insisted on and threatened to take actions that would cause the closure of the project by 2025").)  There is no genuine dispute that Plaintiffs intend to take steps now to transition away from Colstrip.  That is what prompted the passage of SB 266.

## VI.  Plaintiffs are entitled to an injunction permanently enjoining the enforcement of SB 266.

Beyond ripeness and the merits, Talen's only argument against a permanent injunction is its contention that Plaintiffs have not demonstrated that "they will suffer irreparable harm" in the future.  (Doc. 129 at 13-14.)  First, a showing of *past* irreparable harm is sufficient to support a permanent injunction.  *See Az.*

**Page 17 -   PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

*Dream Act Coal. v. Brewer*, 855 F.3d 957, 977-78 (9th Cir. 2017).  And the

violation of Plaintiffs' constitutional rights is an irreparable injury.  *See Melendres*

*v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).  Second, Plaintiffs will continue to

suffer irreparable harm due to the continuing loss of many rights under the

O&O Agreement, as described above and in Plaintiffs' opening brief.  Only a

permanent injunction removes the threat of the draconian fines and restores

Plaintiffs' contract rights.

## CONCLUSION

For the reasons above and in Plaintiffs' opening brief, the Court should grant

the Motion.

Dated this 31st day of December, 2021.

MARKOWITZ HERBOLD PC

*s/ Dallas DeLuca*
Dallas DeLuca (Admitted *Pro Hac Vice*)
David B. Markowitz (Admitted *Pro Hac Vice*)
DallasDeLuca@MarkowitzHerbold.com
DavidMarkowitz@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Ph: (503) 295-3085
Fax: (503) 323-9105
*Attorneys for Plaintiff Portland General*
*Electric Company*

**Page 18 -   PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR**
**PARTIAL SUMMARY JUDGMENT REGARDING THEIR**
**FOURTH AND FIFTH CLAIMS FOR RELIEF**

HANSBERRY & JOURDONNAIS, PLLC
Charles E. Hansberry
Jenny M. Jourdonnais
chuck@hjbusinesslaw.com
jenny@hjbusinesslaw.com
2315 McDonald Avenue, Suite 210
Missoula, MT 59801
Ph:  (406) 203-1730
Fax: (406) 205-3170
*Attorneys for Plaintiffs*

UGRIN ALEXANDER ZADICK, P.C.
Gary M. Zadick
gmz@uazh.com
#2 Railroad Square, Suite B
PO Box 1746
Great Falls, MT 59403
Ph: (406) 771-0007
Fax: (406) 452-9360
*Attorneys for Plaintiff Portland General
Electric Company*

PERKINS COIE LLP
Harry H. Schneider, Jr. (Admitted *Pro Hac
Vice*)
Jeffrey M. Hanson (Admitted *Pro Hac Vice*)
Gregory F. Miller (Admitted *Pro Hac Vice*)
HSchneider@perkinscoie.com
JHanson@perkinscoie.com
GMiller@perkinscoiecom
1201 Third Avenue, Suite 4900
Seattle, WA  98101
Ph: (206) 359-8000
Fax: (206) 359-9000
*Attorneys for Plaintiff Puget Sound Energy,
Inc.*

**Page 19 -   PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING THEIR
FOURTH AND FIFTH CLAIMS FOR RELIEF**

KSB LITIGATION P.S.
William J. Schroeder (Admitted *Pro Hac Vice*)
William.schroeder@Ksblit.legal
510 W Riverside, Suite 300
Spokane, WA  99201
Ph: (509) 624-8988
Fax: (509) 474-0358
*Attorneys for Plaintiff Avista Corporation*


AVISTA CORPORATION
Michael G. Andrea (Admitted *Pro Hac Vice*)
Michael.Andrea@avistacorp.com
1411 W. Mission Ave.—MSC-17
Spokane, WA 99202
Ph: (509) 495-2564
Fax: (509) 777-5468
*Attorney for Plaintiff Avista Corporation*

SCHWABE WILLIAMSON & WYATT
Troy Greenfield
Connie Sue Martin (Admitted *Pro Hac Vice*)
TGreenfield@Schwabe.com
CSMartin@Schwabe.com
US Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA  98101
Ph: (206) 407-1581
Fax: (206) 292-0460
*Attorneys for Plaintiff PacifiCorp*

**Page 20 -   PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), I certify that this Reply in Support of Motion for Partial Summary Judgment is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count calculated by Microsoft Office Word is 3,981 words, excluding Caption, Certificate of Service, and Certificate of Compliance.

Dated this 31st day of December, 2021.

*s/ Dallas DeLuca*
Dallas DeLuca (Admitted *Pro Hac Vice*)

*Attorneys for Plaintiff Portland General Electric Company*

**Page 21 -   PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel. DATED:  December 31, 2021.

*s/ Dallas DeLuca*

Dallas DeLuca (Admitted *Pro Hac Vice*)
*Attorneys for Plaintiff Portland General Electric Company*

**Page 22 -  PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
             PARTIAL SUMMARY JUDGMENT REGARDING THEIR
             FOURTH AND FIFTH CLAIMS FOR RELIEF**