AUSTIN KNUDSEN
Montana Attorney General
KRISTIN HANSEN
  *Lieutenant General*
DEREK J. OESTREICHER
  *General Counsel*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Tel: (406) 444-2026
Fax: (406) 444-3549
derek.oestreicher@mt.gov

EMILY JONES
  *Special Assistant Attorney General*
Jones Law Firm, PLLC
115 N. Broadway, Suite 410
Billings, MT 59101
Phone:  406-384-7990
emily@joneslawmt.com

*Counsel for Defendant Austin Knudsen*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, BILLINGS DIVISION

| | |
|---|---|
| PORTLAND GENERAL ELECTRIC COMPANY et al.,<br><br>           Plaintiffs,<br><br>v.<br><br>NORTHWESTERN CORPORATION; TALEN MONTANA, LLC; AUSTIN KNUDSEN, in his official capacity as Attorney General for the State of Montana,<br><br>           Defendants. | CV-21-47-SPW-KLD<br><br>**ATTORNEY GENERAL'S PRELIMINARY PRETRIAL STATEMENT** |

Defendant Austin Knudsen, in his official capacity as Attorney General for the State of Montana ("Attorney General Knudsen") submits the following Preliminary Pretrial Statement pursuant to L.R. 16.2(b) of the Rule of Procedure of the United States District Court for the District of Montana:

## A. Brief Factual Outline of the Case

Colstrip comprises two coal-fired electrical generation facilities in Colstrip, Montana.  Colstrip provides the People of Montana with a crucial source of energy, revenue, and employment.  Talen Montana, LLC ("Talen"), NorthWestern Corporation ("NorthWestern"), Avista Corporation ("Avista"), Puget Sound Energy, Inc. ("PSE"), PacifiCorp, and Portland General Electric Company ("PGE") jointly own Colstrip.  Talen is also Colstrip's Operator.  The Ownership and Operation Agreement ("O&O Agreement"), first executed in 1981 and amended four times since, governs these parties' ownership and operation of Colstrip.

In recent years, Washington and Oregon have passed anti-coal laws discouraging the importation and use of coal-powered electricity.  *See* Wash. Rev. Code § 19.405.030(1)(a); Or. Rev. Stat. § 757.518(2).  The Plaintiffs in this case claim that the Washington and Oregon laws will

make it economically unreasonable for them to keep Colstrip running. Doc. 32 at ¶¶ 3, 42. The Plaintiffs further claim they must therefore start working on a plan to shut down Colstrip. *Id.*, ¶¶ 42–43.

On May 3, 2021, Governor Gianforte signed Senate Bill 265 ("SB 265") and Senate Bill 266 ("SB 266") into law. SB 265 amended Mont. Code. Ann. section 27-5-323, which provides, in relevant part, that "[a]n agreement concerning venue involving a resident of this state is not valid unless the agreement requires that arbitration occur within the State of Montana." SB 265 added that "[a]n agreement concerning venue involving an electrical generation facility in this state is not valid unless the agreement requires that arbitration occur within the state [of Montana] before a panel of three arbitrators selected under the Uniform Arbitration Act unless all parties agree in writing to a single arbitrator." MCA § 27-5-323(1). The Montana supreme court has upheld the pre-amendment version of section 27-5-323 against Federal Arbitration Act preemption claims. *See Keystone, Inc. v. Triad Sys.*, 971 P.2d 1240 (Mont. 1998).

SB 266 section 2(1)(a) (hereinafter, "the funding provision") provides that "[t]he failure or refusal of an owner of a jointly owned electrical generation facility in the state to fund its share of operating costs

associated with a jointly owned electrical generation facility is an unfair or deceptive act or practice in the conduct of trade or commerce" under the Montana Consumer Protection Act.

Section 2(1)(b) of SB 266 (hereinafter, "the unanimous approval provision") provides that "[c]onduct by one or more owners of a jointly owned electrical generation facility in the state to bring about permanent closure of a generating unit of a facility without seeking and obtaining the consent of all co-owners of a generating unit is an unfair or deceptive act or practice in the conduct of trade or commerce" under the Montana Consumer Protection Act.   Section 2 of SB 266 also creates an enforcement mechanism: it authorizes the Montana Department of Justice to sue in state court to enjoin conduct that violates SB 266 and obtain a civil fine of $100,000 for each day a party "willfully" violates SB 266.  *Id.*, §§ 2(a), (b).

