Robert L. Sterup
Brown Law Firm, PC
315 North 24th Street
Billings, Montana 59101
Telephone: (406) 248-2611
Facsimile: (406) 248-3128
rsterup@brownfirm.com

Barry Barnett (admitted *pro hac vice*)
Susman Godfrey L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
bbarnett@susmangodfrey.com
Attorneys for Defendant Talen Montana, LLC
Additional Attorneys listed in signature block

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| Portland General Electric Company; Avista Corporation; PacifiCorp; and Puget Sound Energy, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> NorthWestern Corporation; Talen Montana, LLC; and Austin Knudsen, in his official capacity as Attorney General for the State of Montana, <br><br> Defendants. | Case No. 1:21-cv-00047-SPW-KLD <br><br> **Preliminary Pretrial Statement of Defendant Talen Montana, LLC** |

Pursuant to Local Rule 16.2(b)(1) and the Court's Order Setting a Preliminary Pretrial Videoconference (Dkt. 149) for February 15, 2022, Defendant Talen Montana, LLC ("Talen Montana") timely submits the following Preliminary Pretrial Statement.

A.   <u>Brief factual outline of the case</u>

This case arises from a multi-layered dispute over whether a coal-fired electrical generation facility in Colstrip, Montana ("Colstrip") should continue to operate after 2025 under the terms of the parties' Ownership and Operation Agreement dated May 6, 1981 (the "O&O Agreement"). First Amended Complaint, Dkt. 32 ("FAC") ¶ 2. Talen Montana is a co-owner of Colstrip as well as its operator. FAC ¶ 23. Since the 1980s, the people of Montana have relied on Colstrip for jobs, power, and prosperity. Talen Montana's Answer, Dkt. 58, Prayer for Relief. Colstrip is currently producing electricity consistent with the standard the O&O Agreement specifies—"Prudent Utility Practice"—and Talen Montana expects that to be the case for the foreseeable future. *Id.* ¶ 44.

On March 12, 2021, a Colstrip co-owner, defendant NorthWestern Corporation ("NorthWestern"), sent a Demand for Arbitration to Talen Montana and the other co-owners, plaintiffs Avista Corporation, PacifiCorp, Portland General Electric Company, and Puget Sound Energy, Inc. (collectively, the "Pacific Northwest Owners" or "PNOs"). The PNOs are electric utilities in Washington and Oregon, and they claim to want to close Colstrip effective January 1, 2026, in response to their home states' enactment of laws that discourage the sale of electricity generated from coal. FAC ¶¶ 39-40. NorthWestern's Demand for Arbitration sought a declaration regarding, among other things, whether the O&O

Agreement gives NorthWestern a veto in any vote by the co-owners on closing Colstrip. FAC ¶ 47. NorthWestern sent an Amended Demand for Arbitration to similar effect on April 2, 2021.

On April 23, 2021, Talen Montana responded to NorthWestern's demands in a letter to counsel for NorthWestern and the PNOs. The letter noted that "the O&O Agreement specifies procedures for making decisions regarding the Colstrip Project and for resolving disputes relating to them." It also stated that, as Operator and co-owner, "Talen Montana opposes" NorthWestern's and the PNOs' collective "attempt to short-circuit the decision-making and dispute-resolution process" the O&O Agreement mandates.

The PNOs filed this case to challenge two recently enacted Montana statutes that apply to electrical generation facilities in Montana, including Colstrip. The first, Montana Senate Bill 265 ("SB 265"), requires, among other things, that any arbitration regarding an electrical generation facility in Montana take place in Montana before a panel of three arbitrators. The other statute, Montana Senate Bill 266 ("SB 266"), obliges each co-owner of such a facility to pay its fair share of operating costs and directs that any co-owner desiring to permanently close the facility first seek and obtain consent from its co-owners. FAC ¶¶ 84-157. The PNOs direct their first three claims (challenging SB 265) against Talen Montana

and NorthWestern but aim their remaining claims (challenging SB 266) at the Attorney General for the State of Montana (the "AG").

