Charles E. Hansberry
Jenny M. Jourdonnais
HANSBERRY & JOURDONNAIS, PLLC
2315 McDonald Avenue, Suite 210
Missoula, MT 59801
chuck@hjbusinesslaw.com
jenny@hjbusinesslaw.com
Phone:  406-203-1730
Fax:  406-205-3170

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **PORTLAND GENERAL ELECTRIC COMPANY, AVISTA CORPORATION, PACIFICORP**, and **PUGET SOUND ENERGY, INC**., <br><br> Plaintiffs, <br><br> v. <br><br> **NORTHWESTERN CORPORATION; TALEN MONTANA, LLC; AUSTIN KNUDSEN**, in his official capacity as Attorney General for the State of Montana, <br><br> Defendants. | Case No. 1:21-cv-00047-BLG-SPW-KLD <br><br> **PACIFIC NORTHWEST OWNERS' JOINT PRELIMINARY PRETRIAL STATEMENT** <br><br> **FILED UNDER LOCAL RULE 16.2(b)(3)** |

Plaintiffs Avista Corporation ("Avista"), PacifiCorp, Portland General Electric Company ("PGE"), and Puget Sound Energy, Inc. ("PSE") (collectively, the "PNW Owners") jointly submit their preliminary pretrial statement as required by Federal Rule of Civil Procedure 26(a)(1) and Local Rule 16.2(b)(1).  A preliminary pretrial conference is scheduled for February 15, 2022.

**Page 1 -  PACIFIC NORTHWEST OWNERS' JOINT PRELIMINARY PRETRIAL STATEMENT**

## I.      BRIEF FACTUAL OUTLINE

The PNW Owners, together with Defendants Talen Montana, LLC ("Talen")

and NorthWestern Corporation ("NorthWestern"), jointly own two coal-fired

steam electric generation units in Colstrip, Montana (collectively known as

"Colstrip").  Those six parties' rights and obligations regarding Colstrip are

governed by the 1981 Ownership and Operation Agreement ("O&O Agreement"),

as amended four times.

The PNW Owners face legislative mandates to eliminate coal-fired resources

from their allocation of electricity for their customers in Washington and Oregon.

Talen and NorthWestern want to keep both Colstrip units open for the indefinite

future.  Talen and NorthWestern believe that one or both units of Colstrip can be

closed only with the unanimous consent of every owner.  The PNW Owners

disagree.  Certain voting provisions in the O&O Agreement that require less-than-

unanimous consent—55% of the Project Shares—apply to proposals to close one

or both units.

On March 12, 2021, NorthWestern sent to the other Colstrip owners an

arbitration demand, which NorthWestern amended on April 2, 2021 ("amended

demand").  The amended demand seeks declaratory relief as to the owners' rights

and obligations under the O&O Agreement.  NorthWestern's amended demand

raises several issues, including whether the owners must unanimously consent to

**Page 2 -  PACIFIC NORTHWEST OWNERS' JOINT PRELIMINARY
                     PRETRIAL STATEMENT**

close one or both units and what the owners' funding obligations are for Colstrip. Each of the PNW Owners served responses to NorthWestern's amended demand, as well as their own demands for arbitration.

The issues raised by NorthWestern's amended demand, and the responses to that amended demand, arise out of or relate to the O&O Agreement and are, therefore, subject to arbitration under Section 18 of the O&O Agreement, which provides in relevant part,

> Any controversies arising out of or relating to this Agreement which cannot be resolved through negotiations among the Project Users within thirty (30) days after inception of the matter in dispute shall, upon demand of any Project User involved in the controversy, be submitted to an Arbitrator having demonstrated expertise in the matter submitted. If the Project Users cannot mutually agree upon such Arbitrator, then upon petition of any Project User, such Arbitrator shall be appointed by the Superior Court of the State of Washington, in and for the County of Spokane. The arbitration shall be conducted in Spokane, Washington, pursuant to the Washington Arbitration Act, RCW Chapter 7.04 as the same may be amended from time to time . . . .

NorthWestern initiated arbitration, however, the arbitration process has stalled.

At the same time that the Colstrip owners were beginning the arbitration process, Talen and NorthWestern supported two bills in the 2021 Montana Legislature: Senate Bill 265 and Senate Bill 266, that directly impacted, and have substantially delayed the arbitration process.

Senate Bill 265 directly targets Section 18 of the O&O Agreement and purports to invalidate the owners' agreement that any arbitration arising out of

**Page 3 -  PACIFIC NORTHWEST OWNERS' JOINT PRELIMINARY PRETRIAL STATEMENT**

controversy relating to the O&O Agreement (1) shall take place in Spokane, Washington, (2) before a single arbitrator, and (3) subject to the Washington Arbitration Act.  The bill also purports to abrogate the parties' agreement that if the parties are unable to agree on an arbitrator, the Washington State Superior Court for Spokane County will appoint a single arbitrator.  The bill adds the following language to Section 27-5-323 of the Montana Code:

> (2)(a) An agreement concerning venue involving an electrical generation facility in this state is not valid unless the agreement requires that arbitration occur within the state before a panel of three arbitrators selected under the [Montana] Uniform Arbitration Act unless all parties agree in writing to a single arbitrator.
>
> (b) For the purposes of this subsection, "electrical generation facility" has the meaning provided in 15-24-3001.
>
> . . . .
>
> [This act] applies retroactively, within the meaning of 1-2-109, to applications made on or after January 1, 2021.

