Charles E. Hansberry
Jenny M. Jourdonnais
HANSBERRY & JOURDONNAIS, PLLC
2315 McDonald Avenue, Suite 210
Missoula, MT 59801
Tel: (406) 203-1733
Fax: (406) 205-3170
chuck@hjbusinesslaw.com
jenny@hjbusinesslaw.com

    *Attorneys for Plaintiffs*
    [additional counsel on signature page]

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| **PORTLAND GENERAL ELECTRIC COMPANY; AVISTA CORPORATION; PACIFICORP**; and **PUGET SOUND ENERGY, INC.**, <br><br> Plaintiffs, <br><br> v. <br><br> **NORTHWESTERN CORPORATION; TALEN MONTANA, LLC, AUSTIN KNUDSEN**, in his official capacity as Attorney General for the State of Montana <br><br> Defendants. | No. 1:21-cv-00047-BLG-SPW-KLD <br><br> **PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF** |

**Page 1 -**   **PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

Plaintiffs Portland General Electric Company ("PGE"), Avista Corporation, PacifiCorp, and Puget Sound Energy, Inc. ("PSE") (collectively, the "PNW Owners") submit this response to the *amicus curiae* brief of the City of Colstrip. In addition to the record in this case, the PNW Owners rely on the Declarations of Ronald Roberts and Dallas DeLuca submitted in support of this response.

## INTRODUCTION

In 2021, Montana enacted two unconstitutional laws, Senate Bill 265 and Senate Bill 266 ("SB 266"), in an attempt to control the Colstrip power plant. The City of Colstrip ("City") appeared as *amicus curiae* to address the PNW Owners' dormant Commerce Clause argument relating to the unconstitutionality of SB 266. The City does not dispute that SB 266 violates the Contract Clause.

The City highlights its history with the Colstrip power plant and the Rosebud Mine while raising concerns about the City's future should they close. The City also suggests that it is owed continued operation of the Colstrip power plant indefinitely. The City does not, however, accurately address the constitutional analysis required by the Commerce Clause.

Under the federal Commerce Clause, state regulations cannot discriminate against or impose an undue burden on interstate commerce. *South Dakota v.*

**Page 2 -**　**PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

*Wayfair, Inc.*, 138 S. Ct. 2080, 2091 (2018).  Where, as here, a state law

discriminates against interstate commerce in its intent or effect, it is "virtually *per

se* invalid[]."  *Granholm v. Heald*, 544 U.S. 460, 476 (2005) (cleaned up).  If a

state law does not discriminate, it is still unconstitutional when the burden it

imposes on interstate commerce is clearly excessive compared to the local benefit.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

Contrary to the City's assertions, SB 266 is discriminatory in both intent and

effect.  The legislative history, including the Governor's statement upon signing

the bill, make clear that the intent of SB 266 was to block the PNW Owners from

closing or withdrawing financial support from the Colstrip plant.  (*See* Doc. 103

¶¶ 8-10 (quoting legislative history of SB 266); Doc. 104 at 11 (quoting

Governor's statement on SB 266).)  Because SB 266 is not evenhanded and does

discriminate, the *Pike* balancing test does not apply.  *See Pike*, 397 U.S. at 142.

Even if the Court were to conclude that SB 266 is evenhanded, it still fails the *Pike*

balancing test.  The burdens that SB 266 places on interstate commerce are

substantial—the burdens are not, as the City claims, "little, if any."  And the

Montana Legislature has available alternatives to achieve its goals without

substantially burdening interstate commerce as SB 266 does.

**Page 3 -    PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S
             AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION
             FOR PARTIAL SUMMARY JUDGMENT REGARDING
             THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

There are no genuine disputes regarding material facts relevant to the pending motion.  The PNW Owners ask the Court to grant summary judgment and conclude that SB 266 is unconstitutional.