Plaintiffs have named Attorney General Knudsen as a defendant in his official capacity pursuant to 42 U.S.C. § 1983.  They seek the following forms of relief.  First, Plaintiffs seek declaratory relief that SB 265 is unconstitutional as applied to the O&O agreement under the Contract Clause of the U.S. Constitution and is pre-empted by the Federal

Arbitration Act.  As to SB 266, Plaintiffs seek declaratory and injunctive relief, asserting that SB 266 violates the Commerce Clause set forth in Article I, Section 8, Clause 3 and Article I, Section 10, Clause 1 of the U.S. Constitution, as well as the Due Process Clause of the Fourteenth Amendment.  Attorney General Knudsen is defending the constitutionality of these laws.

## B. Basis for Federal Jurisdiction and Venue in the Division

Plaintiffs assert claims arising under federal law and the United States Constitution.  The Court's subject matter jurisdiction is limited to Article III cases or controversies.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Attorney General Knudsen has raised a jurisdictional defense that Plaintiffs lack standing to bring this claim because they cannot establish an injury-in-fact caused by SB 266.  Venue is proper in the United States District Court for the District of Montana, Billings Division.

## C–D. Factual and Legal Basis for Defenses to Claims

### 1. Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

The factual basis for this defense is that Plaintiffs lack standing and their claims are unripe and not justiciable, as described below. The legal basis for this defense is Fed. R. Civ. P. 12(b)(6).

### 2. Attorney General Knudsen did not subject Plaintiffs or cause Plaintiffs to be subjected to any violation of rights secured by the United States Constitution.

#### a. SB 266 doesn't violate the Contract Clause.

The Contracts Clause of the United States Constitution provides that "[n]o State shall … pass any … Law impairing the Obligation of Contracts." U.S. CONST. art. I, § 10. A law violates the Contracts Clause if it "has operated as a substantial impairment of a contractual relationship" and "is not drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose." *Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018) (citation omitted).

The Attorney General believes, and will submit substantiating evidence after discovery, that SB 266 does not alter or impair the parties' existing contractual rights and obligations under the O&O Agreement. The Attorney General believes, and will submit substantiating evidence after discovery, that (1) the Plaintiffs may not close Colstrip without

unanimous consent of the other owners and (2) the O&O Agreement requires each owner to fund its share of the operating costs for Colstrip.

Even if the Court were to conclude that SB 266 substantially impairs the parties' contractual relationship, SB 266 is "drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose." *Sveen*, 138 S. Ct. at 1821.  SB 266's statement of legislative purpose observes that "electrical generation facilities" like Colstrip "have significant implications for the economy, environment, and health and welfare of Montana consumers."  "[C]losure of electrical generation facilities without the consent of all owners threatens the safety of workers at the facility, threatens Montana's interest in environment remediation of the facility, and threatens the reliable supply of electricity for Montana consumers."  *Id.*  And "electrical generation facility owners who fail to fund their share of operating costs without the unanimous consent of all co-owners or seek closure of an electrical generation facility without the unanimous consent of all co-owners of the facility place on Montana local government units and Montana electricity consumers the burdens of disruptions in facility operations or closure of the facility."  *Id.*  The People of Montana rely on Colstrip for jobs, revenue, and energy.  Without

question, Montana has a significant interest in protecting the health, welfare, and prosperity, of its citizens, and in maintaining its sovereignty over affairs that occur within its borders.  SB 266 is appropriately drawn to advance these interests because it targets behavior that could shut down an electrical generation facility in Montana—in response to out-of-state pressure—and cause the loss of power, jobs, and revenue.