B.    Basis for federal jurisdiction

This Court has diversity jurisdiction over Counts One through Three of the First Amended Complaint (claims challenging the validity of SB 265) because there is complete diversity between the PNOs, on the one hand, and defendants Talen Montana and NorthWestern, on the other hand, FAC ¶¶ 18-24, but lacks subject-matter jurisdiction because the PNOs' claims are unripe, *see* Dkt. 129 at 4-14 (Talen Montana's Opposition to Plaintiffs' Motion for Partial Summary Judgment).

C.    Factual basis for each claim or defense

The PNOs' claims in this case center around a pair of Montana statutes, SB 265 and SB 266. SB 265 amended Montana Code § 27-5-323, which has governed arbitrations in Montana since its enactment in 1985. Section 27-5-323 originally provided that "[a]n agreement concerning venue involving a resident of this state is not valid unless the agreement requires that arbitration occur within the state of Montana." Mont. Code § 27-5-323(1). SB 265 added the following provision: "An agreement concerning venue involving an electrical generation facility in this state is not valid unless the agreement requires that arbitration occur within the state

4

before a panel of three arbitrators selected under the Uniform Arbitration Act unless all parties agree in writing to a single arbitrator." *Id.* § 27-5-323(2).

Within SB 265, the Montana Legislature declared a legislative purpose that "electrical generation facilities located in Montana have significant implications for the economy, environment, and health and welfare of Montana consumers;" and that "arbitration of disputes concerning Montana electrical generation facilities outside of Montana threatens Montana's laws, policies, and the interests of Montana in securing and maintaining a reliable source of electricity." S.B. 265, 67th Leg. (Mont. 2021). SB 265 accomplished this purpose by expressly expanding the generally applicable principle in Montana that invalidated venue provisions that would remove Montana-centric disputes from Montana to venue provisions related to electrical generation facilities located in the state. The PNOs allege that SB 265 is preempted by the Federal Arbitration Act, unconstitutional, and otherwise invalid primarily because it conflicts with Section 18 of the O&O Agreement, Dkt. 39-2 at Ex. A, which provides that any arbitration relating to Colstrip be venued in Washington before one arbitrator. FAC ¶¶ 13, 80.[1]

---

[1] Section 21(h) of the O&O Agreement entitles "any nondefaulting Project User" to "take any action, at law or in equity, including an action for specific performance to enforce this Agreement and to recover for any loss, damage or payment advances, including attorneys' fees in all trial and appellate courts and collection costs incurred by reason of such default."

SB 266 is the other Montana statute at issue. It contains two relevant provisions. One requires each co-owner to "fund its share of operating costs," defined as "costs . . . in accordance with prudent utility practices." SB 266 §§ 1(4), 2(1)(a). The other prohibits "[c]onduct . . . to bring about permanent closure [of Colstrip] . . . without seeking and obtaining the consent" of all the co-owners. *Id.* § (2)(1)(b). As with SB 265, the Montana Legislature declared that SB 266 advances significant and legitimate public purposes: "[E]lectrical generation facilities located in Montana have significant implications for the economy, environment, and health and welfare of Montana consumers;" "closure of electrical generation facilities without the unanimous consent of all co-owners threatens the reliable supply of electricity for Montanans;" and "failure or refusal to fund operations of Montana electrical generation facilities by facility owners . . . threatens the safety of workers at the facility, threatens Montana's interest in environmental remediation of the facility, and threatens the reliable supply of electricity for Montana consumers."

SB 266 poses no threat to any of the parties. The Montana Attorney General has given notice that "the State does not anticipate enforcing Senate Bill 266 in the immediate future." Dkt. 57. The PNOs likewise concede they have no plans to propose closure of Colstrip any time soon. Dkt. 38 at 28. Nor have the PNOs presented evidence that they have complied with the O&O Agreement's

substantive or procedural requirements for proposing closure of Colstrip (including showing that the plant can no longer be operated consistent with Prudent Utility Practice) or that they are ready and willing to do so. Similarly, the PNOs have not suggested, in this case or otherwise, that they will refuse to pay their share of Colstrip's operating costs. To the contrary, the Project Committee (including three of the four PNOs) recently approved Talen Montana's proposed 2022 Colstrip budget. Dkt. 153.