(S.B. 265 § 1, 67th Leg., Reg. Sess. (Mont. 2021).)  The bill was passed by Montana's legislature on April 23, 2021, and was signed into law by Montana's Governor on May 3, 2021.

Senate Bill 266 strips the PNW Owners of other rights in the O&O Agreement.  Under Senate Bill 266, an owner violates the Montana Unfair Trade Practices and Consumer Protection Act of 1973 if the owner (1) fails or refuses to fund its share of Colstrip operating costs or (2) engages in any "conduct" to bring

about closure of Colstrip without unanimous consent of all owners.  Senate Bill

266 invalidates the owners' agreement by codifying the following:

> (1)(a) The failure or refusal of an owner of a jointly owned electrical
> generation facility in the state to fund its share of operating costs
> associated with a jointly owned electrical generation facility is an
> unfair or deceptive act or practice in the conduct of trade or commerce
> in accordance with 30-14-103.

> (b) Conduct by one or more owners of a jointly owned electrical
> generation facility in the state to bring about permanent closure of a
> generating unit of a facility without seeking and obtaining the consent
> of all co-owners of a generating unit is an unfair or deceptive act or
> practice in the conduct of trade or commerce in accordance with 30-
> 14-103.

> . . . .

> (2)(b) In an action brought under this section, if the court finds that a
> person is willfully using or has willfully used a method, act, or
> practice declared unlawful by this section, the department may, on
> petition to the court, recover on behalf of the state a civil fine of not
> more than $100,000 for each violation. Each day of a continuing
> violation constitutes a separate offense.

> . . . .

> [This act] applies retroactively, within the meaning of 1-2-109, to
> applications made on or after January 1, 2021.

(S.B. 266 §§ 2, 5, 67th Leg., Reg. Sess. (Mont. 2021).)  The bill was passed by

Montana's legislature on April 23, 2021, and it was signed into law by Montana's

Governor on May 3, 2021.

 As Senate Bills 265 and 266 were making their way through Montana's

legislature, Talen demanded that the owners arbitrate their dispute according to the

procedures in Senate Bill 265.  For example, on March 29, April 3, May 12, and May 26, Talen proposed that (1) the arbitration be heard by a panel of three arbitrators, (2) Montana courts have exclusive jurisdiction over any lawsuits related to the arbitration, and (3) the Washington Uniform Arbitration Act would not apply (and, by implication, that the Montana Uniform Arbitration Act would apply).  Each of those proposals contradicted the terms of the O&O Agreement.

The PNW Owners sought to protect their rights under the O&O Agreement by filing two actions.  The first is a petition to compel arbitration according to the O&O Agreement's terms, which the PNW Owners filed on April 14, 2021, in the Superior Court for Spokane County, Washington.  Talen removed that action to the United States District Court for the Eastern District of Washington (*Avista Corp. v. NorthWestern Corp.*, No. 2:21-cv-00163) and transferred it to the District of Montana, Billings Division (*Avista Corp. v. NorthWestern Corp.*, No. 1:21-cv-00090-SPW-TJC) where it is currently pending.  The PNW Owners' second action is the instant action.

The PNW Owners filed this action on May 4, 2021.  (Doc. 1.)  In the First Amended Complaint, filed May 19, 2021, the PNW Owners seek: (1) an injunction prohibiting Attorney General Austin Knudsen ("AG Knudsen") from enforcing Senate Bill 266 against them; (2) a declaration that Senate Bill 266 as applied to the O&O Agreement violates the Commerce, Contract, and Due Process Clauses of

the United States Constitution; (3) a declaration that Senate Bill 265 as applied to the O&O Agreement is unconstitutional under the Contract Clauses of the United States and Montana Constitutions; and (4) a declaration that Senate Bill 265 as applied to the O&O Agreement is preempted under the Federal Arbitration Act. (Doc. 32.)

On May 27, 2021, and before defendants filed answers in this action, the PNW Owners filed a motion for preliminary injunction prohibiting AG Knudsen from enforcing Senate Bill 266 against them concerning Colstrip. (Doc. 37.) AG Knudsen filed a notice of no position on that motion. (Doc. 57.) Talen opposed the motion. (Doc. 60.) In response to the preliminary injunction motion, NorthWestern asked the Court to require the Colstrip owners to move forward promptly with arbitration proceedings. (Doc. 61.)