## ARGUMENT

### I.    The City wrongly argues that SB 266 is not discriminatory.

A court can conclude that a statute is unconstitutional if it finds "either discriminatory purpose or discriminatory effect."  *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270 (1984) (citations omitted).  The City contends that SB 266 is not discriminatory because, on its face, it "applies even-handedly to <u>any</u> owner of any jointly owned electrical generation facility, whether that owner is based in Montana or elsewhere."  (Amicus Br., Doc. 168 at 14 (emphasis in original).)  The City is wrong; the analysis "is not so rigid" that it turns on a "formalism" like facial evenhandedness.  *W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 201 (1994) (striking supposedly even-handed statute where, *id.* at 194, "[i]ts avowed purpose and its undisputed effect are to enable higher cost Massachusetts dairy farmers to compete with lower cost dairy farmers in other States.").  Rather, Supreme Court precedent establishes that the appropriate analysis is not merely a mechanical comparison of two substantially similar entities.  Notably, the Supreme

**Page 4 -    PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

Court has "viewed with particular suspicion state statutes requiring business operations to be performed in the home State that could . . . be performed elsewhere." *Granholm*, 544 U.S. at 475 (cleaned up).  Similarly, the undisputed purpose and effect of SB 266 is to require the continual operation of the Colstrip plant in Montana, which effectively prevents them from redirecting resources "elsewhere" to source over 1,000 MW of power.  (*See* Doc. 104 at 28-30 (purpose), 30-31 (effect); Doc. 146 at 18-19 (effect).)

The Supreme Court has struck down, without engaging in the *Pike* balancing test, many statutes that on their face were evenhanded between in-state and out-of-state companies, but whose purpose or effect was to "prevent[] current business from being diverted elsewhere[.]"  *Westinghouse Elec. Corp. v. Tully*, 466 U.S. 388, 406 (1984).  For example, in *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383 (1994), the local ordinance required "all nonhazardous solid waste within the town to be deposited at the Route 303 transfer station" and applied to "in-state or in-town processors" in addition to out-of-state processors.  *Id.* at 387, 391.  Yet the Court held the ordinance was discriminatory because it sought "to ensure the long-term survival of the designated facility" by guaranteeing it "patronage."  *Id.* at 394.  The Court noted that the law was part of a

**Page 5 -**     **PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S
AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT REGARDING
THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

line of "local processing requirements" that the Supreme Court "long ha[s] held invalid." *Id.* at 391-92 (collecting precedents).

Similarly, the law at issue in *Toomer* required all shrimp boats—whether they had in-state or out-of-state owners—to "dock at a South Carolina port and unload, pack, and stamp their catch 'before shipping or transporting it[.]'" *Toomer v. Witsell*, 334 U.S. 385, 391 (1948). The Court held the law was discriminatory because it used the threat of fines "to divert to South Carolina employment and business which might otherwise go to" another state. *Id.* at 403. Other examples abound. *See, e.g.*, *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 579, 582-84 (1986) (holding that New York law, which applied to in-state and out-of-state distillers "evenhandedly," was still discriminatory because it limited the price that distillers could charge in other states).

The "crucial" flaw in these statues is not that they facially discriminated between in-state and out-of-state companies, but that they were an "attempt by one State to isolate itself from a problem common to many by erecting a barrier against the movement of interstate trade." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 628 (1978). Such protectionist laws "prevent privately owned articles of trade from being shipped and sold in interstate commerce on the ground that they are

**Page 6 -    PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

required to satisfy local demands or because they are needed by the people of the State." *Id*. at 627 (quotation marks and citation omitted).  For instance, the ordinance in *Carbone*, "hoard[ed]" solid waste—or rather, the demand to dispose of it—for the benefit of the selected processing facility.  511 U.S. at 392.  The "revenue generation" from the ordinance was "not a local interest that can justify discrimination against interstate commerce." *Id*. at 393.

SB 266 has the same purpose and effect as the unconstitutional laws discussed above.  The resource at issue here is the PNW Owners' generation of power —SB 266 interferes with the interstate flow of money[1] and electricity.  The PNW Owners have declared an intent to stop the operation of, and generation of electricity from, one or both coal-fired Colstrip units after 2025.[2]  The City does not dispute that the Montana Legislature passed SB 266 to interfere with the PNW Owners' decisions concerning the interstate flow of funds and electricity by

---

[1] Money is also an item of interstate commerce, and the dormant Commerce Clause bars statutes that discriminate against the interstate movement of money. *See Edgar v. MITE Corp.*, 457 U.S. 624 (1982) (statute burdening out-of-state purchase offers for in-state companies violated Commerce Clause) (plurality opinion).

[2] An exit from Colstrip does not preclude the PNW Owners from investing in, or sourcing electricity from, non-coal-fired electric generation in Montana.  And SB 266 "is no less-discriminatory because" it prevents the PNW Owners from investing in other "in-state" sources of energy. *Carbone*, 511 U.S. at 391.

**Page 7 -   PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

threatening a fine so crippling that it impairs the PNW Owners' ability to exercise their rights under the Ownership and Operation Agreement, including the rights to vote "no" on budgets and the rights to advocate for and to begin the process of planning to close one or both units.  (*See, e.g.* Doc. 104 at 16-19 (discussing impairments to contract rights).)