### b. SB 265 doesn't violate the Contracts Clause.

The Attorney General intends to rely on similar legal grounds in support of his argument that SB 265 doesn't violate the Contracts Clause of the U.S. Constitution.  SB 265 doesn't substantially impair the parties' contractual relationship under the O&O Agreement because the Colstrip Owners and Operator operate in "a heavily regulated industry" in which "contractual rights [are] subject to alteration by state" laws and regulations.  *Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 413 (1983).  So, to the extent SB 265 does impair the O&O Agreement's choice of venue for arbitration, the impairment is not substantial. *Id.*

Even if SB 265 did substantially impair the parties' contractual rights, it is still constitutional, because it is an appropriate and

reasonable way to advance a significant and legitimate public purpose. *Sveen*, 138 S. Ct. at 1821.  In SB 265's statement of purpose, the Montana Legislature observed that "electrical generation facilities located in Montana have significant implications for the economy, environment, and health and welfare of Montana consumers" and that "arbitration of disputes" concerning these issues "outside of Montana threatens Montana's laws, policies, and the interest of Montana in securing and maintaining a reliable source of electricity."  *See* SB 265 (statement of purpose).  Ensuring that arbitration regarding jointly owner electrical generation facilities occurs in Montana is an appropriate way of safeguarding Montana's energy supply, the safety of Colstrip workers and customers, and the economic interests of the People of Montana.

### c. SB 266 doesn't violate the Commerce Clause.

Neither SB 266's funding provision nor unanimous approval provision violates the Commerce Clause.  A two-tiered test determines whether a law violates the Commerce Clause. First, if the state law discriminates against or directly regulates interstate commerce, it is likely unconstitutional.  *Pharm. Research Mfrs. of Am v. Cnty. of Alameda*, 768 F.3d 1037, 1041 (9th Cir. 2014).  If the law does not discriminate against

or directly regulate interstate commerce, the court then applies the *Pike* balancing test, which asks if the burden the law imposes on interstate commerce clearly outweighs the putative local benefits of the law. *Id.* at 1044.

Neither SB 266's funding provision nor unanimous approval provision discriminates against or directly regulates interstate commerce. *Id.* A law like SB 266 that "treat[s] all private companies exactly the same does not discriminate against interstate commerce." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013). SB 266 applies to all jointly owned electrical generation facilities in Montana without regard to any of the parties' state citizenship. It treats the out-of-state and in-state co-owners of Colstrip the same way.

Both provisions also survive the second, *Pike* balancing, tier. "A critical requirement for proving a violation of the dormant Commerce Clause is that there must be a *substantial burden on interstate commerce.*" *Nat'l Ass'n of Optometrists & Opticians v. Brown*, 682 F.3d 1144, 1148 (9th Cir. 2012) (emphasis in original). Neither SB 266's funding provision nor the unanimous consent provision substantially burdens interstate commerce. And both advance critical local benefits relating to

safety, public welfare, prosperity, and maintaining an adequate energy supply for Montanans. "[U]nder our constitutional scheme the States retain broad power to legislate protection for their citizens in matters of local concern such as public health." *Id.* at 1148–49 (quoting *Great Atl. & Pac. Tea Co v. Cottrell*, 424 U.S. 366, 371, 96 S. Ct. 923 (1976)).

### d. The Federal Arbitration Act doesn't preempt SB 265.

The Attorney General intends to argue that SB 265 falls under the Federal Arbitration Act's saving clause—9 U.S.C.§ 2—because it is part of a package of generally applicable statutes which invalidate choice of forum provisions in contracts generally. In support of this argument, the Attorney General intends to rely on *Keystone, Inc. v. Triad Sys.*, 971 P.2d 1240, 1243 (Mont. 1998), *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 825 (9th Cir. 2019) and other related cases.

### e. SB 266 isn't unconstitutionally vague.

SB 266 provides notice to persons of ordinary intelligence of what it prohibits and is not "so standardless that it authorizes or encourages discriminatory enforcement." *F.C.C. v. Fox Television Studios*, 567 U.S. 239, 253 (2012). The Attorney General intends to rely on *Fox Television*

567 U.S. at 253, *Yamada v. Snipes*, 786 F.3d 1182 (9th Cir. 2015), and other related cases.

### 3. The Attorney General is not a "person" subject to suit under 42 U.S.C. § 1983.

The factual basis for this defense is that the Attorney General has no enforcement role with respect to SB 265.  Attorney General Knudsen, further, has not taken or threatened to take any enforcement action with respect to SB 266.  Austin Knudsen is a party to this case only in his official capacity as Attorney General for the State of Montana.  State officials sued in their official capacity are not proper defendants in § 1983 cases, except where they have a specific enforcement duty and are threatening to exercise that duty.  *Will v. Mich. Dep't of State Police*, 492 U.S. 58 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.")