D.     Underlying legal theory for each claim or defense

Although there have been no depositions and virtually no document discovery to date, and there is no scheduling order governing the case, the PNOs moved for summary judgment on five of their six claims. Dkt 88 (motion for partial summary judgment on all claims relating to SB 265); Dkt. 102 (motion for partial summary judgment on claims relating to SB 266). Talen Montana opposed these motions and partially supported the AG's motion for a stay to permit relevant discovery. Dkt. 93 (SB 265), 129 (SB 266). Both motions should be denied because the statutes are valid.[2]

---

[2] In opposition to each motion, Talen Montana filed a Rule 56(d) declaration explaining how each of the PNOs' motions rely on numerous disputed and unsubstantiated factual assertions. To the extent the Court is not currently inclined to deny the PNOs' motions on the merits, Talen Montana respectfully requests that the Court deny the motions without prejudice so that Talen Montana may take discovery aimed at refuting the PNOs' factual allegations. Dkts. 93-1 (SB 265); 129-2 (SB 266).

i.    *SB 265 (Counts One, Two, and Three)*

The PNOs' attacks on SB 265 fall short. SB 265 is not preempted, and it is constitutional.

SB 265 is not preempted by the Federal Arbitration Act. In *Keystone, Inc. v. Triad Systems*, 971 P.2d 1240, 1243 (Mont. 1998), the Supreme Court of Montana held that the Federal Arbitration Act does not preempt Montana Code § 27-5-323 (the statute which SB 265 amended) because "Montana law . . . does not distinguish between forum selection clauses which are part of contracts generally and forum selection clauses found in agreements to arbitrate": Montana Code § 28-2-708 "invalidates choice of forum provisions in contracts generally" and "27–5–323 does the same to arbitration agreements."  *Id.* SB 265 applies that longstanding Montana public policy disfavoring non-Montana venues for Montana-centric disputes to a particular kind of contract. Because that same rule applies generally to other contracts, the Federal Arbitration Act does not preempt SB 265.

The Court should also reject the PNOs' Contracts Clause challenge to SB 265. The PNOs have not identified any cases suggesting that an amendment to a state statute invalidating the venue provision of an arbitration agreement constitutes a substantial impairment under the Contracts Clause. Nor could they. In *Cycle City, Ltd. v. Harley-Davidson Motor Co.*, 81 F. Supp. 3d 993, 1004 (D. Haw. 2014), for example, the court rejected a Contracts Clause challenge to a statute that

"add[ed] a venue requirement that is different from the venue selected by the parties," reasoning that any "impairment . . . is not substantial." The PNOs also overlook the rule that forum-selection clauses should be disregarded when, as here, "enforcement would contravene a strong public policy of the forum in which suit is brought." *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 915 (9th Cir. 2019). Furthermore, parties in "heavily regulated industr[ies]" know their "contractual rights [are] subject to alteration by state [] regulation." *Energy Rsrvs. Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 414, 416 (1983). The electrical generation industry is heavily regulated, and the O&O Agreement "expressly recognize[s] th[is] extensive regulation," which undercuts any argument that the PNOs' expectations have been impaired. *Id.*

Even if the PNOs could overcome the substantial impairment hurdle (and they cannot), SB 265 would still be constitutional because the statute is an appropriate and reasonable way to advance a significant and legitimate public purpose. When (as here) the state is not a contracting party, "courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004).

ii.    SB 266 (Counts Four, Five, and Six)

The PNOs' SB 266 claims are unripe because they have made no effort to show that they ever initiated—or even that they are now ready to initiate—any of

9

the procedural steps required by the O&O Agreement for "seeking and obtaining" (in the words of SB 266) the consent of all co-owners to closing Colstrip. *See* O&O Agreement §§ 17(g), (i) (setting forth numerous procedural requirements for making a proposal to the Colstrip Project Committee). Under these circumstances, there is no ripe dispute. *See Lower Colorado River Auth. v. Papalote Creek II LLC*, 858 F.3d 916, 926 (5th Cir. 2017) (holding that "the circumstances in this case, on the record before us, do not demonstrate that the contingency at issue—i.e., LCRA deciding to stop taking energy [electricity] from the Project and paying liquidated damages instead—was likely to occur at the time the district court" ruled).