The Court granted the PNW Owners' request for a preliminary injunction on October 13, 2021. (Doc. 100.) In doing so, the Court concluded that Senate Bill 266 likely violates the Contract Clause of the United States Constitution because the bill substantially impairs the O&O Agreement without reasonably advancing a legitimate public purpose. (*Id*. at 7-9.) The Court also determined that Senate Bill 266 likely violates the Commerce Clause because the uncontroverted evidence showed that Montana likely intentionally discriminated against out-of-state interests when enacting the bill. (*Id*. at 9-10.) The Court agreed with the PNW

Page 7 -  **PACIFIC NORTHWEST OWNERS' JOINT PRELIMINARY**
        **PRETRIAL STATEMENT**

Owners that they had demonstrated a "robust showing of irreparable harm" posed by Senate Bill 266, and the balance of equities and the public interest supported issuing an injunction.  (*Id*. at 13.)

The PNW Owners filed a motion for partial summary judgment on their first, second, and third claims on August 17, 2021.  (Doc. 88.)  Those claims challenge Senate Bill 265 as unconstitutional under the Contract Clauses of the United States and Montana Constitutions and as preempted by the Federal Arbitration Act.  (*Id*.)  Talen opposed the motion.  (Doc. 93.)  Rather than take a position on the motion, NorthWestern asked the Court to compel arbitration and appoint a magistrate judge or special master to oversee the negotiations of the arbitration process.  (Doc. 95.)  The motion for partial summary judgment challenging Senate Bill 265 is fully briefed and pending.

After the Court issued the preliminary injunction restraining AG Knudsen from enforcing Senate Bill 266, the PNW Owners filed a second motion for partial summary judgment on October 29, 2021, this time on their fourth and fifth claims.  (Doc. 102.)  The claims addressed the unconstitutionality of Senate Bill 266 under the Contract Clause (fourth claim) and Commerce Clause (fifth claim) of the United States Constitution and seek a permanent injunction prohibiting AG Knudsen from enforcing the bill against the PNW Owners.  (*Id*.)  Talen opposed the motion.  (Doc. 129.)  NorthWestern took no position on the motion, instead

asking the Court to abstain from resolving any issues regarding an interpretation of the O&O Agreement (and requesting an order compelling arbitration).  (Doc. 124.) AG Knudsen did not respond to the motion.  The motion for partial summary judgment challenging Senate Bill 266 is fully briefed and pending.

On November 10, 2021, AG Knudsen issued his first set of discovery requests to the PNW Owners containing requests for production, interrogatories, and requests for admission.  The PNW Owners have served responses and objections to those discovery requests.  Production of documents is ongoing.

AG Knudsen filed a motion to stay on November 19, 2021.  (Doc. 116.)  In the motion, AG Knudsen asked the Court to stay this action pending the outcome of the arbitration regarding the O&O Agreement, or in the alternative to either (1) issue a six-month extension to respond to the pending motion for summary judgment to allow for additional discovery efforts or (2) to stay this case pending the outcome of the motion to remand in the case removed from Montana state court (1:21-cv-00058-SPW-TJC) and the related motion to consolidate the removed case with the present case.  (*Id*.)  Talen partially joined AG Knudsen's motion to the extent it requested time to conduct discovery.  (Doc. 129.)  The PNW Owners opposed the motion.  (Doc. 127.)  NorthWestern opposed the motion and, again, asked the Court to compel arbitration.  (Doc. 126.)  The motion to stay is fully briefed and pending.

**Page 9 -  PACIFIC NORTHWEST OWNERS' JOINT PRELIMINARY PRETRIAL STATEMENT**

On December 3, 2021, NorthWestern filed a motion asking the Court to compel arbitration of the parties' dispute regarding the O&O Agreement and to appoint a magistrate judge to oversee the negotiations of the arbitration process. (Doc. 120.)  Talen, Avista, PGE, and PacifiCorp opposed the motion.  (Docs. 141 & 142.)  PSE joined the motion but asked the Court to first rule on the PNW Owners' pending motion for partial summary judgment on their first, second, and third claims.  (Doc. 144.)  The motion to compel arbitration is fully briefed and pending.

The parties each served their FRCP 26(a)(1) initial disclosures on or before December 27, 2021.

In a separate but related action, on May 4, 2021, after the PNW Owners filed the instant action, Talen filed its own action in Montana state court, seeking a declaration that the provisions of the O&O Agreement are invalid to the extent they require arbitration in a manner inconsistent with Senate Bill 265.  Talen also sought an order compelling the parties to arbitrate in accordance with Senate Bill 265.  The PNW Owners removed that action to the United States District Court for the District of Montana (*Talen Montana, LLC v. Avista Corp.*, No. 1:21-cv-00058-SPW-TJC).  Talen filed a motion to remand back to Montana state court; the PNW Owners moved to consolidate the case with the instant action (*Portland General Electric Co., et al. v. NorthWestern Corp., et al.*, 1:21-cv-00047-SPW-KLD).  The

Court stayed the motion to consolidate pending the outcome of the motion to remand. (Doc. 101.) On December 1, 2021, Magistrate Judge Timothy Cavan issued Findings and Recommendations on Talen's motion to remand, recommending the Court grant the motion. All defendants filed objections to the magistrate judge's findings and recommendations. On January 12, 2022, Talen filed its response to the objections.