SB 266 is like the ordinance in *Carbone*.  That ordinance "hoard[ed] the demand" for solid-waste processing "to ensure the long-term survival of the designated facility."  *Carbone*, 511 U.S. at 392, 394.  SB 266 similarly attempts to manufacture a demand for operating Colstrip to ensure the long-term survival of the plant and the economic benefits it brings to the City.  Because SB 266 requires the PNW Owners to continue dedicating a portion of their resources to Colstrip instead of looking to out-of-state sources of electricity, it is analogous to the law in *Carbone*, which "prohibit[ed] patronage of out-of-state competitors or their facilities."  Therefore, like the statute in *Carbone,* SB 266 is *per se* invalid under the Commerce Clause.  *See id.* at 394.

## II.     Assuming *arguendo* that SB 266 is not discriminatory in purpose or effect, it fails the *Pike* balancing test.

As discussed above, SB 266 is discriminatory both in purpose and effect and, therefore, SB 266 is unconstitutional without reaching the *Pike* balancing test.

**Page 8 -     PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

If, however, the Court concludes that SB 266 is not discriminatory in either purpose or effect, the Court still must weigh whether the burdens placed on interstate commerce are merely "incidental" compared to the local benefits.  *Pike*, 397 U.S. at 142; *see also Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1026 (9th Cir. 2021) (holding that *Pike* balancing remains a separate test).  In other words, where a statute "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  *Pike*, 397 U.S. at 142.

### A.    SB 266's effects on interstate commerce are not merely incidental and the local benefits are economic interests.

The City acknowledges that it asks the Court to require the PNW Owners to continue to take electricity from and invest in the Colstrip power plant—and by extension, the City of Colstrip—for the indefinite future.  (Doc. 168 at 10.)  The City argues, "Colstrip's citizens deserve to continue making a living in the energy industry for as long as it is feasible to do so.  SB 266 provides that opportunity."

**Page 9 -     PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

(*Id.*)  The principal interests the City articulates that flow from the Colstrip power plant—jobs and taxes—are purely economic interests. [3]

Laws that are justified based on economic interests do not survive the *Pike* test.  When balancing interests, "the Court has viewed with particular suspicion state statutes requiring business operations to be performed in the home State . . . Even where the State is pursuing a clearly legitimate local interest, this particular burden on commerce has been declared to be virtually *per se* illegal."  397 U.S. at 145 (citations omitted).  The *Pike* Court also noted that "the Commerce Clause forbids a State to require work to be done within its jurisdiction to promote local employment[.]"  *Id.* at 146.  The *Pike* Court was following precedent that, when addressing such a balancing question, local *financial* interests, such as job protection, are not sufficient to overcome the burden on interstate commerce.  *See H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 532 (1949) (explaining that case law "laid repeated emphasis upon the principle that the State may not promote

---

[3] The City also references that the Colstrip plant provides power to Montana residents, but there is no contention that Montana residents would necessarily be without power if the Colstrip plant closes at the end of 2025, only that NorthWestern needs time to prepare for that change and thus needs arbitration to commence as soon as possible.  (Doc. 95 at 10.)

**Page 10 -   PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

its own economic advantages by curtailment or burdening of interstate commerce." (citation omitted)).

Here, the City's interstate commerce impacts analysis focuses on the wrong issue. Contrary to the City's unsupported contention, the question is not whether the PNW Owners can sell their interest in the Colstrip plant. The PNW Owners already rebutted Talen's identical argument. (Doc. 146 at 19-20.) If the solution to any disparate impact or burden is to suggest that the impacted party can just leave, the Commerce Clause would protect nothing. Accordingly, whether the PNW Owners can or cannot sell their interests in the Colstrip plant is irrelevant.

Instead, under *Pike,* a court must weigh the impact on interstate commerce against the local benefit. Any impact on interstate commerce must be merely "incidental" for the law to survive. However, the City has not seriously engaged in that analysis here. By focusing only on whether the PNW Owners can sell their interest in the Colstrip plant, the City ignores entirely that SB 266 intends to (and does) compel the out-of-state owners to send money into Montana and generate electricity from Montana coal. (*See* Doc. 103 ¶ 20.) Those are significant and continuing impacts on interstate commerce. The local interests, even as the City sympathetically describes them, are only financial interests, not health and safety

**Page 11 -    PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S
              AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION
              FOR PARTIAL SUMMARY JUDGMENT REGARDING
              THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

interests.  As such, under repeated United States Supreme Court precedent, statutes intended to protect local financial interests such as jobs and tax base do not survive a *Pike* balancing test.  *See*, *e.g.*, *H.P. Hood & Sons*, 336 U.S. at 532-33 (noting the Court's long-standing distinction between the power of a state to shelter its people from health or safety concerns and its lack of power to constrict commerce out of concern for local economic advantage).