For the *Ex parte Young* exception to apply, the defendant state official must have "some connection with the enforcement of the act" in question or be "specially charged with the duty to enforce the statute" and be threatening to exercise that duty."  *Okpalobi v. Foster*, 244 F.3d 405, 414–15 (5th Cir. 2001) (en banc) (quoting *Ex parte Young*, 209 U.S. at 157, 158 (1908)); *see also Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 159

(5th Cir. 2007) (quoting *Ex parte Young*, 209 U.S. at 157) ("Young requires that '[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional,...such officer must have some connection with the enforcement of the act, or else it is merely making...the state a party.'" "Any probe into the existence of a *Young* exception should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute." *Okpalobi*, 244 F.3d at 417. "The required 'connection' is not merely the general duty to see that the laws of the state are implemented, but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (quotations omitted).

### 4. The Attorney General cannot be sued for retroactive injunctive relief under 42 U.S.C. § 1983.

Courts may enjoin a state official's future conduct in some circumstances but may not award retroactive relief. *Edelman v. Jordan*, 415 U.S. 651 (1974); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 90 (1984); U.S. Const. Eleventh Amend.

### 5. Plaintiffs lack standing to assert the causes of action and claims of which they complain.

Plaintiffs lack article III standing because they can't establish an injury-in-fact. The Attorney General believes, and will submit substantiating evidence after discovery, that the O&O Agreement already requires unanimous consent of all owners to shut down Colstrip, so long as Colstrip is producing electricity in accordance with Prudent Utility Practice. The Attorney General also believes, and will submit substantiating evidence after discovery, that the O&O Agreement requires each owner to fund its share of "operating costs," as SB 266 defines that term. So SB 266 doesn't prevent Plaintiffs from doing anything the O&O Agreement doesn't already prevent them from doing. Plaintiffs therefore can't show that their alleged injuries are "fairly traceable" to SB 266 or would "likely" be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61. And, because there is no risk of imminent enforcement of SB 266 (*see* Doc. 57), they cannot show an injury which is imminent. *Lujan*, 504 U.S. at 560–61.

### 6.   The issues raised in Plaintiffs' complaint are not ripe for judicial resolution.

To satisfy the Article III case or controversy requirement, a matter must be ripe for judicial review.  *See Clark v. City of Seattle*, 899 F.3d 802, 808 (9th Cir. 2018) (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)).  The Attorney General believes, and will submit substantiating evidence after discovery, that the PNOs cannot establish that they plan to violate SB 266 either by acting to shut down Colstrip or refusing to fund their share of operating costs.  The Attorney General believes, and will submit substantiating evidence after discovery that, to the contrary, they have—together with NorthWestern and Talen—approved the 2021 budget and the 2022 budget.

Plaintiffs cannot satisfy the "genuine threat of imminent prosecution" ripeness exception because (1) they don't have a "concrete plan" to violate SB 266; (2) the Attorney General has indicated that he does not anticipate enforcing SB 266 against Plaintiffs anytime soon (*see* Doc. 57); and (3) and there is no "history of past prosecution or enforcement under" SB 266.  *See Thomas*, 220 F.3d at 1139.  The issues in this case are, therefore, not ripe for judicial review.

### 7. Plaintiffs' causes of action and claims are not justiciable.

Plaintiffs' claims are not justiciable because they lack standing and because the claims are not ripe, as discussed above.

### 8. The Court should abstain from hearing this matter under federal abstention doctrines.

Because the Attorney General has taken no enforcement action and is preliminarily enjoined from doing so, and because no current, ongoing civil enforcement proceeding exists, the Attorney General intends to withdraw this defense before trial.

### 9. The doctrine of unclean hands may bar plaintiffs' claims.

The Attorney General believes, and will submit substantiating evidence after discovery, that Plaintiffs' behavior in arbitration proceedings and two other related federal cases belies their stated concern in this case that SB 266 may prevent them from advocating their position that the O&O Agreement doesn't require unanimous consent to shut down Colstrip, such that the equitable doctrine of unclean hands may bar their claims for equitable relief.  As a legal basis for this defense, the Attorney General intends to rely on *Rutherford v. Ultra Shields Prods. Int'l*, 2002 MT 137N and other cases.