The PNOs' constitutional challenges to SB 266 should also be rejected. The PNOs' Contracts Clause challenge rests almost exclusively on the provision in SB 266 that prohibits "[c]onduct by one or more owners . . . to bring about permanent closure . . . without seeking and obtaining the consent of all co-owners." SB 266 § 2(1)(b). The PNOs argue that this prohibits them "from exercising their contract right to engage in conduct to close Colstrip." Dkt. 104 at 11. But SB 266 expressly authorizes "seeking and obtaining the consent of all co-owners" to close Colstrip and the statute would bar them from conduct "to bring about permanent closure" only once those efforts failed. Given that the O&O Agreement already requires the concurrence of Colstrip's Operator (Talen Montana) with any proposal to the Project Committee, *see* O&O Agreement § 17(f) (stating that "approval must be by

10

a vote of the Operator's Committee member, plus at least two other Committee members"), the requirement to seek and obtain consent hardly undermines any of the PNOs contractual rights. The PNOs do not have a contractual right to unilaterally retire Colstrip, and therefore a requirement that they seek and obtain consent to do so does not violate the Contracts Clause.

As for the other provision within SB 266, the PNOs barely address it. This provision applies to the "failure or refusal of an owner . . . to fund its share of operating costs"—defined as "costs to construct, operate, and maintain the electrical generation facility in accordance with prudent utility practices." SB 266 §§ 1(4), 2(1)(a). The PNOs barely address this provision because the O&O Agreement already requires the co-owners to pay their share of such costs regardless of whether there is an approved budget in place. *See* O&O Agreement §§3(b), 10(c). The funding provision within SB 266 is nothing new. The PNOs' only answer is that the AG might adopt an admittedly "extreme" interpretation of this provision and fine the PNOs for merely declining to approve a budget proposal. Dkt. 39-5 ¶ 10. This concern has always been theoretical, and it is now non-existent because the Project Committee (as of late January) voted to approve the 2022 Colstrip budget. Dkt. 153.

Finally, as with SB 265, even if SB 266 operates as a substantial impairment of a contractual right (it does not), the statute is constitutional because it is an

appropriate and reasonable way to advance a significant and legitimate public purpose. *See Apartment Ass'n of Los Angeles Cty., Inc. v. City of L.A* 10 F.4th 905, 914 (9th Cir. 2021).

Nor does SB 266 violate the Commerce Clause. "[A] statute that treat[s] all private companies exactly the same does not discriminate against interstate commerce." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013). "[B]oth on its face and in effect, [SB 266] applies to all [owners of a jointly owned electrical generation facility in the state] without respect to the geographic location of the [co-owner.]" *Pharm. Rsch. & Mfrs. of Am. v. Cty. of Alameda*, 768 F.3d 1037, 1042 (9th Cir. 2014). And "regulations that touch upon safety [like SB 266] are those that the Supreme Court has been most reluctant to invalidate. Indeed, if safety justifications are not illusory, the Court will not second-guess legislative judgment about their importance in comparison with [any] burdens on interstate commerce." *Id.* at 1045 (cleaned up).

E.   Computation of damages

No party claims damages.

F.   The pendency or disposition of any related state or federal litigation

There are two related lawsuits pending in this Court.

Talen Montana filed a case on May 4, 2021 against the PNOs and NorthWestern in the Montana Thirteenth Judicial District Court for Yellowstone

12

County, seeking (a) a declaratory judgment that SB 265 governs any arbitration among these parties regarding Colstrip, and (b) an order "conditionally compelling arbitration in accordance with [SB 265] if and to the extent . . . there is a sufficiently ripe and concrete dispute." First Amended Complaint for Declaratory Judgment and Petition to Compel Arbitration ¶¶ 47 & 56. After the PNOs removed that case to this Court, Talen Montana moved to remand it to Yellowstone County on the ground that this Court lacks subject matter jurisdiction. Case No. 1:21-CV-00058-SPW-TJC (D. Mont.), Dkt. 24. On December 1, 2021, Magistrate Judge Timothy J. Cavan issued his Findings and Recommendation that Talen Montana's motion to remand be granted. *Id.* Dkt. 56.