## II.    BASIS FOR JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1332 (diversity), and 1367(a) (supplemental). First, the Court has original jurisdiction because this case includes claims brought under the United States Constitution, namely, claims under the Contracts, Commerce, and Due Process Clauses. (First Am. Compl. ("FAC") ¶¶ 84-96, 115-57 (Doc. 32).)

Next, the Court has diversity jurisdiction over this action because the monetary value of the declaration the PNW Owners seek exceeds $75,000 in that the total annual budget under the O&O Agreement is in excess of $1,000,000. Each plaintiff has more than $75,000 at issue for its share of each budget. (*See id.* ¶ 49 (explaining why the amount-in-controversy requirement is met).) In addition, there is complete diversity between Talen, Northwestern, and AG Knudsen on the one hand, and the PNW Owners on the other. (*See id.* ¶¶ 18-24 (explaining the parties' citizenship).)

**Page 11 -  PACIFIC NORTHWEST OWNERS' JOINT PRELIMINARY
          PRETRIAL STATEMENT**

Finally, the Court has jurisdiction over the claim brought under the Contract Clause of the Montana Constitution because it is so related to the Contract Clause claim under the United States Constitution—over which the Court has original jurisdiction—that they form part of the same case or controversy.  The two Contract Clause claims (claims 1 and 2) each relate to the substantial impairment Senate Bill 265 poses to the arbitration clause in the O&O Agreement.  (*See id.* ¶¶ 84-104 (describing federal and state Contract Clause claims).)

The proper venue for this action is in the United States District Court for the District of Montana.  The challenged legislation was passed by the Montana legislature and targets Colstrip, which is located within the district.  28 U.S.C. § 1391(b)(2); (FAC ¶¶ 56-70, 77-83).

## III.   FACTUAL BASIS AND LEGAL THEORY FOR EACH CLAIM

The PNW Owners raise the following six claims.

**A.    Claims 1 and 2: Declaratory relief that Senate Bill 265 is unconstitutional as applied to the O&O Agreement under the Contract Clauses of the United States and Montana constitutions.**

**Claim 5: Declaratory and injunctive relief under 23 U.S.C. § 1983 that Senate Bill 266 violates the Contract Clause of the United States Constitution.**

The amendments to Montana Code Section 27-5-323 by Senate Bill 265 and to Montana Code Section 30-14-2702 (amending Montana Unfair Trade Practices

and Consumer Protection Act of 1973) by Senate Bill 266 run afoul of the Contract

Clauses in the United States and Montana Constitutions.

Under the United States and Montana State Contract Clauses, a law that

substantially impairs a person's contractual rights is constitutional only if it

advances a significant and legitimate public purpose. *See Sveen v. Melin*, 138 S.

Ct. 1815, 1821 (2018); *Carmichael v. Workers' Comp. Ct. of Mont.*, 763 P.2d

1122, 1124 (Mont. 1988).

Senate Bill 265's amendments to Montana Code Section 27-5-323

substantially impair the PNW Owners' right to have a single arbitrator hear their

dispute in Spokane under the Washington Arbitration Act. *See, e.g.*, *Angostura

Int'l Ltd. v. Melemed*, 25 F. Supp. 2d 1008, 1011 (D. Minn. 1998) ("[P]rior to the

[Minnesota Sales Representative Act ("MSRA")], [plaintiff] could select any

forum it wished in which to resolve disputes with [defendant].  To the extent the

MSRA deprives [plaintiff] of these rights, it is a substantial impairment.").

Likewise, Senate Bill 266's amendments to Montana's Unfair Trade Practices Act

substantially impairs the PNW Owners' contractual rights by imposing up to a

$100,000 per-day fine on any "conduct" that could bring about closure of Colstrip

without unanimous consent.  Because of Senate Bill 266, the PNW Owners

cannot—easily or otherwise—(1) exercise their contract right to advocate in

arbitration that the O&O Agreement does not require unanimous consent to close,

**Page 13 -  PACIFIC NORTHWEST OWNERS' JOINT PRELIMINARY
         PRETRIAL STATEMENT**

(2) propose closure of Colstrip and vote in favor of closing, or (3) close Colstrip without unanimous consent.  Senate Bill 266's amendments also impair the PNW Owners' contract rights regarding funding of Colstrip, including the right to vote "no" on an annual Colstrip budget or on certain repairs to damage to Colstrip, once again, making them subject to up to $100,000 per-day in fines.  Each of those restrictions substantially impair the PNW Owners' pre-existing contract rights.