**B.    To address its local concerns, Montana can and must look to other resources that are less burdensome on interstate commerce.**

Under *Pike*, if the Court concludes a legitimate local purpose exists—one that is not merely an economic purpose—it weighs the tolerable degree of burden on interstate commerce.  397 U.S. at 142.  In doing so, *Pike* instructs that a court should consider "whether the state's interest 'could be promoted as well with a lesser impact on interstate activities.'"  *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1016 (9th Cir. 1994) (quoting *Pike*, 397 U.S. at 142); *see also Great Atlantic & Pac. Tea Co., Inc. v. Cottrell*, 424 U.S. 366, 373-74 (1976) (whether adequate and less burdensome alternative exists is important inquiry).  For instance, one category of "nondiscriminatory alternatives" is using governmental funding, such as "general taxes or municipal bonds," to achieve policy goals.  *Carbone*, 511 U.S. at 393-94.

**Page 12 -    PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

Here, Montana has alternatives available to achieve the City's desired goals of economic prosperity.  Specifically, Montana has a Coal Severance Tax Trust Fund ("Fund"), which holds funds that were set aside out of concern that "[i]f we are directly dependent upon all of the coal revenue to support our day-to-day expenditures we will be severely punished financially on the day when the coal no longer exists or has value." *Montanans for the Coal Trust v. State*, 996 P.2d 856, 857 (2000) (quoting 1976 Voter Information Pamphlet statement).

A 1976 referendum established the Fund, financed by taxes on the production of coal in Montana. *See id.* at 857-58 (describing Fund history).  The referendum amended the Montana Constitution to designate a minimum portion of the coal severance tax to the Fund and provide that the principal of the Fund may be used on a vote of three-fourths of the legislature. *Id.*; *see also* Mont. Const., Art. IX, Sec. 5 (outlining Fund obligations).

Today, the Fund holds more than $1 billion.  (Decl. of Dallas DeLuca ("DeLuca Decl.") ¶ 5, Ex. B.)  The Fund was built with taxes from the coal industry in Montana, including from the Rosebud mine that supplies coal to the Colstrip plant.  (*See, e.g.*, DeLuca Decl. ¶¶ 2-6, Ex. A (calculating that approximately 41% of Montana coal severance tax in 2021 was contributed by

**Page 13 -     PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

Rosebud mine sales to Units 3 and 4.)  The Montana legislature can approve

allocation of some of the principal of the Fund to support the City of Colstrip's

transition to financial stability without the coal mine and power plant; in fact, the

Fund was established with just such an inevitable future in mind.  *Montanans for

the Coal Trust*, 996 P.2d at 857 (1976 Voter Information Pamphlet warning of

financial consequences when coal is no longer available industry).[4]

As the United States Supreme Court has consistently explained, "[T]he

Commerce Clause was designed to prevent States from engaging in economic

discrimination so they would not divide into isolated, separable units."  *Wayfair*,

138 S. Ct. at 2093-94 (citation omitted).  Just as the town in *Carbone* could use

"general taxes or municipal bonds" as nondiscriminatory means "to ensure the

long-term survival of the designated facility," 511 U.S. at 394, Montana can use

---

[4] PSE has contributed $10 million dollars to create the Colstrip Community Fund, which will support community planning transition efforts.  (Decl. of Ronald J. Roberts ("Roberts Decl.") ¶¶ 2-3, Ex. A (PSE press release), Ex. B (letter to Mayor of Colstrip confirming contribution).)  PSE has also entered into a 20-year power purchase agreement to buy clean energy from the planned Clearwater Wind Project north of Colstrip.  (Roberts Decl. ¶ 4, Ex. C (press release announcing agreement).) That project is expected to deliver substantial economic benefits to the region. (Roberts Decl. ¶ 4.)

**Page 14 -    PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S
             AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION
             FOR PARTIAL SUMMARY JUDGMENT REGARDING
             THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

the Fund or similar legislative measures to support the long-term economic prosperity of the City of Colstrip.