## E. Computation of Damages

Because Plaintiffs seek only declaratory and injunctive relief, the Attorney General does not anticipate that there will be any damages to calculate.

## F. Pendency of Disposition of Any Related Litigation

*Talen Montana, LLC v. Avista Corporation, et al.*, 1:21-cv-00058-SPW-TJC, is currently pending before the U.S. District Court for the District of Montana, Billings division.  That case involves a dispute between the Colstrip Owners and Operator over whether arbitration must proceed and, if so, where and under what state's law.  The applicability of SB 265 is an issue in the case.  The Pacific Northwest Owners—defendants in that case—have moved to consolidate cv-00058-SPW-TJC with this case.  The Court has stayed the motion to consolidate pending a ruling on Talen's motion to remand the case to Montana state court based on lack of diversity subject matter jurisdiction.  Magistrate Judge Cavan has issued a written Findings and Recommendation ("F&R") recommending that the Court remand the case.

*Avista Corporation, et al. v. NorthWestern Corporation et al.*, 1:21-cv-00090-SPW-TJC is currently pending before the U.S. District Court

for the District of Montana, Billings division.  In that case, the Pacific Northwest Owners sued in Washington state court, seeking an order compelling arbitration under Washington law.  The Defendants removed to the U.S. District Court for the Eastern District of Washington.  The case has since been transferred to this Court.  Talen has answered the Plaintiffs' Complaint in that case.  To this date, no party has filed a dispositive motion in the case.

## G. Proposed Additional Stipulations of Fact and Law

The Attorney General refers the Court to the list of stipulated facts the parties have separately submitted.  At this stage in the litigation, the Attorney General will not stipulate to additional facts or points of law absent Plaintiffs' production of meaningful discovery allowing investigation into Plaintiffs' claims.

## H. Proposed Deadlines Relating to Joinder of Parties of Amendment of Pleadings

The Attorney General proposes a deadline of April 8, 2022 to join parties and amend pleadings.

## I. Identification of Controlling Issues of Law Suitable for Pretrial Disposition

The Attorney General believes all of Plaintiffs' claims against the Attorney General may be subject to pretrial disposition based on the defenses asserted above.

## J. Individuals with Knowledge of Parties' Claims or Defenses

Individuals with knowledge of the parties' claims and defenses in this case may include:

1. Montana State Senator Steve Fitzpatrick
c/o Montana Attorney General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Tel: (406) 444-2026
Fax: (406) 444-3549

Senator Fitzpatrick sponsored SB 265 and SB 266 in the Montana Legislature.

2. Unknown representatives of the other named parties in this case have knowledge of the contents of the O&O Agreement, its rights and obligations, and the parties' actions with respect to that Agreement. Such individuals have knowledge of how SB 265 and SB 266 affect the parties' rights and obligations under the Agreement. Such individuals

have knowledge of Plaintiffs' claim that the Washington and Oregon laws will make it economically unreasonable for them to keep Colstrip running, their plans for shutting down Colstrip, the extent to which Colstrip may be expected to continue operating in accordance with Prudent Utility Practice, and other topics relevant to the claims and defenses in this case.

## K. Substance of any Insurance Coverage.

Since Plaintiffs seek declaratory and injunctive relief, no insurance agreement applies.

## L. Status of Settlement Discussions and Prospect for Compromise of Case

No settlement discussions have taken place.  The Attorney General does not believe settlement in this litigation is likely.

## M. Special Procedures

The Attorney General does not believe any special procedures are necessary at this time.

DATED this 8th day of February, 2022.

AUSTIN KNUDSEN
Montana Attorney General

KRISTIN HANSEN
  *Lieutenant General*


DAVID M.S. DEWHIRST
  *Solicitor General*

DEREK OESTREICHER
  *General Counsel*

/s/    *Emily Jones*
EMILY JONES
  *Special Assistant Attorney General*
Jones Law Firm, PLLC
115 N. Broadway, Suite 410
Billings, MT 59101
Phone:  406-384-7990
emily@joneslawmt.com

*Counsel for Defendant Austin Knudsen*

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: February 8, 2022          /s/    *Emily Jones*
                                 EMILY JONES