The PNOs filed a separate lawsuit against Talen Montana and NorthWestern in the Superior Court for Spokane County, Washington, seeking an order compelling arbitration before one arbitrator and in Washington. Talen Montana removed that case to the United States District Court for the Eastern District of Washington, which subsequently granted Talen Montana's motion to transfer that case to this Court. *See* Case No. 1:21-cv-00090-SPW-TJC (D. Mont.).

G.     Proposed stipulation of facts not included in the statement of stipulated facts and the parties' understanding of what law applies

Talen Montana proposes the following stipulated facts:

1.     There is no current dispute regarding the budget for Colstrip.

2.      No party to the O&O Agreement has complied with, or indicated a willingness or desire to comply with, the requirements in the O&O Agreement for submitting a proposal to the Project Committee for closure of Colstrip, or provided any support for a contention that, under Section 31 of the O&O Agreement, Colstrip at any time "can no longer be made capable of producing electricity consistent with Prudent Utility Practice".

3.      Within SB 265, the Montana Legislature declared a legislative purpose that "electrical generation facilities located in Montana have significant implications for the economy, environment, and health and welfare of Montana consumers" and that "arbitration of disputes concerning Montana electrical generation facilities outside of Montana threatens Montana's laws, policies, and the interests of Montana in securing and maintaining a reliable source of electricity."

4.      Within SB 266, the Montana Legislature declared legislative purposes that "electrical generation facilities located in Montana have significant implications for the economy, environment, and health and welfare of Montana consumers;" "closure of electrical generation facilities without the unanimous consent of all co-owners threatens the reliable supply of electricity for Montanans;" and "failure or refusal to fund operations of Montana electrical generation facilities by facility owners . . . threatens the safety of workers at the

14

facility, threatens Montana's interest in environmental remediation of the facility, and threatens the reliable supply of electricity for Montana consumers."

5.     Montana has at least 30 electricity-generating power stations.

6.     The people of Montana rely on Colstrip for jobs, power, and prosperity.

7.     Colstrip is currently producing electricity consistent with Prudent Utility Practice.

8.     It is too early to know whether Colstrip will be capable of producing electricity consistent with Prudent Utility Practice after 2025.

9.     On March 22, 2021, the Colstrip Project Committee unanimously approved Talen Montana's proposed 2021 Colstrip budget, which included operating and maintenance costs as well as capital costs.

10.     The PNOs hired an outside consultant, KPMG, to assist them with their review of Talen Montana's 2022 budget proposal. KPMG submitted a report to the PNOs regarding that budget proposal, and the PNOs asked Talen Montana to review and incorporate KPMG's recommendations.

11.     On January 20, 2022, the Colstrip Project Committee approved Talen Montana's proposed 2022 Colstrip budget, which included operating and maintenance costs as well as capital costs.

12.    No Colstrip co-owner has ever made a proposal to the Colstrip Project Committee seeking to permanently retire either Colstrip Unit 3 or Unit 4.

13.    The PNOs may sell their interests in Colstrip.

Montana law and federal law apply to the claims in this case.

H.    <u>Proposed deadlines relating to joinder of parties or amendment of pleadings</u>

Talen Montana does not anticipate joining any parties to this case. Talen Montana proposes the deadline for amending pleadings to be sixty days before the close of fact discovery.

I.    <u>Identification of controlling issues of law suitable for pretrial disposition</u>

Each of the PNOs' claims may be subject to dismissal on a motion for summary judgment.

J.    <u>The name and city and state of current residence of each individual known or believed to have information that may be used in proving or denying any party's claims or defenses, and a summary of that information. If known, the address and telephone number of the individual must be provided to all counsel on request</u>

| Name | Contact Information | Subject of Information |
|---|---|---|
| Shannon Brown | Contact through counsel:<br>Barry Barnett<br>bbarnett@susmangodfrey.com<br>Susman Godfrey L.L.P.<br>1000 Louisiana Street, Suite 5100<br>Houston, Texas 77002<br>Tel: (713) 651-9366 | Colstrip's ability to produce electricity consistent with prudent utility practice, now and in the future; The budgeting process for Colstrip and the budget. |
| Neil Dennehy | Contact through counsel:<br>Barry Barnett<br>bbarnett@susmangodfrey.com<br>Susman Godfrey L.L.P. | Colstrip's ability to produce electricity consistent with prudent utility practice, now and in |