Both Senate Bill 265 and Senate Bill 266, with their "extremely narrow focus" on the "purely private rights" of a very limited number of companies, fail to advance any public purpose.  *See Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 248-49 (1978) (holding law's "extremely narrow focus" proved it was not enacted to "protect a broad societal interest"); *Treigle v. Acme Homestead Ass'n*, 297 U.S. 189, 197 (1936) (holding law was invalid where it altered the "purely private" withdrawal rights of members of a building and loan association).  The amendments therefore constitute the precise type of "special purpose legislation" that the Contract Clauses of the United States and Montana Constitutions prohibit. *See, e.g., Ass'n of Equip. Mfrs. v. Burgum*, 932 F.3d 727, 733(8th Cir. 2019) ("The law primarily benefits a particular economic actor in the farm economy—farm equipment dealers.  Even if the law indirectly might benefit farmers and rural communities, the Contract Clause demands more than incidental public benefits."); *Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842, 861 (8th Cir. 2002) ("It is clear that

**Page 14 -  PACIFIC NORTHWEST OWNERS' JOINT PRELIMINARY PRETRIAL STATEMENT**

the only real beneficiaries under the Act are the narrow class of dealers of agricultural machinery. . . . [S]uch special interest legislation runs afoul of the Contract Clause when it impairs pre-existing contracts.").

In its order granting the PNW Owners' motion for preliminary injunction, this Court acknowledged the unconstitutional character of Senate Bill 266's amendments to Montana's Unfair Trade Practices Act.  There, the Court concluded that the PNW Owners are likely to demonstrate that Senate Bill 266 substantially impairs the PNW Owners' contractual rights under the O&O Agreement without advancing a corresponding significant and legitimate public purpose.  (Doc. 100 at 9.)

### B.     Claim 3: Declaratory relief that Senate Bill 265 is preempted as applied to the O&O Agreement by the Federal Arbitration Act.

The amendments to Montana Code Section 27-5-323 by Senate Bill 265 are pre-empted by the Federal Arbitration Act ("FAA").  9 U.S.C. §§ 1–16.  "[A] state-law rule is preempted if it is not a 'generally applicable contract defense[,]'" and "a generally applicable rule may be preempted if it 'stand[s] as an obstacle to the accomplishment of the FAA's objectives.'"  *Blair v. Rent-A-Car Center, Inc.*, 928 F.3d 819, 825 (9th Cir. 2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 341 (2011)).  Here, the amendments "single out arbitration agreements" by imposing procedural rules that apply only to arbitration and by invalidating venue provisions only if they are part of an arbitration agreement.

*Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432 (9th Cir. 2015)

(explaining that arbitration agreements may be invalidated only by "generally

applicable contract defense[s]").  In addition, the amendments "stand[] as an

obstacle to the accomplishment of the FAA's objectives" because they undermine

the FAA's "principal purpose": "ensur[ing] that private arbitration agreements are

enforced *according to their terms*."  *Concepcion*, 563 U.S. at 343-44 (quoting *Volt*

*Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478

(1989)) (emphasis added).  Thus, the amendments fail both tests for preemption

under the FAA.

> **C.**     **Claim 4: Declaratory and injunctive relief under 23 U.S.C.**
> **Section 1983 that Senate Bill 266 violates the Commerce Clause.**

The amendments to Montana's Unfair Trade Practices Act by Senate Bill

266 are unconstitutional under the Commerce Clause of the United States

Constitution.  The dormant Commerce Clause prohibits economic protectionism

through "regulatory measures designed to benefit in-state economic interests by

burdening out-of-state competitors."  *Wyoming v. Oklahoma*, 502 U.S. 437, 454

(1992) (citation omitted).  That prohibition applies to cross-border investments,

like the Colstrip plant.  *See Edgar v. MITE Corp.*, 457 U.S. 624, 642-44 (1982)

(holding unconstitutional state law regulating out-of-state purchases of in-state

companies).  In particular, using fines to keep employment and business in

Montana to the detriment of out-of-state industry—as Senate Bill 266 does here—

is impermissible under the Commerce Clause.  *Toomer v. Witsell*, 334 U.S. 385, 403 (1948) (invalidating laws that use the threat of fines "to divert to [one state] employment and business which might otherwise go to" another state).

In passing Senate Bill 266's amendments to Montana's Unfair Trade Practices Act, the Montana legislature intended to discriminate against the PNW Owners' out-of-state interests in favor of Montana interests (*e.g.*, retention of Montana jobs).  (Doc. 103 at 5-6) (sponsoring senator stating "I think we have every right to . . . use any means necessary here at the legislature to make sure our interests aren't trampled by the environmental views in the states of Washington and Oregon."); *see also Westinghouse Elec. Corp. v. Tully*, 466 U.S. 388, 406 (concluding that a law is discriminatory under the Commerce Clause if it intends "to prevent the loss of economic activity already in the State" by "prevent[ing] current business from being diverted elsewhere").  In addition, the amendments have the practical effect intended—they impose a chilling $100,000 daily fine if the PNW Owners attempt to close Colstrip.  *See Nat'l Meat Ass'n v. Deukmejian*, 743 F.2d 656, 659 (9th Cir. 1984) (observing that economic protectionism can occur through either discriminatory purpose or effect).