## CONCLUSION

The legal arguments raised by the City are contrary to controlling federal law. The brief filed by the City does not interject genuine issues of material fact, nor does it change the correct legal analysis under the Commerce Clause. Economic protectionism thoroughly animates SB 266. The PNW Owners ask the Court to grant their motion for summary judgment that SB 266 is unconstitutional under the Commerce and Contract clauses.

Dated this 15th day of April, 2022.

MARKOWITZ HERBOLD PC

*s/ Dallas DeLuca*

Dallas DeLuca (Admitted *Pro Hac Vice*)
David B. Markowitz (Admitted *Pro Hac Vice*)
DallasDeLuca@MarkowitzHerbold.com
DavidMarkowitz@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Ph: (503) 295-3085
Fax: (503) 323-9105
*Attorneys for Plaintiff Portland General
Electric Company*

**Page 15 -   PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S
AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT REGARDING
THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

HANSBERRY & JOURDONNAIS, PLLC
Charles E. Hansberry
Jenny M. Jourdonnais
chuck@hjbusinesslaw.com
jenny@hjbusinesslaw.com
HANSBERRY & JOURDONNAIS, PLLC
2315 McDonald Avenue, Suite 210
Missoula, MT 59801
406-203-1730
Fax: 406-205-3170
*Attorneys for Plaintiffs*

UGRIN ALEXANDER ZADICK, P.C.
Gary M. Zadick
gmz@uazh.com
#2 Railroad Square, Suite B
PO Box 1746
Great Falls, MT 59403
Ph: (406) 771-0007
Fax: (406) 452-9360
*Attorneys for Plaintiff Portland General
Electric Company*

**Page 16 -   PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S
AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT REGARDING
THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

PERKINS COIE LLP
Harry H. Schneider, Jr. (Admitted *Pro Hac Vice*)
Jeffrey M. Hanson (Admitted *Pro Hac Vice*)
Gregory F. Miller (Admitted *Pro Hac Vice*)
HSchneider@perkinscoie.com
JHanson@perkinscoie.com
GMiller@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Ph: (206) 359-8000
Fax: (206) 359-9000
*Attorneys for Plaintiff Puget Sound Energy, Inc.*

KSB LITIGATION P.S.
William J. Schroeder (Admitted *Pro Hac Vice*)
William.schroeder@Ksblit.legal
510 W Riverside, Suite 300
Spokane, WA 99201
Ph: (509) 624-8988
Fax: (509) 474-0358
*Attorneys for Plaintiff Avista Corporation*

AVISTA CORPORATION
Michael G. Andrea (Admitted *Pro Hac Vice*)
Michael.Andrea@avistacorp.com
1411 W. Mission Ave.—MSC-17
Spokane, WA 99202
Ph: (509) 495-2564
Fax: (509) 777-5468
*Attorney for Plaintiff Avista Corporation*

**Page 17 -   PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THEIR FOURTH AND FIFTH CLAIMS FOR RELIEF**

SCHWABE WILLIAMSON & WYATT
Troy Greenfield
Connie Sue Martin (Admitted *Pro Hac Vice)*
TGreenfield@Schwabe.com
CSMartin@Schwabe.com
US Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101
Ph: (206) 407-1581
Fax: (206) 292-0460
*Attorneys for Plaintiff PacifiCorp*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), I certify that this Response to City of Colstrip's

Amicus Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment

Regarding Their Fourth and Fifth Claims for Relief is printed with proportionately

spaced Times New Roman text typeface of 14 points; is double-spaced; and the word

count calculated by Microsoft Office Word is 2,988 words, excluding Caption,

Certificate of Service, and Certificate of Compliance.

Dated this 15th day of April, 2022.

*s/ Dallas DeLuca*
Dallas DeLuca (Admitted *Pro Hac Vice)*
*Attorneys for Plaintiff Portland General*
*Electric Company*

**Page 19 -    PLAINTIFFS' RESPONSE TO CITY OF COLSTRIP'S AMICUS
BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING THEIR
FOURTH AND FIFTH CLAIMS FOR RELIEF**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this date, an accurate copy of the foregoing document was

served electronically through the Court's CM/ECF system on registered counsel.

DATED:  April 15, 2022.

> *s/ Dallas DeLuca*
> _____
> Dallas DeLuca (admitted *Pro Hac Vice*)
> *Attorneys for Plaintiff Portland General*
> *Electric Company*

1270691

**CERTIFICATE OF SERVICE**