|  | 1000 Louisiana Street, Suite 5100 Houston, Texas 77002 Tel: (713) 651-9366 | the future; The Colstrip budget. |
|---|---|---|
| Tony Diemel | Contact through counsel: Barry Barnett bbarnett@susmangodfrey.com Susman Godfrey L.L.P. 1000 Louisiana Street, Suite 5100 Houston, Texas 77002 Tel: (713) 651-9366 | The budgeting process for Colstrip and the budget. |
| Dale Lebsack | Contact through counsel: Barry Barnett bbarnett@susmangodfrey.com Susman Godfrey L.L.P. 1000 Louisiana Street, Suite 5100 Houston, Texas 77002 Tel: (713) 651-9366 | Colstrip's operations, including the Pacific Northwest Owners' desire to close Colstrip in 2025; The consequences of prematurely closing Colstrip for plant employees, the city of Colstrip, and the state of Montana. |
| Eric Wheatley | Contact through counsel: Barry Barnett bbarnett@susmangodfrey.com Susman Godfrey L.L.P. 1000 Louisiana Street, Suite 5100 Houston, Texas 77002 Tel: (713) 651-9366 | The budgeting process for Colstrip and the budget. |

The inclusion of a name on this list is not a statement that the individual necessarily has discoverable information or that the individual has submitted to the jurisdiction of this Court, is subject to a subpoena from a federal district court, is available for deposition, or is available to testify at trial. The list does not include experts or consultants who may be retained for use during this litigation or at trial.

Talen Montana also identifies the following individuals currently employed

by Defendant NorthWestern Corporation and each of the PNOs:

| Name and Party | Subject of Information |
| --- | --- |
| Nancy Atwood, Puget Sound Energy, Inc. | Colstrip's ability to produce electricity consistent with prudent utility practice, now and in the future; The budgeting process for Colstrip and the budget. |
| Mike Barnes, NorthWestern Corporation | Colstrip's ability to produce electricity consistent with prudent utility practice, now and in the future; The budgeting process for Colstrip and the budget. |
| John Cox, PacifiCorp | The Pacific Northwest Owners' allegations that Senate Bill 265 and Senate Bill 266 substantially impair their rights under the O&O Agreement, and that neither statute is a reasonable way to advance a legitimate public purpose. |
| Shawn Davis, Portland General Electric Company | Colstrip's ability to produce electricity consistent with prudent utility practice, now and in the future; The budgeting process for Colstrip and the budget. |
| Thomas Dempsey, Avista Corporation | Colstrip's ability to produce electricity consistent with prudent utility practice, now and in the future; The budgeting process for Colstrip and the budget. |
| Brett Greene, Portland General Electric Company | The Pacific Northwest Owners' desire to close Colstrip in 2025, including any plan to "call a vote to close Colstrip Unit 3 at the May 19, 2021 Committee meeting" ECF No. 105 ¶ 4, as well as their allegation that they will suffer irreparable harm unless the Attorney General is permanently enjoined from enforcing Montana Senate Bill 266; The Pacific Northwest Owners' allegations that Senate Bill 265 and Senate Bill 266 do not advance a legitimate public purpose. |
| John Hines, NorthWestern Corporation | The Pacific Northwest Owners' desire to |