In its order granting the PNW Owners' motion for preliminary injunction, this Court concluded that the purpose of Senate Bill 266 is "to protect Colstrip Units 3 and 4 from 'out-of-state corporations' and 'woke, overzealous regulators in

Washington State[.]'"  (Doc. 100 at 4.)  The Governor's signing statement and the transcript of Senate Bill 266's hearings, according to this Court, demonstrates Montana enacted a bill with a discriminatory intent that is likely unconstitutional under the Commerce Clause.  (*Id*.)

> **D.      Claim 6: Declaratory and injunctive relief under 23 U.S.C. Section 1983 that Senate Bill 266 violates the Due Process Clause of the United States Constitution.**

The amendments to Montana's Unfair Trade Practices Act by Senate Bill 266 are void for vagueness under the Due Process Clause of the United States Constitution.  Under the Due Process Clause, a law is void for reasons of vagueness where the law (1) fails to give fair notice of what is prohibited or (2) "is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *FCC v. Fox Television Stations*, 567 U.S. 239, 253 (2012) (quotation marks and citations omitted).

First, Senate Bill 266 is written in such a way that the PNW Owners have to guess at its meaning—the bill proscribes any "conduct" to "bring about" the "closure of a generating unit of a facility without . . . the consent of all owners." (Senate Bill 266 § 2(1)(b).)  That could include conduct ranging from conduct that "actually" brings about closure to conduct that "might" bring about closure.  It could, for example, include advocating in an arbitration to permit closure of Colstrip by less than unanimous consent of the owners.  Or, it could require an

actual vote to close Colstrip.  It is unclear which of those actions would trigger the amendments and the related $100,000 per-day fines.  *See Forbes v. Napolitano*, 236 F.3d 1009, 1013 (9th Cir. 2000) (disapproving of enactments that fail to "provide any clues about how the statute [will] be applied").  In other words, Senate Bill 266 lacks real guidelines—much less fair notice—regarding what is prohibited.  Second, that same lack of specificity renders Senate Bill 266 standardless.  There is no clear line or "guidance as to where the state should draw the line" on enforcement, which could, and likely will, lead to discriminatory enforcement to the PNW Owners' detriment.  *Id*.  Thus, Senate Bill 266 fails both void-for-vagueness tests under the Due Process Clause of the United States Constitution.

In its order on the PNW Owners' motion for preliminary injunction, this Court concluded that although SB 266 is "broad and relatively indefinite about what conduct is specifically prohibited," the PNW Owners failed to provide sufficient analysis on this point to allow the Court to conclude that they had met their high burden on a preliminary injunction.  The Court suggested that these arguments could be suitable for development at a later stage in the action.  (Doc. 100 at 11.)

## IV.  COMPUTATION OF DAMAGES

The PNW Owners do not assert a claim for damages.

**Page 19 -  PACIFIC NORTHWEST OWNERS' JOINT PRELIMINARY
          PRETRIAL STATEMENT**

## V.   PENDING RELATED LITIGATION

There are two pending cases and one arbitration that are related to this action, as discussed above.

A.   *Avista Corp., et al. v. NorthWestern Corporation, et al.*, No. 2:21-cv-00163 (E.D. Wash.), which has been transferred to the District of Montana, Billings Division (*Avista Corp. v. NorthWestern Corp.*, No. 1:21-cv-00090-SPW-TJC) where it remains pending.

B.   *Talen Montana, LLC v. Avista Corp. et al.*, No. 1:21-cv-00058-SPW-TJC (D. Mont.).  Currently pending before the Court are the PNW Owners' and NorthWestern's objections to Magistrate Judge Timothy Cavan's findings and recommendations on Talen's motion to remand to Montana's Thirteenth Judicial District Court, Yellowstone County (Cause No. DV-21-0511).

C.   Under the arbitration clause (Section 18) in the O&O Agreement, any controversy arising out of or related to the O&O Agreement that cannot be resolved within 30 days must be submitted to a single arbitrator to be mutually selected by the parties or appointed by the Spokane County Superior Court in Washington.  The arbitration clause requires any arbitration to be conducted in Spokane, Washington, subject to the Washington Arbitration Act.

Pursuant to Section 18 of the O&O Agreement, NorthWestern notified the PNW Owners and Talen in early 2021 that it intended to initiate arbitration on the

question of "what vote is required to close Units 3 and 4 and what is the obligation of each owner to fund operations of the plant[.]"  NorthWestern subsequently filed an arbitration demand and an amended arbitration demand.  In turn, PacifiCorp, PSE, PGE, and Avista each served their responses to NorthWestern's amended arbitration demand and their own arbitration demands.  Talen also submitted a response to NorthWestern's amended arbitration demand.