| | |
|---|---|
| | close Colstrip in 2025, including the Pacific Northwest Owners' allegation that they will suffer irreparable harm unless the Attorney General is permanently enjoined from enforcing Montana Senate Bill 266; The Pacific Northwest Owners' allegations that Senate Bill 265 and Senate Bill 266 do not advance a legitimate public purpose. |
| David Hoffman, NorthWestern Corporation | The Pacific Northwest Owners' allegations that Senate Bill 265 and Senate Bill 266 substantially impair their rights under the O&O Agreement, and that neither statute is a reasonable way to advance a legitimate public purpose. |
| Mike Johanson, PacifiCorp | Colstrip's ability to produce electricity consistent with prudent utility practice, now and in the future; The budgeting process for Colstrip and the budget. |
| Janet Kelly, Puget Sound Energy, Inc. | The Pacific Northwest Owners' allegations that Senate Bill 265 and Senate Bill 266 substantially impair their rights under the O&O Agreement, and that neither statute is a reasonable way to advance a legitimate public purpose. |
| Sania Radcliffe, Portland General Electric Company | The Pacific Northwest Owners' allegations that Senate Bill 265 and Senate Bill 266 substantially impair their rights under the O&O Agreement, and that neither statute is a reasonable way to advance a legitimate public purpose. |
| Dana Ralston, PacifiCorp | The Pacific Northwest Owners' desire to close Colstrip in 2025, including the Pacific Northwest Owners' allegation that they will suffer irreparable harm unless the Attorney General is permanently enjoined from enforcing Montana Senate Bill 266; The Pacific Northwest Owners' allegations that Senate Bill 265 and Senate Bill 266 do not advance a legitimate public purpose. |

| | |
|---|---|
| Ronald Roberts, Puget Sound Energy, Inc. | The Pacific Northwest Owners' desire to close Colstrip in 2025, including their alleged "plan[] to call a vote to close Colstrip Unit 3 at the Committee meeting on May 19, 2021" Roberts Declaration ¶ 42, ECF No. 39-2, as well as their allegation that they will suffer irreparable harm unless the Attorney General is permanently enjoined from enforcing Montana Senate Bill 266; The Pacific Northwest Owners' allegations that Senate Bill 265 and Senate Bill 266 do not advance a legitimate public purpose. |
| Collins Sprague, Avista Corporation | The Pacific Northwest Owners' allegations that Senate Bill 265 and Senate Bill 266 substantially impair their rights under the O&O Agreement, and that neither statute is a reasonable way to advance a legitimate public purpose. |
| Jason Thackston, Avista Corporation | The Pacific Northwest Owners' desire to close Colstrip in 2025, including the Pacific Northwest Owners' allegation that they will suffer irreparable harm unless the Attorney General is permanently enjoined from enforcing Montana Senate Bill 266; The Pacific Northwest Owners' allegations that Senate Bill 265 and Senate Bill 266 do not advance a legitimate public purpose. |
| Craig Udy, Portland General Electric Company | Colstrip's ability to produce electricity consistent with prudent utility practice, now and in the future; The budgeting process for Colstrip and the budget. |
| Steve Wenke, Avista Corporation | Colstrip's ability to produce electricity consistent with prudent utility practice, now and in the future; The budgeting process for Colstrip and the budget. |

Talen Montana reserves its right to seek and use discoverable information from individuals and entities identified in disclosures and filings made by any other party in this action.

K.    <u>Substance of any insurance agreement that may cover any resulting judgment</u>

Not applicable.

L.    <u>Status of any settlement discussions and prospects for compromise of the case</u>

On June 25, 2021, Talen Montana proposed an arbitration protocol and agreement that might obviate the need to litigate the validity of SB 265 and SB 266. None of the co-owners responded to that proposal. The proposal is attached as Exhibit A.

M.    <u>Suitability of special procedures</u>

No special procedure is necessary at this time.


                                                Respectfully submitted,


Dated: February 8, 2022                         /s/ Robert L. Sterup
                                                Robert L. Sterup
                                                Brown Law Firm, PC
                                                315 North 24th Street
                                                Billings, Montana 59101
                                                Telephone: (406) 248-2611
                                                Facsimile: (406) 248-3128
                                                rsterup@brownfirm.com

Barry Barnett (*pro hac vice*
Adam Carlis (*pro hac vice*)
Susman Godfrey L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
bbarnett@susmangodfrey.com
acarlis@susmangodfrey.com

Alexander P. Frawley (*pro hac vice*)
Susman Godfrey L.L.P.
1301 Avenue of the Americas,
32 Fl New York, New York
10019-6023
Tel.: (212) 336-8330
Fax: (212) 336-8340
afrawley@susmangodfrey.com

Attorneys for Defendant Talen
Montana, LLC

22