The parties to the arbitration exchanged proposals on various aspects of arbitration, including the number of arbitrators, the arbitrator selection process, the venue, and potential arbitration procedures.  Because the parties have been unable to agree on those issues, arbitration has stalled.  Talen relies on Senate Bill 265 to try to contravene the arbitration provision in the O&O Agreement, while also contending that the disputes in the various arbitration demands are not ripe.  On August 17, 2021, the PNW Owners filed a motion for summary judgment in this action, seeking to resolve Talen's allegations regarding the effect of Senate Bill 265 on their arbitration.  (Doc. 88.)  It is unlikely the parties will progress in their arbitration efforts while that motion remains unresolved.

## VI.  ADDITIONAL PROPOSED STIPULATIONS OF FACT AND APPLICABLE LAW

### A.  Proposed Additional Stipulations of Fact.

1.  Talen is the Operator of the Colstrip Steam Electric Station.

2.    Colstrip comprises two coal-fired electric generating units (Units 3 and 4)

       located in Colstrip, Montana.  Colstrip is governed by the O&O Agreement.

3.    Units 3 and 4 are operated by Talen and owned by PSE, Avista, PGE,

       PacifiCorp, NorthWestern, and Talen with the following ownership

       interests:

| Owner | Unit 3 | Unit 4 |
|-------|--------|--------|
| PSE | 25% | 25% |
| PGE | 20% | 20% |
| Avista | 15% | 15% |
| PacifiCorp | 10% | 10% |
| Talen | 30% | n/a |
| NorthWestern | n/a | 30% |

4.    The six companies are parties to the O&O Agreement.

5.    The O&O Agreement includes the following arbitration clause:

> Any controversies arising out of or relating to this
> Agreement which cannot be resolved through
> negotiations among the Project Users within thirty (30)
> days after inception of the matter in dispute shall, upon
> demand of any Project User involved in the controversy,
> be submitted to an Arbitrator having demonstrated
> expertise in the matter submitted. If the Project Users
> cannot mutually agree upon such Arbitrator, then upon
> petition of any Project User, such Arbitrator shall be
> appointed by the Superior Court of the State of
> Washington, in and for the County of Spokane. The
> arbitration shall be conducted in Spokane, Washington,
> pursuant to the Washington Arbitration Act, RCW
> Chapter 7.04 as the same may be amended from time to

time. The Arbitrator shall render his decision in writing not later than thirty (30) days after the matter has been submitted to him, and such decision shall be conclusive and binding upon the Project Users. The costs incurred by any arbitration proceedings shall be charged to Costs of Construction or Costs of Operation, whichever may be appropriate, provided that each party shall bear its own attorney's fees and costs of witnesses.

6.  On February 9, 2021, NorthWestern provided notice to the other Colstrip owners of its intent to initiate an arbitration to "obtain a definitive answer to the questions of what vote is required to close Units 3 and 4 and what is the obligation of each co-owner to fund operations of the plant[.]"

7.  On March 12, 2021, NorthWestern served an arbitration demand. NorthWestern served an amended arbitration demand on April 2, 2021.

8.  On April 20, 2021, PSE, PGE, and Avista each served a demand for arbitration and responses to NorthWestern's amended demand.  On April 22, 2021, PacifiCorp did the same.  On April 23, 2021, Talen sent a letter to NorthWestern regarding NorthWestern's amended demand.

9.  The arbitration has not begun.  The parties have exchanged proposals regarding the number of arbitrators and the arbitrator-selection process, the venue for arbitration, and the procedures the parties might follow during an arbitration.  The parties have been unable to agree on those details.

10. Montana Senate Bill 265 (2021) amends M.C.A. § 27-5-323 to provide that an "agreement concerning venue involving an electrical generation facility

**Page 23 -  PACIFIC NORTHWEST OWNERS' JOINT PRELIMINARY PRETRIAL STATEMENT**

in this state is not valid unless the agreement requires that arbitration occur within the state before a panel of three arbitrators selected under the Uniform Arbitration Act unless all parties agree in writing to a single arbitrator."

11. Montana Senate Bill 266 (2021) adds Montana Code § 30-14-2702 to the Montana Unfair Trade Practices and Consumer Protection Act of 1973. M.C.A.§ 30-14-2702 adds as unfair or deceptive acts or practices (i) "[t]he failure or refusal of an owner of a jointly owned electrical generation facility in the state to fund its share of operating costs associated with a jointly owned electrical generation fund" and (ii) "[c]onduct by one or more owners of a jointly owned electrical generation facility in the state to bring about permanent closure of a generating unit of a facility without seeking and obtaining the consent of all co-owners of a generating facility."

12. Representatives of Talen and NorthWestern spoke in support of Senate Bill 265 and Senate Bill 266 in committee hearings in the Montana Legislature in 2021.  Representatives of the PNW Owners spoke in opposition to the bills.  Senate Bill 265 and Senate Bill 266 were enacted on May 3, 2021.

### B.     Proposed Stipulations of Law.

Five of the six claims in the PNW Owners' First Amended Complaint concern federal statutory and constitutional law.  One claim, the Second Claim for Relief, arises under Montana constitutional law.  For that claim, Montana substantive law will apply.  For all other claims and for all procedural issues, federal law will apply.

## VII.  PROPOSED DEADLINES FOR JOINING PARTIES OR AMENDING PLEADINGS

The PNW Owners' proposed deadlines for joining parties or amending pleadings is thirty (30) days after the Court issues rulings on the PNW Owners' two pending motions for summary judgment.  The thirty (30) days will begin on the day the Court issues the second of its two rulings.

## VIII.  CONTROLLING ISSUES OF LAW SUITABLE FOR PRETRIAL DISPOSITION

All claims in this case are suitable for pretrial disposition, as they present legal issues without any material facts in dispute.  The PNW Owners filed a motion for preliminary injunction regarding several claims, which the Court has granted.  The PNW Owners have also filed two motions for summary judgment on five of their claims.  Those motions are currently pending before the Court.

## IX.   INDIVIDUALS WITH KNOWLEDGE OF THE FACTS

Consistent with their motions for summary judgment, the PNW Owners contend there are no questions of *material* facts with regard to the claims and defenses in this case and that each motion can be decided without discovery.

Each of the following individuals has knowledge of facts relevant to Colstrip, the O&O Agreement, the Colstrip Project Committee, the Colstrip owners' pending arbitration, the Colstrip owners' ongoing budget dispute, or the committee hearings for Senate Bill 265 and Senate Bill 266:

PSE:  *Ronald Roberts*, Vice President, Energy Supply; *Nancy Atwood*, Manager, Joint Thermal and Power Contracts; *Melissa Lewis*, Melissa Lewis & Associates, lobbyist.

Avista: *Jason R. Thackston*, Senior Vice President, Energy Resources and Environmental Compliance Officer; *Thomas Dempsey*, Senior Manager, Thermal Operations; *Steve Wenke*, former Senior Manager, Generation Strategy and Planning, representative to Colstrip Operating Committee; *Thomas Ebzery*, Thomas E. Ebzery P.C., former lobbyist for Avista and PGE.

PGE:  *Brett Greene*, Senior Director of Commercial Initiatives; *Shawn Davis*, Principal Analyst; *Craig Udy*, Operations Manager, representative to Colstrip Operating Committee.

PacifiCorp:  *Brad Richards*, Vice President, Thermal Operations; *Mike Johanson*, Partner-Operated Plant Director; *Dana Ralston*, retired, former Senior Vice President, Thermal Generation and Mining; *Chuck Denowh*, The Montana Group, lobbyist.

NorthWestern:  *John Hines*, Vice President, Supply; *Mike Barnes*, Owners Representative; *David Hoffman*, Director, Government Affairs.

Talen:  *Shannon Brown*, Senior Director, Asset Management; *Neil Dennehy*, Plant Manager, Colstrip Power Plant; *Dale Lebsack Sr.*, President; *Eric Wheatley*, Finance Manager.

Attorney General:  *Austin Knudsen*, State of Montana, Attorney General.

Each of the above individuals can be contacted through counsel of record for the identified party.

## X.   THIRD-PARTY INSURANCE AGREEMENTS

None applicable.

## XI.   THE STATUS OF SETTLEMENT DISCUSSIONS AND PROSPECTS FOR COMPROMISE

The PNW Owners doubt that settlement is a viable option on their claims challenging Senate Bill 265 or Senate Bill 266.  They nevertheless remain willing to discuss settlement of the claims in this action, the related actions, and issues related to the arbitration, provided that such discussions do not delay resolution of the parties' disputes.

**Page 27 -  PACIFIC NORTHWEST OWNERS' JOINT PRELIMINARY PRETRIAL STATEMENT**

## XII.   SUITABILITY OF SPECIAL PROCEDURES

All claims seek declaratory or injunctive relief.  The Court should adopt a case schedule that provides for summary adjudication without delay.  Otherwise, the PNW Owners do not anticipate the need for any special procedures at this time.

DATED:  February 8, 2022                MARKOWITZ HERBOLD PC

                                        *s/ Dallas DeLuca*
                                        _____
                                        Dallas DeLuca (admitted *Pro Hac Vice*)
                                        *Attorneys for Plaintiff Portland General*
                                        *Electric Company*

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on this date, an accurate copy of the foregoing document was

served electronically through the Court's CM/ECF system on registered counsel.

DATED:  February 8, 2022.

*s/ Dallas DeLuca*
Dallas DeLuca (admitted *Pro Hac Vice*)
*Attorneys for Plaintiff Portland General
Electric Company*
